**KANTROWITZ, GOLDHAMER & GRAIFMAN**
**GARY S. GRAIFMAN (GSG 2276)**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone  (201) 391-7000

**GREEN & PAGANO, LLP**
**MICHAEL S. GREEN (MSG 2204)**
86 Washington Avenue
Milltown, New Jersey 08850
Telephone (732) 390-0480

**DIAMOND LAW OFFICE, LLC**
**PAUL DIAMOND (PD 3088)**
1605 John Street, Suite 102
Fort Lee, New Jersey 07024
Telephone (201) 242-1110

**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY (NEWARK)

_____

CHARLES T. MCNAIR                              :
on behalf of himself and all others similarly  :
situated,                                      :
                                               :
                    Plaintiff,                 :
                                               :          Case No.
                                               :
            v.                                 :
                                               :          CIVIL ACTION
                                               :
SYNAPSE GROUP INC.,                            :
                                               :     **CLASS ACTION COMPLAINT**
                                               :        **AND DEMAND FOR**
                                               :            **JURY TRIAL**
                    Defendant.                 :
                                               :
                                               :        **CLASS ACTION**
                                               :
_____:

Plaintiff, by his attorneys, alleges upon personal knowledge as to himself and upon

1

information and belief as to the other allegations of this Complaint, as follows:

## NATURE OF THE CASE

1.      This is a class action pursuant to F.R.C.P 23, on behalf of all persons and entities who purchased magazine subscriptions pursuant to offers made by or under the direction of Defendant, Synapse Group, Inc. or its affiliates.

2.      This is an action to secure compensatory, statutory and punitive damages, preliminary and permanent  injunctive relief,  including cessation of collections and other equitable relief.  The claims asserted herein are premised on deceptive, unlawful and unfair business practices, unconscionable commercial practices, misrepresentations and fraud in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. and other claims set forth herein.

3.      As described in more detail below, defendant Synapse Group, Inc. (hereinafter "Synapse Group") is a provider of subscriber acquisition and management services to publishers of consumer magazines that has a principal place of business in Stamford, Connecticut.

4.       Synapse Group offers purportedly discount-priced magazine subscriptions subject to continual automatic renewals of said subscriptions, which are charged to consumers' charge accounts, typically to a credit card account.

5.      Synapse Group provides an automated telephone system by which customers that have initially subscribed to magazines through Synapse Group are directed to cancel the ensuing automatic renewals of magazine subscription if they so choose, but the options presented by the system are misleading and deceptive causing consumers to believe they have cancelled the renewal of subscriptions when they have not, thereby resulting in unwanted and unauthorized charges to customers.

2

6.       Synapse Group's renewal cancellation system and practices present an improper barrier to cancellation of customers' magazine subscriptions and to cancellation of automatic renewals of customers' magazine subscriptions.

7.       The subscription renewal rates charged by Synapse Group for at least some of the magazine subscription offerings are unconscionably high versus regular subscription rates and regular subscription renewal rates available in the marketplace, thereby, among other things, depriving consumers of any bargain they may have enjoyed from the initial low-price subscription rate offered through Synapse Group.  The inflated renewal rates are not disclosed to consumers at the time of their purchase of the initial discount subscription.

8.       Synapse Group is the leading independent provider of customer acquisition and management services for publishers of consumer magazines in the United States.  Synapse Group is a wholly-owned subsidiary of Time Warner Inc., has over 300 full-time employees, and markets over 1,000 consumer magazine titles.  In 2000, Synapse annual magazine sales crossed 30 million subscriptions and Synapse had revenues of $268 million.  See www.synapsegroupinc.com

## PARTIES

9.       Plaintiff, Charles McNair is a resident of Sussex County, New Jersey having a place of residence at 17 Pinkneyville Road, Sparta, New Jersey.

10.     Defendant, Synapse Group Inc., has a principal place of business at 225 High Ridge Road, Stamford, Connecticut.

11.     Defendant, Synapse Group is a wholly owned subsidiary of Time Warner Inc., which has a principal place of business at One Time Warner Center, New York, NY.

12.     Defendant has had, and continues to have, significant contacts with Sussex and the

State of New Jersey.  Among other things, defendant does business in Sussex County and the State

of New Jersey, has derived and continues to derive significant revenue and income from residents

of Sussex County and the State of New Jersey.  In addition, Plaintiff's causes of action against

defendant, as alleged below, were and are related to the Company's contacts with Sussex County

and the State of New Jersey.

### VENUE

13.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because defendant,

Synapse Group, provided services to Plaintiff and Class Members located in this district, and

conducted substantial business in this district.  In addition, Defendant provides services to Plaintiff

and Class members located in this district, and conducts substantial business in this district.

### CLASS ACTION ALLEGATIONS

14.     This action is brought and may properly proceed as a class action, pursuant to the

provisions of F.R.C.P. 23.  Plaintiff brings this action on behalf of himself and all others similarly

situated.  The Class is defined as follows:

> All persons and/or entities residing in the United States of America who obtained magazine
> subscriptions pursuant to offers made by or under the direction of Synapse Group and had
> their subscriptions renewed after they attempted to cancel their subscription renewal using
> Synapse Group's automated telephone cancellation system.  Specifically excluded from this
> class are any person and/or entity in which defendant has a controlling interest, and the
> officers, directors, employees, affiliates, subsidiaries, legal representatives, heirs,
> successors and their assigns of any such person or entity, together with immediate family
> member of any officer, director or employee of said companies (the "Class").

15.     This action is properly maintainable as a class action.  The class for whose benefit

this action is brought is so numerous and geographically dispersed that joinder of all members is

impracticable, and the disposition of their claims in a class action will provide substantial benefits

to both the parties and the Court.  The numerosity requirement of F.R.C.P. 23(a)(1) is therefore satisfied.

16.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action.  Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually seek redress for the wrongful conduct alleged.

17.    Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member.  The common questions include, *inter alia*, the following:

a.  Whether defendant Synapse Group fraudulently and deceptively misleads magazine subscribers to renew their subscriptions when the intent of the subscribers is to cancel renewal of the subscriptions;

b.  Whether defendant Synapse Group's automated cancellation system for subscription renewals is designed to mislead magazine subscribers into renewing their subscriptions when the intent of the subscriber is to cancel renewal of the subscriptions;

c.  Whether defendant Synapse Group charges unconscionably inflated renewal subscription prices for magazines renewed under its magazine subscription continuance program;

d.  Whether defendant Synapse Group's business practices constitute violations of the New Jersey Consumer Fraud Act, breach of contract and common law fraud, and, if so, the measure of damages and triple damages;

e.  Whether defendant Synapse Group's business practices have proximately caused

injury to plaintiff and all others similarly situated and, if so, the proper measure of damages;

    f. Whether defendant Synapse Group has been unjustly enriched by its practices as detailed herein;

    g. Whether defendant Synapse Group's actions were sufficiently wrongful so as to entitle plaintiff and all others similarly situated to punitive damages; and,

    h. Whether the Class has been damaged and/or suffered irreparable harm and, if so, the extent of such damages and/or the nature of the equitable and injunctive relief which each member of the Class is entitled.

   18. Plaintiff's claims and the claims of members of the Class all derive from a common nucleus of operative fact.

   19. In satisfaction of F.R.C.P. 23(a)(3) and 23(a)(4), Plaintiff is asserting claims that are typical of the claims of the entire Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class in that it has no interests that are antagonistic to those of the other members of the Class.  Plaintiff anticipates no difficulty in the management of this litigation as a Class action.  Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation.

   20. Pursuant to F.R.C.P. 23(b)(1) and (b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate injunctive and/or declaratory relief with respect to the Class as a whole.

   21. Notice of pendency of this action can be given either by publication and/or over the Internet.

## **ALLEGATIONS OF FACT**

22.     Prior to August 27, 2005 and immediately subsequent to placing an order for unrelated products via the Internet, Plaintiff Charles McNair was presented with an online offer via the Internet to purchase four annual magazine subscriptions at a cost of Two Dollars ($2.00) each.

23.     Pursuant to the online offer for magazine subscriptions, Charles McNair placed an order for four annual magazine subscriptions, presented as costing $2.00 each, which included Time Magazine, National Geographic Adventure Magazine, National Geographic Traveler Magazine and PC World magazine.

24.     The order for the four magazine subscriptions was confirmed by electronic mail on August 27, 2005 in a message sent from the e-mail address orders@mybonuscenter.com to Mr. McNair.

25.     On or around May 25, 2006, Charles McNair received a postcard by mail describing procedures for canceling automatic renewals of the magazine subscription to National Geographic Traveler magazine and indicating a June 29, 2006 deadline for canceling the automatic renewal of the subscription and that no renewal charges would appear if the renewals were canceled by this deadline.

26.     On May 25, 2006, Charles McNair called the telephone number provided on the postcard, 1(800)-927-9351, to cancel all of the subscriptions and interacted with Synapse Group's automated telephone system that verbally presented options in connection with the magazine subscriptions.  Synapse Group's automated telephone system provided a verbal prompt asking "Do you want to cancel a magazine?", to which Mr. McNair verbally responded in the affirmative.  Mr. McNair interacted with the automated system in a manner completely reasonable for a consumer

attempting to effectuate a cancellation of an impending subscription renewal and believed that he had cancelled the renewal of the subscription to all four magazines in response to the options presented to him by the system.

27.     Despite the fact that he made completely reasonable efforts to cancel the automatic renewal subscription to National Geographic Traveler magazine on May 25, 2006 and that he had performed all actions required by the system therefor, his credit card account was nevertheless later charged $17.95 on June 30, 2006 for the cost of a renewal subscription to this magazine.

28.     After noticing the June 30, 2006 credit card charge for renewal of National Geographic Traveler magazine, on July 12, 2006 Mr. McNair again called the Synapse Group automated telephone system to cancel the now-charged subscription renewal to National Geographic Traveler magazine and to also again generally cancel the subscriptions to all four originally ordered magazines.  Mr. McNair received a cancellation confirmation number, 410952C, from the Synapse Group automated telephone system.

29.     Despite Mr. McNair's access to and interaction with the Synapse Group automated telephone system to cancel the subscription to National Geographic Traveler magazine on May 25, 2006 and again on July 12, 2006, the subscription was not cancelled and the amount charged to his credit card on June 30, 2006 for the renewal was not credited back to him.

30.     The Synapse Group automated telephone system, if cancelling anything with respect to National Geographic Traveler magazine, canceled additional future renewals of the magazine and not the June 30, 2006-charged renewal, while misleading Mr. McNair that he was in fact cancelling and had cancelled the June 30, 2006-charged renewal.  Mr. McNair called to cancel his subscriptions and was asked by Synapse Group's automated system, "Do you want to cancel a

magazine?", and despite his verbally responding in the affirmative to that prompt, the Synapse Group automated system did not cancel his subscription to National Geographic Traveler magazine. Instead, if the Synapse Group automated system cancelled anything; it was future billings, i.e., those not yet charged to Mr. McNair for additional future renewals, as suggested by the automated system's response to a later status request that specifically stated, "All future billings were canceled July 12, 2006."

31.     On July 11, 2006, an inflated charge of Fifty Four Dollars ($54.00) appeared on Charles McNair's credit card bill for a renewal of his annual subscription to Time magazine. The reference for this charge was placed on his credit card bill and a telephone number was provided. Mr. McNair called the listed telephone number and was presented with a number of options in connection with the subscription by an automated telephone system, but despite attempting to cancel the automatically renewed subscription in three different ways, he was unable to receive a cancellation from the system. The options presented were misleading and caused Mr. McNair to reasonably believe he was canceling the annual renewal of the subscription when in fact such cancellation was not effectuated. Only after enlisting the aid of his credit card company, was the amount for the improper renewal of the Time magazine subscription refunded.

32.     Synapse Group made uniform misrepresentations to Class Members through the written misrepresentations on its postcards to Class Members and via its automated telephone subscription renewal cancellation system.

33.     The uniform misrepresentations presented by Synapse Group's automated telephone subscription renewal cancellation system made to all customers who seek to cancel, include, *inter alia,* misrepresenting to customers that the customers are cancelling automatically

renewed subscriptions for which customers have recently been charged, while what has actually and only been cancelled, if anything, are billings for additional, future subscription renewals.

34.     On information and belief, Synapse Group uniformly fails to provide a clear and unambiguous option for consumers to cancel magazine subscriptions that have been automatically renewed and charged to consumer's credit cards pursuant to Synapse Group's subscription renewal programs, as distinguished from cancellation of future billings for the next, as of yet uncharged, renewal cycle.

35.     The uniform misrepresentations presented by Synapse Group's automated telephone subscription renewal cancellation system also include, *inter alia,* offering customers who have accessed the cancellation menu of the automated system an option to continue receiving issues of magazines that they have already paid for, wherein the selection of said option by a customer does not result in cancellation of renewal subscription charges and wherein the system does not inform the customer of such, while the customer is led to believe that the renewal subscription and its associated charges have been cancelled.

## **FIRST COUNT**
### **(Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing)**

36.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

37.     As set forth in greater detail above, the Synapse Group made false and misleading representations through its automated telephone renewal and cancellation system so that even after Plaintiff and Class Members attempted to cancel renewals of subscriptions, Synapse Group continued to charge them for the renewals.

38.      Plaintiff and the Class Members have entered into certain contracts and agreements

10

with Synapse Group when they agreed to obtain the original subscriptions at a discount.

39.     Synapse Group breached its contract with Plaintiff and all others similarly situated by not performing according to their obligations under the applicable law and the contract when it did not cancel the renewal of those subscriptions upon the request of Plaintiff and Class Members.

40.     Plaintiff and Class Members satisfied their obligations under these contracts and agreements.

41.     Defendant Synapse Group breached their contract with Plaintiff and all other similarly situated by violating the implied covenant of good faith and fair dealing inherent in such contracts and agreements.

42.     By virtue thereof, as a direct and proximate cause of Synapse Group's breach of contract and implied covenant of good faith and fair dealing, Plaintiff and Class Members have suffered damages in an amount to be determined upon trial, which they are entitled to recover.

## SECOND COUNT
### (Common Law Fraud)

43.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

44.     As set forth in greater detail above, the Synapse Group made uniform false and misleading representations through its automated telephone renewal and cancellation system so that even after Plaintiff and Class Members attempted to cancel renewals of subscriptions, Synapse Group continued to charge them for the renewals.

45.     As a proximate result of Plaintiff and Class Members reliance on these uniform, automated misrepresentations made by Synapse Group, Plaintiff and other members of the class have been damaged in amount to be determined at trial, which they are entitled to recover.

### THIRD COUNT
**(Unjust Enrichment)**

46.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

47.     As set forth in greater detail above, the Synapse Group made false and misleading representations through its automated telephone renewal and cancellation system so that even after Plaintiff and Class Members attempted to cancel renewals of subscriptions, Synapse Group continued to charge them for the renewals.

48.     As a result of the conduct described in this Count, the Plaintiffs and Class Members paid monies to defendant for which the Plaintiffs and Class Members received no benefit and to which defendant was not entitled.

49.     In consequence of the acts set forth in this Count, defendant has been unjustly enriched at the expense of the Plaintiff and Class Members.

50.     The Plaintiff and Class Members are entitled to the amount of defendant's unjust enrichment as restitution.

### FOURTH COUNT
**(Violations of the New Jersey Consumer Fraud Act - N.J.S.A. 56:8-1 et seq.)**

51.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

52.     Synapse Group engaged in unconscionable commercial practices, deception, fraud, False promise, false pretenses and/or misrepresentations in its interactions with plaintiff and all others similarly situated in violation of the CFA and similar consumer fraud statutes of other States.

53.     Plaintiff and all members of the Class suffered an ascertainable loss when they were

charged by the defendant for an automatic renewal of their magazine subscription(s) despite Plaintiff and Class Members' attempts to cancel their subscriptions through defendant's automated telephone system.

54.     Plaintiff and all members of the Class read or heard or saw or knew or were made aware of the misrepresentations made by the defendant in its uniform postcards and automated telephone system which violated the CFA.  Defendant's postcards and automated telephone system conveyed false and misleading statements and/or concealed or suppressed the truth.

55.     By virtue thereof, the Class is entitled to injunctive relief to prevent enforcement of the renewed subscriptions, a declaratory judgment setting aside the renewed subscriptions and/or compensatory and statutory damages.

**WHEREFORE,** Plaintiff, on behalf of himself and the members of the Class, demand judgment as follows:

(a) A determination that this action is a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and/or Subclass and certifying Plaintiff as Class and Subclass representatives;

(b) Equitable and injunctive relief enjoining Synapse Group and affiliates from pursuing the policies, acts and practices described in this Complaint; and

(c) An order requiring disgorgement and/or imposing a constructive trust upon Synapse Group monies received from automatic renewals of magazine subscriptions, and requiring defendants to pay Plaintiff and all members of the Class for any act or practice declared by this Court to be unlawful;

(d) Damages in an amount to be determined at trial;

(e) Statutory damages for violations of the applicable statutes and the Consumer Fraud Act. Pre-judgment and post-judgment interest at the maximum rate allowable at law;

(f) Punitive damages in an amount to be determined at trial;

(h) For a declaratory judgment declaring the subscription renewals unenforceable and setting them aside.

(g) The costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees and expert fees; and

(i)       Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:                                    **KANTROWITZ, GOLDHAMER & GRAIFMAN**


**By:** _____
                                          **GARY S. GRAIFMAN, ESQ.**
                                          210 Summit Avenue
                                          Montvale, New Jersey 07645
                                          Tel: (201) 391-7000
                                          Fax:(201) 307-1086

Dated:                                    **GREEN & PAGANO, LLP**


**By:** _____
                                          **MICHAEL S. GREEN, ESQ.**
                                          86 Washington Avenue
                                          Milltown, New Jersey 08850
                                          Tel: (732) 390-0480
                                          Fax: (732) 390-0481



Dated:                                    **DIAMOND LAW OFFICE, LLC**


**By:** _____
                                          **PAUL DIAMOND, ESQ.**
                                          1605 John Street, Suite 102
                                          Fort Lee, New Jersey 07024
                                          Tel: (201) 242-1110
                                          Fax: (973) 302-8189

**PLAINTIFF'S COUNSEL**

15