**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES T. MCNAIR, et al., | Civil Action No.: 06-5072 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| SYNAPSE GROUP, INC., | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court on the motion to amend the complaint filed by Plaintiffs. This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' motion to amend the Complaint is granted; the Court accepts the proposed amended complaint for filing except that Plaintiffs' New Jersey Consumer Fraud claim is stricken from the amendment.

## I.    BACKGROUND

On June 29, 2009, this Court entered an Order denying Plaintiffs' motion for class certification. The class as defined for that motion was seeking predominantly monetary damages. The Court held that Plaintiffs had failed to demonstrate that common issues would predominate as required under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The underlying facts of this case are fully detailed in the June 29 Opinion accompanying that Order. Only those facts

relevant for the present motion are included here.

On July 7, 2009, Plaintiffs submitted a letter to the Court expressing their intention to file a renewed class certification motion seeking different remedies than previously sought.  Synapse opposed the request.  The Court considered both submissions.  Because Plaintiffs' letter sought an opportunity to change the relief sought in the case, this Court construed Plaintiffs' request as a request for leave to file a motion to amended the complaint and granted the request.  The Court further found that "a new motion for class certification [was] premature" and "should be made based on the amended complaint."  The Order set an August 10, 2009, deadline for filing a motion to amend the complaint.  Plaintiffs filed the present motion to amend on August 10.   The plaintiffs in the proposed amended complaint did not change, but Plaintiffs did remove two claims, the breach of contract and Electronic Funds Transfer Act claims.  Also, Plaintiffs' proposed amended complaint now seeks only equitable relief.

## II.   <u>LEGAL STANDARDS</u>

A party may amend a pleading "once as a matter of course . . . before being served with a responsive pleading . . . ."  Fed. R. Civ. P. 15(a)(1)(A); <u>see also</u> <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000).  "After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'"  <u>Shane</u>, 213 F.3d at 115 (citing Fed. R. Civ. P 15(a)).  "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."  <u>Id.</u>  An amendment is futile when a proposed amended complaint "would fail to state a claim upon which relief could be granted."  <u>Id.</u>  Thus, "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies

under Rule 12(b)(6)." Id.

For a complaint to survive dismissal under Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

## III.   **DISCUSSION**

Synapse makes numerous arguments in opposition to Plaintiffs' motion to amend the complaint.  Several can be grouped together as a more general argument that the amendment is improper because it is unduly delayed and fails to comply with prior scheduling orders of this Court.  In making this argument, Synapse cites various prior scheduling orders of this Court and discusses the history of this litigation.  Although it mentions this Court's July 27, 2009 Order, it apparently gives it no weight.  In that Order this Court explicitly granted Plaintiffs leave to file the present motion.  Synapse did not seek reconsideration of that Order.  To argue that Plaintiffs' present motion is not "sought prior to a court-ordered deadline" and thus Rule 15 does not apply, based only on prior scheduling orders of this Court, ignoring the July 27 Order, is without merit.  The Court granted Plaintiffs permission to file the motion, and Rule 15 applies in evaluating the proposed amendment.

Additionally, the Court finds that Synapse is not unduly prejudiced by the amendment. "To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to

conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." Std. Fire Ins. Co. v. MTU Detroit Diesel, Inc., No. 07-3827, 2009 U.S. Dist. LEXIS 72299, at *12 (D.N.J. Aug. 13, 2009) (citing Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004)).  Plaintiffs' proposed amendment does not add any new claims or plaintiffs.  Thus, no new discovery is required and there will be no significant delay in the case.

Finally, in addition to this broad argument, Synapse argues that the amendment is not appropriate because (1) it deprives the Court of jurisdiction, (2) Plaintiffs lack standing to pursue the proposed amendment, and (3) the proposed amendment is futile. The Court addresses these arguments in turn.

### A.    Jurisdiction

The proposed amended complaint premises jurisdiction on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), which requires that the amount in controversy exceed $5,000,000.  Synapse argues that, by dropping all monetary claims, "the amount in controversy if the amendments were allowed would be the value of any attorneys' fees recovered."  (Def.'s Mem. of Law in Opp'n to Pls.' Mot. for Leave to Am. Compl. [hereinafter "Def.'s Opp'n"], at 12.)  It argues that this amount is too speculative, and, therefore, this Court lacks jurisdiction. (Id.)  Synapse does not account for any value of the injunction sought by Plaintiffs.  In the Third Circuit, for actions seeking an injunction, "it is settled that the amount in controversy is measured by the value of the right sought to be protected by the equitable relief."  In re Corestates Trust Fee Litig., 39 F.3d 61, 65 (3d Cir. 1994).  "In other words, it is the value to plaintiff to conduct his business or personal affairs free from the activity sought to be enjoined

that is the yardstick for measuring the amount in controversy." Id. (internal quotations omitted).

Additionally, "[i]n diversity cases, [courts] generally accept a party's good faith allegation of the

amount in controversy, but where a defendant or the court challenges the plaintiff's allegations

regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must

produce sufficient evidence to justify its claims." Columbia Gas Transmission Corp. v. Tarbuck,

62 F.3d 538, 541 (3d Cir. 1995).  But, "[i]t must appear to a legal certainty that the claim is really

for less than the jurisdictional amount to justify dismissal." Id. (quoting St. Paul Mercury

Indemnity Co. v. Red Cab. Co., 303 U.S. 283, 288-89 (1938)).

    Here, Synapse offers no evidence to challenge Plaintiffs' amount in controversy

allegation.  Instead, it merely states that the amount of attorney's fees is too speculative.  On the

other hand, Plaintiffs, using Synapse's own records regarding sales and cancellation estimates

related to various business practices, assert that the value of the injunction–the savings to

Plaintiffs from the allegedly improper charges due to the practices Plaintiffs seek to enjoin–well

exceeds $5,000,000.  The Court finds that the evidence submitted by Plaintiffs is sufficient to

justify their claims.  It does not appear to a legal certainty that the amount in controversy is less

than the jurisdictional threshold.  Therefore, the Court holds that it has jurisdiction over this

matter.

**B.    Standing**

    Plaintiffs' proposed amended complaint asserts claims for equitable relief under three

state statutes: (1) a claim for violations of the New Jersey Consumer Fraud Act ("NJCFA"),

N.J.S.A. §§ 56:8-1 et. seq.; (2) a claim for violations of the New York Business Law, N.Y.

Gen. Bus. Law §§ 349 and 350; and (3) a claim for violations of the District of Columbia's

Consumer Protection Procedures Act ("DCCPPA"), § 28-3901. Synapse challenges Plaintiffs'

standing on two grounds. First, for all claims, it asserts that Plaintiffs are asserting no future

injury and so they do not have standing to seek injunctive relief. Second, with respect to

Plaintiffs' NJCFA claim, it asserts that private plaintiffs may not seek solely equitable relief

under this Act.

      1.    <u>Injunctive relief generally</u>

"To establish a present case or controversy in an action for injunctive relief, a plaintiff

must show that he or she is likely to suffer future injury from [the] defendant's threatened illegal

conduct." <u>Roe v. Operation Rescue</u>, 919 F.2d 857, 864 (3d Cir. 1990). Therefore, for a plaintiff

seeking injunctive relief to have standing, he must demonstrate that the claimed injury is

"sufficiently real and immediate." <u>Id.</u> (quoting <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 103

(1983)) (internal quotations omitted). Synapse relies on cases like <u>Smith v. Chrylser Financial</u>

<u>Company, L.L.C.</u>, No. 00-6003, 2004 U.S. Dist. LEXIS 28504, at *10 (D.N.J. Dec. 30, 2004),

and <u>Kutten v. Bank of America, N.A.</u>, No. 04-0244, 2006 U.S. Dist. LEXIS 33898, at *11 (E.D.

Mo. May 26, 2006), which both held that former customer plaintiffs lacked standing to seek

injunctive relief. In <u>Chrysler Financial</u> the plaintiffs "alleg[ed] that Defendant's retail credit

pricing system for automobile purchases result[ed] in discrimination, specifically disparate

impact, against African Americans." 2004 U.S. Dist. LEXIS 28504, at *2. In finding that they

lacked standing to seek injunctive relief, the court held that "[t]he injury which Plaintiffs allege,

that they may want to buy another Chrysler in the future and may be discriminated against by

Defendant, is simply too speculative, especially in light of the fact that Defendant may not ever

be involved in the financing of Plaintiffs' hypothetical future Chrysler purchases." <u>Id.</u> at *10. In

Page 6 of 11

Kutten, the plaintiffs were seeking injunctive relief for alleged breaches of fiduciary and
contractual duties.  2006 U.S. Dist. LEXIS 33898, at *2.  In that case, the plaintiffs alleged,
among other things, that "the breaches . . . [resulted from] Bank of America acquiring several
smaller banks, which caused the 'formerly independent institutions' fiduciary operations [to be]
transmogrified into just cogs in the fee-generating machinery of the Bank and its corporate
parent.'"  Id. at *2-3.  The court held that because the plaintiffs were no longer customers they
lacked standing.  Id. at *11 (citing Reinke v. Bank of Am., N.A., No. 04-1758, 2005 U.S. Dist.
LEXIS 33400, at *4 (E.D. Mo. Dec. 16, 2005), for the proposition that plaintiffs who were "no
longer affiliated with defendants and under no threat of ongoing or future harm" lacked standing
to sue for injunctive relief).

   Synapse argues that Plaintiffs are not likely to become customers in the future, and, even
if they do, "they are incapable of being deceived twice by the same alleged conduct."  (Def.'s
Opp'n, at 10.)  Plaintiffs argue that their injury is sufficiently real and immediate.  Under the
unique circumstances of this case, the Court agrees.  Unlike the situations presented in Chrylser,
which involved a purchase of a "high-cost durable item, only purchasable at a Chrysler dealer
location, [and where] . . . purchases . . . [are] typically separated by several years," or in Kutten,
where business acquisitions occurred and the defendant at issue is a large well-known and easily
identified company, this case involves "low-cost magazine subscriptions, purchased via low-
involvement transactions . . . for which [Synapse] controls the market" but does not always
conspicuously identify itself in subscription offers.  (Pls.'s Reply Mem. of Law in Supp. of Mot.
for Leave to Am. Compl. [hereinafter "Pls.' Reply"], at 11-12.)  Plaintiffs argue that "Synapse is
the leading third-party purveyor of magazine subscriptions in the U.S. and bombards the public

with its offers through multiple channels," and that Plaintiffs have demonstrated that they

regularly subscribe to magazines.  (Id. at 11.)  In fact, Plaintiffs assert that "[Mr.] Austin was

charged for a magazine subscription by [Synapse]" during the course of this litigation, in

November 2008.  (Id. at 12.)  Because the offers are widespread and compelling and because

Synapse is not clearly identified in the offers, Plaintiffs argue that they are likely to unwittingly

become Synapse customers in the future.  Additionally, they disagree that, even if they become

future customers, they cannot be fooled by the same allegedly deceptive conduct twice.  First,

with regard to the renewal postcard, they argue that the whole point of the design is to avoid

attention–to look like junk mail that a customer is likely to disregard.  With regard to Synapse's

IVR phone system, Synpase itself, in opposition to Plaintiffs' class certification motion, argued

that the IVR options change periodically.  Thus, by their own argument, the cancellation option

phrasing presenting in the IVR may differ from what Plaintiffs have been previously faced with.

Finally, Plaintiffs argue that requiring them to be current customers under these circumstances

would require them "to allow themselves to be continually billed for unwanted renewals either

before or during the course of the litigation merely for standing purposes."  (Id. at 13.)  For these

reasons, the Court finds that Plaintiffs have made a sufficient showing that they are likely to

become Synapse customers in the future and suffer injury from the allegedly deceptive conduct.

The Court thus finds that, generally, they have standing to pursue injunctive relief.

       2.    <u>Injunctive relief under the NJCFA</u>

       "The [NJCFA] creates a private cause of action, but only for victims of consumer fraud

who have suffered an ascertainable loss."  <u>Weinberg v. Sprint Corp.</u>, 801 A.2d 281, 291 (N.J.

2002).  In other words, "[t]he express language of the statute requires a private party to have a

claim that he or she has suffered an ascertainable loss of money or property in order to bring a cause of action." Id. (citing N.J. Stat. Ann. § 56:8-19); see also Medical Soc. of New Jersey v. AmeriHealth HMO, Inc., 868 A.2d 1162, 1168 (N.J. Super. Ct. App. Div. 2005) (stating "the well-established rule that a private party may not pursue an action under the [NJCFA] solely for injunctive relief."). Thus, "only the Attorney General [may] bring actions for purely injunctive relief." Weinberg, 801 A.2d at 291. This "does not mean that only a plaintiff who successfully *proves* ascertainable loss may have access to the [NJCFA's] remedies of equitable relief and attorneys' fees." Id. at 292 (emphasis added). But, an ascertainable loss must be sought. Although Plaintiffs argue that Synapse misinterprets the cases setting forth the NJCFA standing requirements, this Court finds that the parties do not disagree on the applicable standard, both cite to the same law, Weinberg v. Sprint. Instead, they disagree on how that standard applies to the facts as plead and relief sought in the proposed amendment.

Contrary to Plaintiffs' argument, Synapse does not argue that Plaintiffs will not be successful in proving ascertainable loss. It argues that Plaintiffs have not plead any claim for ascertainable, money, loss. On the other hand, Plaintiffs argue that they have plead such a loss. Indeed, Plaintiffs' fact allegations assert money damages incurred by the various plaintiffs. (See, e.g., Declaration of Michael L. Braustein in Supp. of Mot. for Leave to Amend, Ex. 1, Proposed Second Amended Complaint, at ¶ 21(f).) In their NJCFA count, they plead that because of these damages they have suffered an ascertainable loss. (See id. at ¶ 87.) But, they do not seek relief for this loss. Instead, they state that "the New Jersey Class and subclass members are entitled to injunctive relief under the NJCFA . . . and to the costs and attorney's fees of this litigation." (Id. at ¶ 89.) The question, then, is whether a fact assertion of ascertainable loss is sufficient to

confer standing under the NJCFA for a private plaintiff when the plaintiff does not seek to be compensated for that loss. As discussed above, "[w]hile a consumer may seek injunctive relief in the context of a suit to recover damages for an ascertainable loss, litigation *seeking exclusively injunctive relief* must be pursued by the Attorney General." Medical Soc. of New Jersey, 868 A.2d at 1168 (emphasis added). Here, regardless of the facts plead, Plaintiffs are only seeking equitable relief; they have not made a *claim* of ascertainable loss. Therefore, they do not have standing under the NJCFA, and this cause of action must be stricken from the proposed amended complaint.

### C.    Futility

Finally, Synapse argues that the Court should deny Plaintiffs' motion to amend because the proposed amendment would be futile as the proposed class lacks cohesion and the class representatives are not adequate. Plaintiffs disagree and also argue that resolution of such issues is more appropriately made upon a motion for class certification, not in determining whether the proposed amendment should be granted. This Court agrees. This is particularly true in light of the other rulings with regard to Plaintiffs' proposed amendment. The two surviving claims, consumer fraud claims under New York and District of Columbia law, were not discussed by either party. Whether class certification is appropriate under Rule 23(b)(2) for these claims is a decision that should be made upon motion for class certification and after thorough briefing by the parties. Synapse has not argued that these substantive claims themselves are futile beyond its general standing argument which has been addressed above. Therefore, the Court finds that any ruling on whether class certification is warranted is premature.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, this Court grants Plaintiffs' motion to amend the complaint. The Court accepts the proposed amended complaint for filing except that Plaintiffs' New Jersey Consumer Fraud claim is stricken from the amendment.  An appropriate Order accompanies this Opinion.

DATED: November 5, 2009              /s/ Jose L. Linares_____
                                     JOSE L. LINARES
                                     UNITED STATES DISTRICT JUDGE