# Exhibit C

In the Matter of:

Time Inc.

Respondent.

## ASSURANCE OF VOLUNTARY COMPLIANCE OR DISCONTINUANCE

This Assurance of Voluntary Compliance or Discontinuance ("Assurance") is entered into by the

Attorneys General of the States of Alaska, California, Delaware, Florida, Hawaii[1], Illinois, Iowa,

Maine, Maryland, Michigan, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio,

Oregon, Pennsylvania, Tennessee, Texas, Virginia, West Virginia and Wisconsin ("States" or

"Participating States"), acting pursuant to their respective consumer protection statutes,[2] and

Time Inc. ("Time") as defined herein.

---

[1] Hawaii is not represented by its Attorney General. Hawaii is represented by its Office of Consumer Protection, an agency which is not part of the state Attorney General's Office, but which is statutorily authorized to undertake consumer protection functions, including legal representation of the State of Hawaii. For simplicity purposes, the entire group will be referred to as the "Attorneys General," and such designation, as it includes Hawaii, refers to the Executive Director of the State of Hawaii Office of Consumer Protection.

[2] Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 *et seq.*; California Business and Professions Code sections 17200 *et seq.* and 17500 *et seq.*; Delaware Consumer Fraud Act, 6 Del. C. §2511, *et seq.* and Delaware Deceptive Trade Practices Act, 6 Del. C. §2531, *et seq.*; Chapter 501, Part II, Florida Statutes (2005); Hawaii Revised Statutes Chapter 480 & 481A; 815 ILCS 505/1, *et seq.*; Iowa Code Section 714.16 (2005); 5 Maine Revised Statutes Annotated section 207 and 209; Maryland Consumer Protection Act, Maryland Code Annotated, Commercial Law § 13-101, *et seq.*; Michigan Consumer Protection Act, MCL 445.901 *et seq*; Mo. Rev. Stat. §§ 407.010 *et seq.*; Nevada Revised Statutes 598.0903 to 598.0999, inclusive; New Mexico Statutes Annotated 1978, S 57-12-1 *et seq.*; NY Executive Law, section 63(12) and NY General Business Law Article 22-A; Ohio Consumer Sales Practices Act, R.C. 1345.01 *et seq.;* Oregon's Unlawful Trade Practices Act, ORS 646.605 *et seq.;* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PS Section 201 *et. seq.*; Tennessee Consumer Protection Act of 1977; Tennessee Code Ann. 47-18-101 *et seq.*; Deceptive Trade Practices-Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §17.41 *et seq.* (Vernon 2002 and Supp. 2005); Virginia Consumer Protection Act, Virginia Code §§ 59.1-196 through 59.1-207; West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101 *et seq.*; Wis. Stat. Section 100.18.

1

# I.  MATTERS INVESTIGATED

1.      The statements in the following "Matters Investigated" paragraphs 2 and 3 represent the concerns of the States regarding certain business practices of Time, and Time does not admit the truth of any statements contained in this "Matters Investigated" section.  All references within this Assurance to the "Matters Investigated" shall refer to the matters identified in the following paragraphs 2 and 3 of this Section I, "Matters Investigated."

2.      Time's Billing Efforts and Time's Automatic Renewal subscription offers have been the primary focus of the States' investigation.  Customers who accept certain Time Automatic Renewal offers are required to notify Time if a subsequent subscription or subscription renewal is not wanted; otherwise the cost of the subscription is charged to the Customer's credit card or the Customer is billed.  These Automatic Renewal terms replace the industry's prior practice of offering limited-term subscriptions that were renewed at the Customer's affirmative election.  As to Time's use of such Automatic Renewal subscription offers, the States have investigated whether the terms were clearly and adequately disclosed; whether the Customer was given an opportunity to expressly consent to the offer; whether the Customer was likely to believe the purchase was for a limited-term subscription, rather than an automatically renewed subscription; whether Customers were subsequently informed of the activation of an Automatic Renewal, and if so, the manner in which they were so informed; the manner by which Customers were billed or charged; and how Time sought to collect payments for charges resulting from such an Automatic Renewal.

3.      In addition, the States have investigated whether Time's use of direct mail solicitations that are formatted similarly to Time's invoices comply with Federal and State laws that prohibit

the use of solicitations that resemble invoices without certain conspicuous disclosures.  Based on the States' investigations, the States believe that Time engaged in business conduct that had the capacity to be deceptive and misleading in violation of the States' consumer protection laws.

## II.  TIME'S POSITION

1.      The statements contained in this section represent the position of Time only, and the States do not admit the truth of any of the statements contained in this section.

2.      Time expressly denies any and all allegations, findings or conclusions by the States that it violated any law or engaged in deceptive and misleading conduct.  Time believes that its consumer marketing practices are and have been lawful and do not and have not violated any consumer protection laws of the States.  Time believes that its consumer marketing practices are not and have not been deceptive and do not and have not had the tendency or capacity to mislead consumers.

## III.  GENERAL AGREEMENTS

1.      The parties have agreed to resolve the issues raised by the Matters Investigated by entering into this Assurance.  Time is entering into this Assurance solely for the purpose of settlement and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Time expressly denies.  No part of this Assurance, including its statements and commitments, shall constitute evidence of any liability, fault, or

wrongdoing and shall not be construed or used as a waiver or limitation of any defense otherwise available to Time or of Time's right to defend itself from, or make any arguments in, any private individual or class claims or suits relating to the existence, subject matter or terms of this Assurance.  No part of this Assurance shall create a private cause of action or confer any right to any third party for violation of any federal or state statute except that a State may file an action to enforce the terms of this Assurance.

2.      Each State acknowledges that by the execution of this Assurance by its duly authorized representatives, this Assurance constitutes a complete settlement and release of all claims, causes of action, damages, fines, costs, fees and penalties, whether asserted or unasserted, arising under the consumer protection statutes set forth in footnote #2 above, and statutes related thereto, with respect to the issues expressly raised in the Matters Investigated for all periods prior to and through the Effective Date of this Assurance, on behalf of such State against Time Inc. (as defined herein), Time Warner Inc., and their past and present representatives, successors, administrators, employees, shareholders, officers, directors, board of directors, attorneys, agents, servants and assignees (all such released parties shall be collectively referred to as the "Releasees").  The States further agree that this Assurance resolves completely and finally the States' inquiry, both individually and collectively, into the Matters Investigated regarding Releasees.  No State shall proceed with or institute any administrative or civil action or proceeding arising under the State's consumer protection statute and statutes related thereto , with respect to the issues expressly raised in the Matters Investigated, against Releasees, including but not limited to, an action or proceeding seeking restitution, injunctive relief, fines, penalties, attorneys fees or costs for (1) any communication or mailing disseminated prior to the Implementation Date of this Assurance; or for (2) any conduct or practice prior to the Effective

4

Date of this Assurance, which was the subject of the Matters Investigated herein, except that a State may institute an action or proceeding to enforce the terms and provisions of this Assurance and to take action based on future non-complying conduct.  Nothing herein shall prevent a State from proceeding against Time Warner Inc. for conduct or communications not related to the Matters Investigated with respect to Time.

## IV.  DEFINITIONS

The following definitions shall be used in interpreting the terms in this Assurance.

1.      "Automatic Renewal" means a plan or arrangement whereby a subscription is automatically renewed at the end of a definite term for a subsequent term.

2.      "Automatic Renewal Offer Terms" means the following Clear and Conspicuous disclosures:

A.      That the subscription will continue unless the Customer notifies Time to stop the subscription;

B.      That the Customer may cancel the subscription at any time;

C.      That the Customer will be billed, credit card charged, or other appropriate description of the payment method depending on the method described to the Customer, or chosen by the Customer on the front of the order form, and that the bill, charge, or other payment method will take place before the start of each new Automatic Renewal term;

D.      The length of the Automatic Renewal subscription term, unless the length of the term is disclosed or chosen by the Customer on the order form;

E.     That the price paid by the Customer for future Automatic Renewal terms may change over time;

F.     The minimum purchase obligation, if there is one; and

G.     All other material terms and conditions of the Automatic Renewal subscription feature, if any.

3.     "Billing Efforts" means any attempt by Time or its agent to collect payment from a Customer.

4.     "Clear and Conspicuous" or "Clearly and Conspicuously" means a statement or communication, written or oral, presented in such font, size, color, location and contrast against the background in which it appears, compared to the other matter with which it is presented, so that it is readily understandable, noticeable and readable.  If such statement or communication modifies, explains, or clarifies other information with which it is presented, it must be presented so that it is in close proximity to such other information and in the same manner (audible or visual) so it is easily noticeable and readily understandable and it must not be obscured in any manner.  With respect to any promotional materials communicated through any non-print medium (including such formats as telephone, television, radio, CD-ROM, DVD, other electronic, magnetic, or interactive media), audio disclosures shall be delivered in a volume and cadence sufficient to be readily audible and understandable.

5.     "Customer" means a person who responds to Time Marketing Materials and accepts a Time offer or portion or feature of an offer.

6.     "Marketing Materials" includes any offer, solicitation, script, Product description, publication, or other promotional materials, renewal notice, purchase order device, fulfillment

material, or any agreement for the sale or trial viewing of Time magazine Products that is

delivered by mail, in person, television or radio broadcast, e-mail, internet, internet web page, or

telephone or other telecommunication device, or appearing in any newspaper or magazine or on

any insert thereto, or web page, internet link or pop-up window.

7.      "Product" or "Products" refers to Time magazine subscriptions.

8.      "Represent" means to state, or to imply through statements, questions, conduct, graphics,

symbols, lettering, formats, devices, language, documents, messages, or through any other

manner or means by which meaning might be conveyed.  For purposes of the Assurance, this

definition applies to other forms of the word "Represent," including without limitation

"Representation."

9.      "Time" or "Time Inc." means Time Inc., its successors and assigns, and its wholly owned

United States subsidiaries as of the Effective Date of this Assurance, including, but not limited

to, Time Inc. Home Entertainment, Entertainment Weekly Inc., Time Publishing Ventures, Inc.,

Time Consumer Marketing, Inc. and Time Customer Service, Inc., all of which may conduct

some or all of the marketing activities and business practices addressed herein.


## V.  ASSURANCES


## V.1.   BUSINESS PRACTICES


V.1.A. Automatic Renewal

1.      All printed Marketing Materials containing an offer with an Automatic Renewal term shall comply with the following:

   A.      The Customer's agreement to the Automatic Renewal Offer Terms shall be obtained in accordance with either subparagraph (1) or subparagraph (2), and in compliance with subparagraph (3) below.

      (1)      All Automatic Renewal Offer Terms shall appear on the order form in immediate proximity to the area on the form at which the Customer selects the subscription or billing terms or where the subscription or billing terms are described and the order form shall Clearly and Conspicuously disclose that the Customer is agreeing to an Automatic Renewal subscription.  The Automatic Renewal Offer Terms shall also appear on materials that can be retained by the Customer.

      (2)      All of the following:

         (a)      On the front of the order form, the Marketing Materials shall (i) refer to the subscription using the term "automatic renewal;" (ii) Clearly and Conspicuously state that the Customer is agreeing to Automatic Renewal; and (iii) specify where the full terms of the Automatic Renewal offer may be found; and

         (b)      The Marketing Materials shall Clearly and Conspicuously state the Automatic Renewal Offer Terms on the first page or front side of the document in which they are placed, presented together preceded by a title identifying them specifically as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or

other description of similar import; provided however, that the Automatic Renewal Offer Terms may appear on the reverse side of the order form if all of the following conditions are met: (i) the magazine subscription is being offered to the Customer as part of a bundled offer from a bank on an application form for a new credit card; (ii) all or substantially all of the terms of the credit card application are presented on the reverse of the application form; (iii) on the front of the application is a clear and conspicuous statement indicating that the Customer has read and is agreeing to the terms of an "automatic renewal" subscription and that statement is in immediate proximity to both an affirmative action required by the subscriber, such as a signature or the checking of an unchecked box and a clear and conspicuous statement directing the customer to the Automatic Renewal Offer Terms on the back of the application form; iv) the affirmative action required by section (iii) of this proviso shall be in addition to the action taken by the Customer indicating acceptance of the credit card application terms; (v) the Automatic Renewal Offer Terms are presented together preceded by a title identifying them as the "Automatic Renewal Terms of [Magazine or Title of Magazine]," "Automatic Renewal Conditions of [Magazine or Title of Magazine]," "Automatic Renewal Obligations of [Magazine or Title of Magazine]," or other description of similar import and are presented in a manner that conspicuously sets them apart from the credit card terms; and (vi) when taken as a whole, the offer effectively conveys to a consumer that he/she is

9

obtaining a magazine subscription for which he/she may incur charges, and that the magazine subscription is subject to automatic renewal.

(3)     In addition to the requirements of Subparagraphs (1) or (2) above, for a period of five (5) years from the Implementation Date of this Assurance: (a) the Customer shall be provided an opportunity to select or opt in to Automatic Renewal through an affirmative action taken on the front of the order form in addition to the action of returning the order form to Time; and (b) in immediate proximity to any language on the order form that solicits Customer interaction with the order form (for example, language asking the Customer to accept a billing term with Automatic Renewal, or payment method, or to enter a credit card number) or in immediate proximity to any language where the subscription or billing terms are described, Time shall seek specific, Express Affirmative Consent to the Automatic Renewal.  For purposes of this subparagraph (3), "front of the order form" means that side of the order form on which the Customer selects the subscription or billing terms or where the subscription or billing terms are described; and "Express Affirmative Consent" means that a person must perform some affirmative act clearly indicating acceptance in immediate proximity to the disclosures specified in Subparagraphs (1) or (2) above.

B.     In addition to the requirements of Paragraph A above, all Marketing Materials that offer an Automatic Renewal subscription, when viewed as a whole, shall Clearly and Conspicuously disclose the material terms of the Automatic Renewal offer and shall not misrepresent the material terms of the offer.

10

C.      In addition to the requirements of Paragraphs A and B above, all Marketing

Materials that offer an Automatic Renewal subscription shall Clearly and Conspicuously

describe the methods by which the Customer may cancel, including, but not limited to, a

toll-free telephone number and shall include in all Marketing Materials the toll-free

telephone number that may be used for cancellation.

D.      Wherever this Assurance requires Time to state the Automatic Renewal Offer

Terms, Time shall not use "advantages," "benefits," or similar words as part of the

specification of the Automatic Renewal Offer Terms; provided that Time may use

"advantages," "benefits," or similar words in additional descriptions of the offer.

2.      In any Automatic Renewal offer made over the telephone, Time shall Clearly and

Conspicuously state the Automatic Renewal Offer Terms prior to obtaining a Customer's

consent and payment information.  Time shall obtain a clear affirmative statement from the

Customer agreeing to the Automatic Renewal Offer Terms after they have been stated to the

Customer.  Time shall send an acknowledgment to any Customer who accepts an Automatic

Renewal offer over the telephone, and such acknowledgment shall contain the toll-free telephone

number for cancellation.  An offer consisting of printed material that directs the Customer to a

telephone number as the method of ordering shall be considered an offer made over the

telephone for purposes of this Assurance, provided that, if the printed material contains all of the

Automatic Renewal Offer Terms, Time shall not be required to send an acknowledgment to

Customers of such an offer.

3.      In any Automatic Renewal offer made on an internet web page, Time shall Clearly and

Conspicuously disclose the Automatic Renewal Offer Terms prior to the button or icon on which

the Customer must click to submit the order (the "Submit Button").  In addition, in any

Automatic Renewal offer made on an internet web page on which the Automatic Renewal Offer Terms do not appear immediately above the Submit Button, the Customer shall be required to affirmatively consent to the Automatic Renewal Offer Terms, such as by clicking "OK," checking an unchecked box, or otherwise taking an affirmative action immediately adjacent to the Automatic Renewal Offer Terms before the Customer submits the order.  The Automatic Renewal Offer Terms shall be preceded by a title identifying them as the "Automatic Renewal Terms," "Automatic Renewal Conditions," "Automatic Renewal Obligations," or other description of similar import.  An offer consisting of printed material that directs the Customer to an internet web page as the method of ordering shall be considered an offer made on an internet web page for purposes of this Assurance.

4.      In the event that Time offers Automatic Renewal magazine subscriptions through media not addressed in this document, Time shall design any such offers consistent with paragraphs V.1.A.1 through V.1.A.3, above.

5.      Time shall send to each Automatic Renewal Customer who has a subscription term of one (1) year or longer a written reminder notice at least thirty (30) days before and not more than sixty (60) days before the end of each subscription term.  For Automatic Renewal Customers whose terms are shorter than one (1) year, Time shall send a written reminder notice at least thirty (30) days before and not more than sixty (60) days before the end of the first term of the subscription, and thereafter at least thirty (30) days before and not more than sixty (60) days before the end of each subscription term that precedes a term for which the price is higher than the previous term; provided that Time shall send a reminder notice to all Automatic Renewal Customers at least once per year.  These reminder notices shall Clearly and Conspicuously:

A.      Remind the Customer that he or she can cancel at any time, and provide a toll-free telephone number through which he or she can do so;

B.      Inform the Customer that he or she is about to be renewed and billed or charged for the next subscription term unless he or she cancels;

C.      State the term or length of the renewal period;

D.      State the price for the next subscription term; and

E.      State the start date of the Automatic Renewal subscription and the deadline by which the Customer must cancel to avoid the Automatic Renewal and any charges related thereto.

6.      For a period of five (5) years from the Implementation Date of this Assurance, the reminder notices described in Paragraph 5, above shall:

A.      Clearly and Conspicuously remind the Customer that he or she is an Automatic Renewal Customer, in type larger and more prominent than the predominant type in the notice, with a Clear and Conspicuous explanation that the subscription is being automatically renewed appearing on the first page on the notice;

B.      Clearly and Conspicuously restate the "Automatic Renewal Offer Terms;" and

C.      For Automatic Renewal Customers whose terms are shorter than one (1) year, Time shall send a written reminder notice at least thirty (30) days before and not more than sixty (60) days before the end of the first two (2) terms of the subscription.

7.      In any Automatic Renewal offer, Time shall Clearly and Conspicuously state the Automatic Renewal Offer Terms and obtain the Customer's affirmative consent to those terms before fulfilling any subscription on an Automatic Renewal basis.  In addition, all Marketing

Materials that offer an Automatic Renewal subscription shall Clearly and Conspicuously display a toll-free telephone number the Customer may use for cancellation.

V.1.B.  Free Products

1.      Time Marketing Materials shall not Represent that a Product is "free" if the cost of the

Product is incorporated into the price of the accompanying item to be purchased.  For example,

if, in order to obtain free issues of a magazine, the Customer is required to purchase additional

issues, Time will not charge more for that number of purchased additional issues than it charges

for that number of issues elsewhere.

2.      Time Marketing Materials shall not use the words "reward," "prize," or words of similar

import to describe an offer or Product if the Customer is required to make a purchase or accept

an obligation of any type, in order to receive the Product or accept the offer.

3.      All obligations accompanying acceptance of a Product being offered free of charge shall

be Clearly and Conspicuously disclosed.

V.1.C  Simulated Invoice

1.      Time solicitations shall not be presented in a form or format that could reasonably be

interpreted as a bill, invoice, or statement of account due.  For purposes of this Assurance, a

determination of whether the format of the solicitation could be "reasonably interpreted" as a bill

shall include consideration of factors such as, but not limited to, the following:

      A.      Inclusion of other Marketing Materials or graphic depictions to promote the

      Product being offered;

      B.      Presentation of the envelope and its similarity to presentations on envelopes

      containing invoices;

C.     Existence and prominence of disclosures that indicate that piece is not an invoice;

D.     Existence and prominence of disclosures that indicate that piece is an offer or order form;

E.     Existence and prominence of disclosures indicating that no payment is required;

F.     Existence and prominence of offer terms such as "limited time offer," "try it now," "best offer," "best deal," "bonus offer," "order now," or like phrases;

G.     Existence and prominence of promotional incentives to order, such as depictions or descriptions of a gift to be given to the Customer with purchase;

H.     Similarities of the format of the offer to the format of Time's invoices;

I.     Existence of any device requiring the Customer to affirmatively indicate acceptance of the offer (such as a signature line, check-off box or sticker to select Product desired); and

J.     Existence of any device requiring the Customer to affirmatively indicate a choice of subscription term or whether to be invoiced later (including but not limited to a signature line, check-off box or sticker to select choice).

## V.2.     BILLING PRACTICES

1.     Time shall not send invoices to or submit any charges for any Customer unless that Customer has ordered the magazine for which he or she is being invoiced or charged either on a one (1) time basis or as part of an Automatic Renewal.

2.     In invoices sent to subscribers, Time shall not refer to a "bad debt file," "consumer credit index," "Time Inc. bad debt file," or similar terms denoting records kept of Customers who have

not paid for magazines ordered or Representing that the debt will be reported to a credit reporting agency.  Time may refer to the fact that an individual Customer's account has not been paid, if that is the case.

3.      Unless legal action is imminent, Time shall not Represent on a billing statement that it intends to file a lawsuit or take any other legal action against a Customer.

4.      Time shall not send the unpaid account of any Automatic Renewal Customer to any third party collection entity.

5.      If the charge results from an Automatic Renewal, Time shall disclose on the first invoice that the Customer is being charged for an Automatic Renewal of the subscription.  For a period of five (5) years from the Implementation Date of this Assurance Time shall disclose on the first three (3) invoices that the Customer is being charged for an Automatic Renewal of the subscription.


**V.3.    CUSTOMER SERVICE**


1.      All Customer requests to cancel must be honored as soon as reasonably possible and Billing Efforts shall cease as soon as reasonably practicable.  In no event shall Time initiate mailing of a bill or invoice subsequent to receipt of a Customer request to cancel, provided that this sentence shall not be deemed violated if Time promptly initiates invoice cancellation procedures but such procedures are too late to prevent the mailing of a prescheduled or automated invoice.

2.      If a Customer asserts that he or she is receiving unordered magazines, the Customer shall be entitled to keep the magazines as a gift and Time shall cease all Billing Efforts as soon as reasonably practicable.

3.      If a Customer asserts that he or she was charged for a magazine subscription to which he or she had not affirmatively consented, and Time cannot prove the order by an actual order form or other similar documentary evidence of the order, Time shall make a full refund of that order to that Customer provided that, in the case of charges pursuant to an Automatic Renewal subscription order, Time shall not be required to refund a magazine subscriber's charges beyond the amount paid for the most recent subscription term.

4.      No attempt to resell or upsell a Customer shall be made by the customer service representative if the Customer asserts that he or she is being charged for unordered Products unless the customer service representative first clearly informs the Customer that a cancellation of any such charges will be entered.


## V.4.    COMPLIANCE


Time shall institute compliance procedures within thirty (30) days of the Effective Date of this Assurance, to train those officers and employees whose responsibilities or duties include compliance with this Assurance.  Time shall distribute copies of this Assurance to all officers and employees whose responsibilities include compliance with this Assurance.

**V.5.    STATE LIAISON**

Time shall designate a contact person within Time to whom the States can refer future consumer complaints for resolution and concerns relating to the terms of this Assurance.

**V.6.    FAILURE TO COMPLY WITH ASSURANCE**

1.    If the Attorney General of a Participating State determines that Time has failed to comply with any of the terms of this Assurance, and if in this Attorney General's sole discretion, the failure to comply does not threaten the health or safety of the citizens of the Participating State, the Attorney General will notify Time in writing via both facsimile (212-467-0905) and overnight mail addressed to the attention of the General Counsel, Time Inc., 1271 Avenue of the Americas, New York, New York 10020, or any person subsequently designated by Time to receive such notice of such failure to comply.  The notice shall advise Time of the manner in which it is believed that this Assurance has been violated.  Time shall then have twenty (20) business days from receipt of such written notice to provide a good faith written response to the Attorney General's determination (the "Cure Period").  The response shall include an affidavit containing, at a minimum, either:

    A.    A statement explaining why Time believes it is in compliance with the Assurance; or

    B.    An explanation of how the alleged violation(s) occurred; and

        1.    a statement that the alleged breach has been cured and how; or

2.      a statement that the alleged breach cannot be reasonably cured within

twenty (20) business days from receipt of the notice, but (1) Time has begun to take

corrective action to cure the alleged breach; (2) Time is pursuing such corrective action

with reasonableness and due diligence; and (3) Time has provided the Attorney General

with a reasonable time-table for curing the alleged breach.

2.      Nothing herein shall prevent the Attorney General from agreeing in writing to provide

Time with additional time beyond the twenty (20) business day period to respond to the notice.

3.      Nothing herein shall be construed to exonerate any contempt or failure to comply with

any provision of this Assurance after the Effective Date, to compromise the authority of the

Attorney General to initiate a proceeding for any contempt or other sanctions for failure to

comply, or to compromise the authority of the court to punish as contempt any violation of this

Assurance.  Furthermore, nothing in this subsection shall be construed to limit the authority of

the Attorney General to protect the interests of the Participating State or the people of the

Participating State.  Notwithstanding the foregoing, the States agree that they will not institute an

enforcement proceeding relating to the practices at issue in the notice provided under Paragraph

V.6.1. above against Time during the Cure Period.

4.      The Participating States Represent that they will seek enforcement of the provisions of

this Assurance with due regard for fairness.

## VI.  PAYMENTS

1.      Time shall make a one (1) time refund offer to Customers whose payments were made in response to Time's billing for an Automatic Renewal of a subscription and who meet all of the following criteria:

> A.      Payment was made during the period January 1, 1998 to May 31, 2004 (payment shall be deemed to have been made on the date it was processed as received by Time);
>
> B.      Payment was made in response to or after the fourth (4th) billing effort;
>
> C.      The purchase was an Automatic Renewal of a subscription;
>
> D.      The Customer did not subsequently renew the subscription on the same account, including via Automatic Renewal; and
>
> E.      The Customer currently resides in one of the Participating States.

2.      Customers who are entitled to receive the offer based upon the criteria in paragraph VI.1, above, shall be identified by Time.  The offer shall be communicated as depicted in Exhibit A to this Assurance and sent to eligible Customers via first class United States mail, in white #10 envelopes bearing only the appropriate postage, the Customer's name and address, Time Inc.'s return address, and, below Time's return address and separated therefrom by one blank line, the words 'REFUND OFFER ENCLOSED' in bold, 14 point or larger type.  Time shall compile a list of last known names and addresses of Customers eligible for the offer and, prior to mailing such offer to such Customers, Time shall update its mailing list using the most recently available United States Post Office change of address data.  Time shall mail the offer no later than ninety (90) days after the Effective Date of this Assurance.

3.      To each Customer who responds to the offer in accordance with the instructions in Exhibit A, Time shall send, via first class United States mail, a check in the full amount of any payment made by such Customer.  Time's checks shall remain payable for at least one (1) year from the date Time mails them.  Time shall not be responsible to pay any check submitted for payment after that date, or for any check returned to Time by the Post Office as undeliverable. Time's payment obligation underlying each uncashed check shall terminate and expire one (1) year and one (1) day after the date Time mails such check.

4.      Time shall establish or designate an administrator that will be responsible for administering this refund offer and providing related Customer service and support.  Time shall provide to eligible Customers and the Participating States contact information for the administrator and shall establish procedures and provide sufficient resources to ensure that Customer inquiries and questions are handled expeditiously.

5.      One state from among the Participating States ("Designated State") shall be designated by the States to serve as a liaison with Time for the purpose of coordinating any Participating State's requests of Time for state-specific information relating to the administration of the refund offer, including but not limited to a list of eligible Customers within a state, a list of Customers whose refund offer was returned as undeliverable by the United States Postal Service; and a list of Customers who have not responded to the offer.  The Designated State shall execute an agreement of confidentiality with Time authorizing the Designated State to collect Customer refund information on behalf of the participating states, agreeing to protect confidential information that it receives from Time, and agreeing to require that each participating State that receives information from the Designated State maintains the confidentiality of the information to the extent permitted by applicable state law.

6.      Within thirty (30) days of the Effective Date of this Assurance, Time shall pay the sum of

$4.5 million dollars to the State of Florida to be distributed to the Participating States in

accordance with an agreement among the States for attorneys fees and investigative costs,

consumer education, litigation or local consumer aid funds, or public protection, or consumer

protection purposes as allowed by each State's laws at the discretion of each State's Attorney

General.

## VII.  GENERAL PROVISIONS

1.      This Assurance shall be governed by the laws of the States.  Nothing in this Assurance

shall be deemed to permit or authorize any violation of the laws of any State or otherwise be

construed to relieve Time of any duty to comply with the applicable laws, rules and regulations

of any State, nor shall anything herein be deemed to constitute permission to engage in any acts

or practices prohibited by such laws, rules or regulations.

2.      Nothing in this Assurance shall be construed to authorize or require any action by Time

in violation of applicable federal, state or other laws.  Time agrees that this Assurance constitutes

an obligation of Time, legally enforceable by the States in accordance with its terms.

3.      This Assurance shall be effective ("Effective Date") on the date that it is executed by all

parties hereto and Time has been notified, via facsimile and regular US mail that all of the parties

hereto have fully executed this Assurance.

4.      The "Implementation Date" of this Assurance by which time Time shall be in compliance

with the above terms, shall be one hundred and five (105) days from the Effective Date, unless

otherwise stated within this Assurance; provided, however, that changes to Time's printed

materials are not required until the first regularly-scheduled printing cycle after the Implementation Date, but in no event later than seventy-five (75) days after the Implementation Date of this Assurance; provided that, should Time make good faith efforts to comply with this Assurance in accordance with this Paragraph, Time shall not be in violation of this Assurance in the event of inadvertent errors prior to one hundred and seventy (170) days after the Implementation Date.

5.      The respective Attorneys General, without further notice, may make *ex parte* application to any appropriate state court for an order approving this Assurance, which shall be considered an Assurance of Voluntary Compliance or an Assurance of Discontinuance as provided by the States' respective laws, or otherwise file this Assurance in any appropriate state court.

6.      This Assurance may be executed in counterparts.

7.      Nothing in this Assurance shall be construed as a waiver of any private rights of any person.

8.      The undersigned representative for each party certifies that he or she is fully authorized by the party he or she represents to enter into the terms and conditions of this Assurance and to legally bind the party he or she represents to the Assurance.

9.      If Time believes that modification of the terms of this Assurance become warranted due to (a) changes in the marketplace or applicable law or (b) an erosion in Time's competitive position as a result of the terms of this Assurance, Time may submit the proposed modification in writing to the State(s).  The State(s) will respond within a reasonable period of time after receipt of the request.

10.     In the event any law or regulation is enacted or adopted by the federal government or by any of the States which is inconsistent with the terms of this Assurance, such that Time cannot

comply with both the statute or regulation and the terms of this Assurance, the requirements of such law or regulation, to the extent of such inconsistency and after written notice by Time, shall replace any provision contained herein so that compliance with such law or regulation shall be deemed compliance in such jurisdictions with this Assurance.

11.     At any time during the term of this Assurance, Time shall have the right to request that the State(s), based on Time's satisfactory performance of the terms of the Assurance, modify or terminate this Assurance.  The State(s) shall make a good faith evaluation of Time's request and make a prompt decision (in no event more than forty-five (45) days from Time's request) as to whether to grant Time's request.  The decision whether to grant Time's request to modify or terminate this Assurance shall rest solely within the discretion of the State(s).

12.     All notices and other communications relating to this Assurance between the States and Time shall be in writing and shall be deemed to have been given when delivered in person to the parties' designated representatives at their addresses set forth below, or when received or refused if sent to the parties' designated representatives at their addresses given below by registered or certified mail with return receipt requested, or to such other representatives or addresses as the parties shall designate by a notice sent in a like manner.

13.     Upon the written request of any State, Time agrees to provide business records or documents and sworn testimony sufficient to enable the States to monitor compliance with this Assurance, and to make any requested information available within thirty days (30) of the request, at the Office of the requesting Attorney General or at any other location that is mutually agreeable in writing to Time and the Attorney General of the State.  This section shall in no way limit the State's right to obtain documents, information, or testimony pursuant to any federal or state law, regulation, or rule.

14.     Any notices required to be sent to the State(s) or Time by this Assurance shall be sent by United States mail, certified mail return receipt requested, or other nationally recognized courier service that provides for tracking services and identification of the person signing for the document.  The documents shall be sent to the following addresses:

Alaska:            State of Alaska Department of Law, Office of the Attorney General, Consumer Protection Unit, 1031 West 4th Avenue, Suite 200, Anchorage, AK 99501-5903

California:       Dennis W. Dawson-   Deputy Attorney General, California Attorney General's Office, 110 West A Street, Suite 1100, San Diego, California 92101.

Delaware:       Deputy Attorney General, Director of Consumer Protection, 820 N. French Street, Fifth Floor, Wilmington, DE 19801

Florida:          Director, Economic Crimes Division, Office of the Attorney General, State of Florida, The Capitol, PL-01 Tallahassee, FL 32399-1050

Hawaii:           State of Hawaii Office of Consumer Protection, 235 S. Beretania Street #801, Honolulu, Hawaii 96813

Illinois           Office of the Illinois Attorney General, Consumer Fraud Bureau,  500 So. Second Street, Springfield, IL   62706

Iowa:             Director, Consumer Protection Division, Office of the Iowa Attorney General, Hoover Building, 1305 East Walnut, Des Moines, Iowa  50319

Maine:            Office of the Maine Attorney General, Station House 6Augusta, Maine 04333

Maryland:       Maryland Office of the Attorney General, Consumer Protection Division, 200 St. Paul Place, 16th Floor, Baltimore, Maryland 21202

Michigan:       Michigan Dept. of Attorney General Consumer Protection Division, 525 West Ottawa St., 6th Floor, Williams Building, Lansing, MI  48913

Missouri:        Chief, Consumer Protection Division, Office of Missouri Attorney General, Supreme Court Bldg., 207 W. High Street, P.O. Box 899, Jefferson City, MO 65102-0899

Nevada:          Office of the Nevada Attorney General, Bureau of Consumer Protection, 555 East Washington Avenue, Suite 3900, Las Vegas, Nevada 89101

New Jersey:    Office of the Attorney General, State of New Jersey, Director, Division of Consumer Affairs, 124 Halsey Street, Newark, New Jersey 07102

New Mexico:   Office of the Attorney General, Consumer Protection Director, P.O. Drawer 1508, Santa Fe, NM 87504

New York     Herbert Israel, Assistant Attorney General, Consumer Frauds & Protection Bureau, 120 Broadway -- 3rd Floor, New York, NY 10271

Ohio:        Michael S. Ziegler, Assistant Attorney General, Consumer Protection Section, 30 East Broad Street, 14th Floor, Columbus, Ohio 43215

Oregon:      Senior Assistant Attorney General Tom Elden,  Oregon Department of Justice, 1162 Court Street NE, Salem OR 97301

Pennsylvania: Pennsylvania Attorney General's Office, Bureau of Consumer Protection, 100 Samter Bldg, 101 Penn Avenue,  Scranton, PA 18503

Tennessee:   Deputy Attorney General, Office of the Attorney General, 425 5th Avenue North, P.O. Box 20207, Nashville, TN  37202-0207

Texas:       Chief, Consumer Protection Division, Office of the Attorney General of Texas, P.O. Box 12548, Austin, Texas 78711-2548

Virginia:    Office of the Attorney General of Virginia, Antitrust & Consumer Litigation Section, 900 East Main Street, Richmond, VA 23219

West Virginia: Office of West Virginia Attorney General, Consumer Protection Division, 812 Quarrier Street, Fourth Floor,Charleston, WV 25326..

Wisconsin:   Office of the Wisconsin Attorney General, 17 West Main Street, P.O. Box 7857, Madison, WI  53707-7857

Representative of Time:     General Counsel, Time Inc., 1271 Avenue of the Americas, New York, NY   10020

## SIGNATURES

We the undersigned, who have the authority to consent and sign on behalf of the parties in this

matter, hereby consent to the form and content of the foregoing Assurance and to its entry:

Signed this 28th day of February, 2006.


_____

Brian Wolfe

Senior Vice President, Time Inc. and

President, Time Consumer Marketing, Inc.



Signed this 2nd day of March, 2006.


_____

Bernard Nash, Esq.
Margaret Feinstein, Esq.

Dickstein Shapiro Morin & Oshinsky LLP
2101 L Street, NW
Washington, DC  20037
Phone:   (202) 785-9700

Attorneys for Time Inc.

**Exhibit A**

Refund Notice - This is not a solicitation.

(NAME)

(ADDRESS)

(ACCOUNT NUMBER)


Dear _____

The Attorney General of your state has expressed a concern that some Time Inc. magazine customers may have received and paid for specific magazine subscriptions during the period from January 1, 1998 to May 31, 2004 which they did not order.  To resolve your Attorney General's concern, we have agreed with your Attorney General to offer refunds to certain customers who believe they were charged for a magazine subscription during the time period identified above without their consent.  According to our records, you may be entitled to such a payment for [magazine name], if you believe you were charged for such subscription without ordering or renewing it.  If you did not intend to order or renew the magazine subscription, you can obtain this refund by filling out and signing the enclosed form.  Return the form to Time Inc, postmarked no later than _____ *[date filled in that is eight weeks from send date][Time will allow two additional weeks' grace period to accept late returns.]*; a self-addressed envelope is enclosed for your convenience.  You may wish to keep a copy of this letter and your completed response form.  If you do not receive a payment within eight weeks of sending in your request form, please contact the Attorney General within your state.

We at Time Inc. want to make certain that you are always satisfied with any magazine you have purchased from us.  You should always feel free to contact us with any questions.

Sincerely,


*[Add customer service number for claims form questions]*

29

**Exhibit A**

Claim Form

# This Refund Request form must be returned to the address listed below postmarked no later than _____/*/ in order to receive a payment.  (A self-addressed envelope is provided for your convenience.)

**Time Inc.**
**Claims Processing Center**
**(Address)**

Name:  [print please]

Address:

Account #:

I am seeking a refund for (magazine title) because:

>  I was billed for and paid for (insert magazine subscription name) but, **to the best of my knowledge**, I did not order that magazine subscription during the period January 1, 1998 to May 31, 2004, and

>  **To the best of my knowledge**, I have not previously received a refund for that magazine subscription.

This information is true and correct to the best of my knowledge, information and belief.

This the _____ day of _____, 2006.

                              _____
                                    Signature of Claimant

                              _____
                                 Print Your Name Here

>  ***Please note that completion of this Refund Request form will not disrupt any current Time Inc. subscriptions that you may have for this or any other Time Inc. magazine.**

*[*date filled in that is eight weeks from send date][Time will allow two additional weeks' grace period to accept late returns.]*