Geoffrey W. Castello (GC 1509)
Lauri A. Mazzuchetti (LM 8035)
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
(973) 503-5900

Thomas E. Gilbertsen (*admitted pro hac vice*)
Joanna Baden-Mayer (*admitted pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street N.W.
Washington, D.C.  20007
(202) 342-8400

Attorneys for Defendant
Synapse Group, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES T. MCNAIR, et al.,<br><br>        Plaintiff,<br><br>        -against-<br><br>SYNAPSE GROUP, INC.,<br><br>        Defendant. | CIVIL ACTION NO:  2:06-CV-05072 (JLL)(CCC)<br><br>**ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED CLASS ACTION COMPLAINT** |

Defendant Synapse Group, Inc. ("Synapse"), through undersigned counsel, hereby answers the Second Amended Class Action Complaint ("Second Amended Complaint") filed by plaintiffs Charles T. McNair ("McNair"), Theodore Austin ("Austin"), Danielle Demetriou ("Demetriou"), Ushma Desai ("Desai"), and Julie Dynko ("Dynko") as follows:

**SUMMARY OF THE COMPLAINT**

1.      Synapse denies that plaintiffs may proceed on their own behalf or on behalf of the alleged class they seek to represent, denies that it offers "negative option magazine

plans," denies that the alleged class has any cognizable claims presented in the Second Amended Complaint, denies that it engaged in any unconscionable commercial or deceptive business retention practices, and denies all remaining allegations set forth in Paragraph 1.

2.      Synapse denies that plaintiffs have standing to receive any preliminary or permanent injunctive relief or any other equitable relief, denies that it engaged in any deceptive, unlawful or unfair business practice, unconscionable commercial practice, misrepresentation, fraud, or any other act in violation of any State Consumer Fraud Act, and denies the remaining legal conclusions in Paragraph 2.

3.      Synapse admits that it is a provider of subscriber acquisition and management services to publishers of consumer magazines and that it has a principle place of business in Stamford, Connecticut, and denies that its business is accurately described by the rest of the Second Amended Complaint.

4.      Synapse admits that it conducts different businesses under different subsidiaries and/or d/b/a names, including Magazine Direct, New Sub Magazine Services, SynapseConnect, Synapse Solutions and CAP Systems.   Synapse denies the remaining allegations in Paragraph 4 of the Second Amended Complaint.

5.      Synapse admits the allegations in Paragraph 5.

6.      Synapse admits that under its continuous service subscription programs, subscribers provide their bank or credit account information at the time they sign up for their initial magazine subscription term, and agree that that account will be automatically charged for renewals of the magazine subscription if they do not cancel the subscription by a given date after being provided notice of the upcoming charge.   The remaining allegations in Paragraph 6 are legal conclusions to which no answer is required, and they are therefore denied.

7.      Paragraph 7 contains a legal conclusion about "negative option offers" to which no answer is required, and is therefore denied.  Synapse admits that under some of its offers, customers accept magazine subscriptions for an initial term of less than one year for free or for a low introductory price.  These customers agree that they will be automatically charged a disclosed price at a given point in time, and that they will be automatically charged for renewals of the subscriptions thereafter unless they choose to cancel, and all customers are able to cancel their subscriptions.

8.      Paragraph 8 of the Second Amended Complaint contains legal conclusions about a "negative option offer" to which no answer is required, and it is therefore denied. Synapse admits that under some of its offers, customers accept magazine subscriptions for an initial term of one year for a set price.  These customers agree that they will be automatically charged for renewals of the subscriptions thereafter unless they chose to cancel, and all customers are able to cancel their subscriptions.

9.      Synapse denies the allegations in Paragraph 9.

10.     Synapse denies the allegations in Paragraph 10.

11.     Synapse admits that it maintains an automated telephone system through which consumers may cancel magazine subscriptions and conduct other business with Synapse if they so choose, but denies the remaining allegations in Paragraph 11.

12.     Synapse denies the allegations in Paragraph 12.

13.     Synapse admits the allegations in Paragraph 13.

**PARTIES**

14.     Synapse admits the allegations in Paragraph 14(a)-(e).

15.     Synapse admits the allegations in Paragraph 15.

3

16.     Synapse admits the allegations in Paragraph 16.

17.     Synapse admits that it does business in the State of New Jersey and denies the remaining legal conclusions in Paragraph 17 of the Second Amended Complaint.

## VENUE, JURISDICTION AND APPLICABLE LAW

18.     The allegations contained in Paragraph 18 contain legal conclusions to which no answer is required, and are therefore denied.

19.     Synapse denies the allegations contained in Paragraph 19.   Synapse specifically denies that the matter in controversy exceeds $5,000,000.

20.     The allegations contained in Paragraph 20 contain legal conclusions to which no answer is required, and are therefore denied.

## PLAINTIFFS' ALLEGATIONS OF FACT

## PLAINTIFF MCNAIR

21.     a.     Synapse admits the allegations in Paragraph 21(a).

        b.     Synapse admits the allegations in Paragraph 21(b).

        c.     Synapse admits that it sent a notice of renewal to Plaintiff McNair which McNair opened and acted upon.  Synapse lacks information or knowledge sufficient to form a belief as to whether McNair almost threw the notice out, denies that the notice was deceptive, and denies the remaining allegations in Paragraph 21(c).

        d.     Synapse admits that the notice provided McNair with a toll-free number and date before which to call Synapse's automated telephone system ("IVR").  Synapse further admits that McNair called the IVR before the date provided on the notice and did not cancel all of his upcoming automatic renewal charges, but denies that the IVR presented a deceptive cancellation option.  Synapse lacks information or knowledge sufficient to form a

belief as to the remaining allegations in Paragraph 21(d), including McNair's intent when calling Synapse's IVR, and therefore denies them.

        e.      Synapse admits the allegations in Paragraph 21(e).

        f.      Synapse admits that McNair called its IVR on July 12, 2006, and cancelled his subscription to *Time* magazine but did not cancel his upcoming *National Geographic Traveler* magazine renewal, resulting in a $17.95 charge on McNair's credit card. Synapse lacks information or knowledge sufficient to form a belief as to McNair's intent on this call, and denies the remaining allegations of Paragraph 21(f).

        g.      Synapse admits that its IVR did not audibly announce to McNair how to transfer to a live operator.  Synapse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21(g), and therefore denies them.

        h.      Synapse admits the allegations in Paragraph 21(h).

### PLAINTIFF AUSTIN

22.     a.      Synapse admits the allegations in Paragraph 22(a).

        b.      Synapse admits that it sent a notice of renewal to Austin, lacks information or knowledge sufficient to form a belief as to whether Austin opened or read the notice, and denies the remaining allegations in Paragraph 22(b).

        c.      Synapse admits that Austin cancelled his subscription to *Maxim* after being charged for that subscription and received a pro rata refund of $18.33.  Synapse admits that pre-authorization charges of $2.01 each appeared on Austin's bank statement prior to June 9, 2007.  Synapse admits that a number to Synapse's IVR appeared on Austin's bank statement, and that Austin called that number on May 4, 2007, and received an explanation for a

charge but did not cancel a subscription on that call.  Synapse denies that Austin suffered any damages.

        d.      Synapse denies the allegations in Paragraph 22(d).

        e.      Synapse admits that its IVR did not audibly announce to Austin how to transfer to a live operator.

### PLAINTIFF DEMETRIOU

        23.    a.      Synapse admits that in 2007, Plaintiff Demetriou accepted an offer on Active.com for 3-month trial subscriptions to *Her Sport*, *Shape*, and *Fitness* magazines, to be followed by automatic charges for 12 more months and automatic charges for yearly renewals thereafter if the subscriptions were not cancelled, but denies the legal conclusion that this constituted a "negative option plan."

        b.      Synapse admits that it sent Demetriou a notification in advance of the end of her 3-month trial subscription periods, but denies the remaining allegations in Paragraph 23(b).

        c.      Synapse denies the allegations in Paragraph 23(c).

        d.      Synapse admits the allegations in Paragraph 23(d).

        e.      Synapse admits that Demetriou called Synapse's IVR on July 3, 2007, pressed 0 to transfer to a live operator, and cancelled her subscription to *Fitness* magazine with a live operator.  Synapse lacks information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 23(e), and therefore denies them.

        f.      Synapse admits that Demetriou requested that Synapse reimburse her for bank overdraft fees and that Synapse denied this request.

g.     Synapse admits that its IVR did not audibly announce to Demetriou how to transfer to a live operator.

## PLAINTIFF DESAI

24.     a.     Synapse denies the legal conclusion that it offered Desai a "negative option plan," and admits the remaining allegations of Paragraph 24(a).

b.     Synapse admits that it sent Desai a notification in advance of the end of her 3-month trial subscription periods but denies the remaining allegations in Paragraph 24(b).

c.     Synapse admits that Desai did not cancel her subscriptions to *Maxim* and *ESPN* before the end of her free trial and was therefore charged for those subscriptions.  Synapse denies that it caused Desai to incur overdraft charges or that Desai has otherwise suffered any damages.  Synapse lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24(c), and therefore denies them.

## PLAINTIFF DYNKO

25.     a.     Synapse admits the allegations in Paragraph 25(a).

b.     Synapse denies the allegations in Paragraph 25(b).

c.     Synapse admits that Dynko placed Order No. 107721015 through Synapse marketing partner FreeLotto.com on July 3, 2000 for *Sesame Street*, *Family Circle, Family Money*, and *Family PC* magazines.  Synapse admits that Dynko kept her subscription to *Family Circle* for six years and that her credit card was charged for each subscription term. Synapse admits that on December 19, 2002, Dynko placed Order No. 232192515 through MagOutlet.com for *Electronic Gaming Monthly*, *Preschool Playroom*, and *Budget Living*. Synapse admits that Dynko kept her subscriptions to these magazines for approximately three

years before canceling them with a live customer service representative, for a pro rata refund, on September 3, 2005.  Synapse admits that Dynko placed another order through Bizrate.com on January 27, 2003, for *Preschool Playroom.*  Dynko cancelled this subscription to *Preschool Playroom* on September 3, 2005 with a live customer service representative and a received pro rata refund.  Synapse denies the remaining allegations in Paragraph 25(c) of the Second Amended Complaint, including that Dynko was sent any postcard with a "deceptive design," that Dynko was not properly notified of any charges for Synapse magazine subscriptions, and that Dynko did not open or read Synapse's notice postcard until 2005.  Synapse further denies that Dynko has suffered any damages.

## GENERAL ALLEGATIONS

26.     Synapse denies the allegations in Paragraph 26.

27.     Synapse admits that consumers occasionally voice complaints about it in internet chat rooms, but denies the remaining allegations in Paragraph 27.  Synapse lacks sufficient information to admit to the authenticity of the materials annexed to Plaintiffs' Second Amended Complaint as Exhibit B, or to the truth of the hearsay matters asserted therein, and they are therefore denied.

28.     Synapse admits that it has an "A+" rating from the Better Business Bureau and that, as of August 2, 2007, the Better Business Bureau of Connecticut reported that it received a total of 238 complaints against Synapse over the preceding 36 months.  Synapse further admits that it conducts different businesses under different subsidiaries or d/b/a names, including Newsub Magazine Services, LLC.  Synapse denies the remaining allegations in Paragraph 28.

29.     Synapse admits that it conducts different businesses under different

subsidiaries or d/b/a names, and that some Synapse notice postcards may have a return address from SynapseConnect, Inc., and that the billing descriptor for a charge on a Synapse customer's credit card may be TWX in some circumstances. Synapse denies the remaining allegations in Paragraph 29.

30.    Synapse denies the allegations in Paragraph 30.

31.    The referenced document speaks for itself, and Synapse therefore denies the allegations in Paragraph 31.

32.    The referenced document speaks for itself, and Synapse therefore denies the allegations in Paragraph 32.

33.    The referenced document speaks for itself, and Synapse therefore denies the allegations in Paragraph 33.

34.    Synapse admits the allegations in Paragraph 34.

35.    Synapse admits the allegations in Paragraph 35.

36.    Synapse denies the allegations in Paragraph 36.

37.    The referenced document speaks for itself, and Synapse complies with all of its legal obligations under applicable state and federal law.   Synapse denies all remaining allegations in Paragraph 37.

38.    The allegations contained in Paragraph 38 contain legal conclusions to which no answer is required, and Synapse therefore denies them.

39.    Synapse denies the allegations in Paragraph 39.

40.    The referenced document speaks for itself, and Synapse therefore denies the allegations in Paragraph 40.

41.    The referenced document speaks for itself, and Synapse therefore denies

the allegations in Paragraph 41.

42.     The referenced document speaks for itself, and Synapse therefore denies the allegations in Paragraph 42.

43.     Synapse denies the allegations in Paragraph 43.

44.     Synapse denies the allegations in Paragraph 44.

45.     Synapse denies the allegations in Paragraph 45.

46.     Synapse denies that it sends postcards to customers in the form shown in Exhibit A to the Second Amended Complaint, and denies the remaining allegations in Paragraph 46.

47.     Synapse lacks information or knowledge sufficient to form a belief as to whether McNair "almost threw out the postcard he received," and denies the remaining allegations in Paragraph 47.

48.     Synapse denies the allegations in Paragraph 48.

49.     Synapse denies the allegations in Paragraph 49.  The advance notifications that Synapse now sends its customers are two-sided postcards that do not have an "interior."

50.     Synapse admits the allegations in Paragraph 50 except that the postcard illustrated therein is not its current postcard notice.

51.     Synapse admits that the postcard referred to in Paragraph 51 illustrates the postcard sent to, read and acted upon by McNair.  Synapse denies the remaining allegations in Paragraph 51.

52.     Synapse denies the characterization of the postcard in Paragraph 52.

53.     Synapse denies the characterization of the postcard in Paragraph 53.

54.     Synapse denies the allegations in Paragraph 54.

55.     Synapse denies the allegations in Paragraph 55.

56.     Synapse denies the characterization of the postcard in Paragraph 56, and specifically denies that any of its postcard notices are or have been misleading.

57.     Synapse denies the allegations in Paragraph 57.

58.     Synapse denies the allegations and legal conclusions in Paragraph 58.

59.     Synapse denies the allegations in Paragraph 59.

60.     Synapse denies the allegations and legal conclusions in Paragraph 60.

61.     Synapse admits the allegations in Paragraph 61.

62.     Synapse denies the allegations in Paragraph 62.

63.     Synapse admits that it does not promote a mail-in cancellation option, and denies all remaining allegations in Paragraph 63.

64.     Synapse denies the allegations in Paragraph 64.

65.     Synapse denies the allegations and legal conclusions in Paragraph 65.

66.     Synapse denies that its conduct violates the FTC Act, denies that plaintiffs have any private cause of action under the FTC Act, and denies all allegations and legal conclusions contained in Paragraph 66.

67.     Paragraph 67 contains legal conclusions to which no answer is required, and are therefore denied.  Plaintiffs have no cause of action under the FTC Negative Option Rule.

68.     Paragraph 68 contains legal conclusions to which no answer is required, and are therefore denied.

69.     Paragraph 69 contains legal conclusions to which no answer is required, and are therefore denied.

70.     Paragraph 70 contains legal conclusions to which no answer is required, and are therefore denied.

71.     Paragraph 71 contains legal conclusions to which no answer is required, and are therefore denied.

72.     Synapse denies the allegations and legal conclusions in Paragraph 72. Plaintiffs have no cause of action under FTC regulations or Magazine Publisher Association rules.

73.     Synapse denies the allegations and legal conclusions contained in Paragraph 73.

74.     Synapse denies the allegations and legal conclusions contained in Paragraph 74.

## CLASS ACTION ALLEGATIONS

75.     Synapse admits that Plaintiffs purport to bring this action on behalf of a putative class, but denies that Plaintiffs are entitled to bring this action on behalf of a class. Synapse further denies that the defined class meets any of the requirements of Fed. R. Civ. P. 23.

76.     Synapse admits that Plaintiffs purport to bring this action on behalf of three separate  putative classes, but denies that Plaintiffs are entitled to bring this action on behalf any class.  Synapse further denies that any Synapse magazine customers are being sent or will be sent in the future a "standard exterior postcard" of the type alleged in the Second Amended Complaint.  Synapse further denies that the three alleged classes meet any of the requirements of Fed. R. Civ. P. 23, and all remaining factual allegations and legal conclusions are denied.

77.     Synapse denies that Plaintiffs are entitled to bring this action on behalf of

the subclass described or any other subclass.  Synapse further denies that the alleged subclass meets any of the requirements of Fed. R. Civ. P. 23.

78.    Synapse denies that Plaintiffs can meet the numerosity requirement or any of the other requirements of Fed. R. Civ. P. 23, and denies the remaining allegations in Paragraph 78.

79.    Synapse denies that Plaintiffs can meet the superiority requirement or any of the other requirements of Fed. R. Civ. P. 23, and denies the remaining allegations in Paragraph 79.

80.    Synapse denies that Plaintiffs can meet the commonality requirement or any of the other requirements of Fed. R. Civ. P. 23, and denies the remaining allegations in Paragraph 80.  Synapse specifically denies that the questions in paragraph 80(a) and (e) are common to the putative class, as Synapse no longer mails the "standard exterior" postcard alleged in the Second Amended Complaint.

81.    Synapse denies that Plaintiffs can meet the typicality requirement or any of the other requirements of Fed. R. Civ. P. 23, and denies the remaining allegations of Paragraph 81.  Synapse specifically denies that members of the putative class received or will receive the same notice postcard sent to Plaintiffs.

82.    Synapse denies that Plaintiffs can meet the typicality or adequacy requirements or any of the other requirements of Fed. R. Civ. P. 23, and denies the remaining allegations of Paragraph 82.

83.    Synapse denies the factual allegations and legal conclusions in Paragraph 83.

84.    Paragraph 84 contains legal conclusions to which no answer is required,

and is therefore denied.

85.    Paragraph 85 contains legal conclusions to which no answer is required, and is therefore denied.

## FIRST COUNT
### Violations of the New Jersey Consumer Fraud Act – N.J.S.A. 56:8-1 et seq.

86.    Synapse hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

87.    Synapse denies the allegations in Paragraph 87.

88.    Synapse denies the allegations in Paragraph 88.

89.    Synapse denies the allegations in Paragraph 89.

90.    Synapse denies the allegations in Paragraph 90.

91.    Synapse denies the allegations in Paragraph 91.

## SECOND COUNT
### Violations of the New York General Business Law §§ 349 and 350

92.    Synapse hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

93.    Synapse denies the allegations in Paragraph 93.

94.    Synapse denies the allegations in Paragraph 94.

95.    Synapse denies the allegations in Paragraph 95.

96.    Synapse denies the allegations in Paragraph 96.

97.    Synapse denies the allegations in Paragraph 97.

## THIRD COUNT
### Violations of District of Columbia Consumer Protection Procedures Act (DCCPA)
### D.C. Code Ann. §28-3901

98.    Synapse hereby incorporates by reference each of the preceding

allegations as though fully set forth herein.

99.     Synapse denies the allegations in Paragraph 99

100.    Synapse denies the allegations in Paragraph 100.

101.    Synapse denies the allegations in Paragraph 101.

102.    Synapse denies the allegations in Paragraph 102.

103.    Synapse denies the allegations in Paragraph 103.

**FOURTH COUNT**
**Equitable Relief**

104.    Synapse hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

105.    Synapse denies that Plaintiffs have standing to pursue or are otherwise entitled to any equitable relief and denies the remaining allegations in Paragraph 105.

106.    Synapse denies the allegations in Paragraph 106.

107.    Synapse denies the allegations in Paragraph 107.

**FIFTH COUNT**
**Declaratory Relief**

108.    Synapse hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

109.    Synapse denies that Plaintiffs or the alleged class have standing to pursue or are otherwise entitled to any declaratory relief, and denies the remaining allegations in Paragraph 109.

15

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim Against Synapse)

The Second Amended Complaint fails to state facts sufficient to constitute any cause of action against Synapse and further fails to state facts sufficient to entitle Plaintiffs or the alleged class to the relief sought, or to any other relief.

### SECOND AFFIRMATIVE DEFENSE
### (Mootness)

Plaintiffs' claims for equitable relief are moot.

### THIRD AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiffs and some or all of the putative class members have no authority or standing to bring some or all of the claims alleged in the Second Amended Complaint.

### FOURTH AFFIRMATIVE DEFENSE
### (Law Of The Case)

Plaintiffs' request for class certification is barred by the "law-of-the-case" doctrine.

### FIFTH AFFIRMATIVE DEFENSE
### (Intervening Cause)

Plaintiffs' alleged injuries, which Synapse denies, were not caused by Synapse but by an independent intervening cause, including but not limited to Plaintiffs' own actions.

### SIXTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

At all relevant times, Plaintiffs' injuries, if any, were aggravated by their failure to use reasonable diligence to mitigate the same. Therefore, Plaintiffs' recovery, if any, should be barred or decreased by reason of their failure to mitigate alleged losses.

## SEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Plaintiffs' claims are barred by the applicable statute of limitations.

## EIGHTH AFFIRMATIVE DEFENSE
### (Estoppel and Waiver)

Any damages that Plaintiffs may have suffered, which Synapse denies, directly and proximately resulted from Plaintiffs' own conduct. Therefore, Plaintiffs have waived and are estopped and barred from pursuing the claims alleged in the Second Amended Complaint against Synapse and from recovery of any damages whatsoever as against Synapse.

## NINTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

The Second Amended Complaint and each purported cause of action therein for equitable relief is barred by the doctrine of unclean hands.

## TENTH AFFIRMATIVE DEFENSE
### (Accord and Satisfaction)

The Second Amended Complaint and each purported cause of action therein is barred by full accord and satisfaction reached with Plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Commercial Reasonableness)

The Second Amended Complaint and each purported cause of action therein is barred in whole or in part by the defense of commercial reasonableness in that Synapse's conduct was at all times justified, fair, and undertaken in good faith and consistent with the exercise of valid business purposes.

## TWELFTH AFFIRMATIVE DEFENSE
### (Right to Assert Additional Defenses)

Synapse reserves the right to assert additional affirmative defenses at such time and to such extent as warranted by further developments in this case, including without limitation such affirmative defenses that are referenced in Rule 8(c) of the Federal Rules of Civil Procedure or are otherwise available under applicable law.

WHEREFORE, defendant Synapse Group, Inc., denies that the Court has subject matter jurisdiction over the claims asserted in the Second Amended Complaint, denies that plaintiffs or the class have standing to bring the claims asserted in the Second Amended Complaint, denies that Plaintiffs are entitled to certification of any class, denies that Plaintiffs or the alleged class are entitled to any of the damages or equitable relief sought, including any declaratory judgment, injunctive relief, costs or attorney's fees, and respectfully requests that the Court enter judgment in defendant's favor, together with costs and such other relief as the Court may deem just and appropriate.

Dated:   January 8, 2010

KELLEY DRYE & WARREN LLP

By:   /s/ *Geoffrey W. Castello*
Geoffrey W. Castello
Lauri A. Mazzuchetti
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
Telephone:  973 503-5900
Facsimile:  973-503-5950
Attorneys for Defendant
Synapse Group, Inc.

OF COUNSEL:

Thomas E. Gilbertsen
(admitted *pro hac vice*)
Joanna Baden-Mayer
(admitted *pro hac vice*)
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
Telephone:  202-342-8400
Facsimile:  202-342-8451

Gary A. Greene
Chief Corporate Counsel
Synapse Group, Inc.
225 High Ridge Road, East Building
Stamford, Connecticut 06905
Telephone:  203-391-0594
Facsimile:  212-467-2395

Attorneys for Defendant
Synapse Group, Inc.