UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES T. MCNAIR, <br> THEODORE AUSTIN; <br> DANIELLE DEMETRIOU; <br> USHMA DESAI; and <br> JULIE DYNKO, <br> on behalf of themselves and all <br> others similarly situated, <br><br>          Plaintiffs, <br><br>     v. <br><br> SYNAPSE GROUP, INC., <br><br>          Defendant. | Civ. Action No. 06-cv-5072 (JLL)(CCC) |

## **DECLARATION OF CHRISTOPHER M. TYLER**

Comes now Christopher M. Tyler, being of lawful age, and hereby declares as follows:

1. My name is Christopher M. Tyler and I am employed by Synapse Group, Inc. ("Synapse") as Director of Retention Marketing. I respectfully submit this declaration in connection with Synapse's opposition to plaintiffs' class certification motion. I am over the age of twenty-one (21), and submit this declaration based on my personal knowledge, information and belief. I submitted previous declarations in this litigation, verified Synapse's interrogatory answers, and plaintiffs' counsel took my deposition in this case. My responsibilities at Synapse include the creation and implementation of Synapse's retention marketing programs, *i.e.*, programs focused on developing communications with existing customers in an effort to retain their business through Synapse's call centers, interactive voice recognition telephone system ("IVR"), and through the internet.

2. I read the Declaration of John W. Ward submitted in support of plaintiffs' renewed class certification motion, and I reviewed company records about Mr. Ward's history as a customer with Synapse. These records are maintained by Synapse in the ordinary course of business.

3. Synapse records indicate that John Ward has ordered thirteen (13) subscription orders with Synapse, dating back to July 2007. Mr. Ward has also contacted Synapse at least six times via the IVR system and live customer service operators.

4. On July 7, 2007, John Ward ordered four (4) annual magazine subscriptions in response to a Synapse offer on the internet Bizrate site. Mr. Ward paid $2 processing and handling for each title, including *Sporting News, This Old House, Car and Driver,* and *Popular Photography and Imaging*. Prior to charging the account number provided by Mr. Ward for subscription renewals the following year, Synapse sent him a postcard notice about the upcoming charges and provided a toll-free number for him to call if he intended to cancel. During the first two weeks of July 2008, Synapse charged Mr. Ward's account for subscription renewals on the four magazines he ordered. Specifically, he was charged $78.00 for another year of the *Sporting News*, $20 for another year of *This Old House*, $21.94 for another year of *Car and Driver*, and $24.00 for another year of *Popular Photography*.

5. On July 17, 2008, Mr. Ward contacted Synapse and spoke with a live operator, canceling three magazine subscriptions and accepting *pro-rata* refunds. Specifically, he received a $75.00 refund for *The Sporting News*, an $18.00 refund for *This Old House*, and a $20.11 refund for *Car and Driver*. At this point, Mr. Ward had received issues for three different magazine titles (one of which is a weekly publication) for over a year at a total cost of less than $15.

6. Synapse records indicate no further activity on Mr. Ward's account until the following year, when Mr. Ward was sent a postcard notice about his upcoming renewal for *Popular Photography*. The notice that Synapse sent to him was of the new single postcard format illustrated by Exhibit 50 to plaintiffs' renewed motion. On July 7, 2009, Mr. Ward's account was billed $29.00 for another – his third – yearly subscription to *Popular Photography*. The following day on July 8, 2009, Mr. Ward contacted Synapse and cancelled this subscription for a full refund, using the IVR system without live operator assistance.

7. On July 25, 2007, Mr. Ward ordered an additional four magazine titles in response to a Synapse offer on the internet site Bizrate. On that date, he accepted an offer to pay $2 processing and handling for the first year of a subscription to *Stuff, Kiplinger's Personal Finance Magazine, Electronic House*, and *Seventeen*. Synapse charged the processing and handling fees to an account number that Mr. Ward provided when he accepted the offer. One year later during the last week of July 2008, after sending Mr. Ward a postcard notice about his upcoming subscription renewals, Synapse charged his account for three of the titles – *Kiplinger's Personal Finance* ($21.00), *Electronic House* ($24.00) and *Seventeen* ($24.00) – while one of his titles, *Stuff*, had ceased publishing in August 2007.

8. Mr. Ward contacted a Synapse live operator on August 4, 2008 and cancelled his three renewals, receiving a *pro-rata* refund for two of his renewal cancellations – *Kiplinger's Personal Finance* ($19.25) and *Seventeen* ($22.00) – while receiving a full refund for his cancellation of *Electronic House*. On this order, Mr. Ward received thirteen months of issues for three different magazines at a total cost of $10.75.

9. On November 20, 2007 – four months after Mr. Ward ordered the foregoing eight (8) magazine subscriptions through the two Bizrate transactions – Mr. Ward contacted a Synapse

live operator using a toll-free telephone number maintained by the company. Synapse records indicate that our customer service agent accessed Mr. Ward's two Bizrate orders, but no further action was requested or taken during that telephone conversation.

10. On October 29, 2008, Mr. Ward ordered five additional magazine subscriptions from Synapse using travel awards he accumulated with US Airways. The five new subscriptions were for *JPG, Entertainment Weekly, ESPN, Automobile* and *Motor Trend*. *JPG* ceased publishing in January 2009. None of these subscriptions were subject to continuous service terms or any charges. Synapse records reflect no further activity for this order.

11. Synapse records indicate that Mr. Ward contacted the IVR on October 11, 2009, located the two Bizrate orders indicated above, and then transferred to a live operator. The Synapse customer service representative created a Customer Service Action form indicating that Mr. Ward claims he was charged $77.00 for *Sports Illustrated*. This form indicates that our customer service representative was unable to find any order for that title or charge in that amount for Mr. Ward. Customer service called Mr. Ward back, requesting additional information, and our records indicate no further activity since that time.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: 7/19/10

Christopher M. Tyler

4