NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES T. MCNAIR, et al., | Civil Action No.: 06-5072 (JLL) |
| Plaintiffs, | OPINION |
| v. | |
| SYNAPSE GROUP, INC., | |
| Defendant. | |

**LINARES, District Judge.**

This matter comes before the Court on a motion for class certification filed by Plaintiffs Charles McNair, Theodore Austin, Danielle Demetriou, Ushma Desai, and Julie Dynko ("Plaintiffs"). This Court has considered the submissions in support of and in opposition to the motion and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' motion for class certification is denied.

**I.   BACKGROUND**

The facts of this case are more fully detailed in this Court's June 29, 2009, Opinion denying Plaintiffs' initial motion for class certification. Only those facts relevant for the present motion are included here.

Plaintiffs are, were, or will be subscribers to magazines obtained through Defendant Synapse Group, Inc. ("Synapse"). Plaintiffs claim that Synapse engages in deceptive practices

related to its cancellation procedure which resulted in unwanted renewals. On September 24, 2008, Plaintiffs moved for class certification under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), seeking to certify the following class:

> From October 23, 2000 to the date of the order certifying the class, all persons residing in New Jersey, New York and the District of Columbia who accepted an initial magazine subscription, or subscriptions, offered by Synapse, were sent a postcard notification with the "standard exterior" in advance of an automatic charge for an additional term or renewal of their subscription(s), and either before or after being charged for the additional term or renewal of their subscription(s):
> (1) called the Synapse "IVR," and responded affirmatively to the recorded question asking whether they were calling to cancel a magazine or selected an option to cancel a magazine from the list of options presented, and rejected all "save attempts" that may have been offered; or,
> (2) fully cancelled the subscription(s) by speaking with a Synapse live operator; and, were not refunded all charges for the additional term or renewal of the magazine subscription(s) and/or were not reimbursed upon request to Synapse all bank overdraft charges, on their debit or credit card(s). Excluded from the class are defendant, its agents and affiliates, and any government entities.

McNair v. Synapse Group, Inc., 2009 WL 1873582, at *6 (D.N.J. June 29, 2009). Plaintiffs sought to certify this class for each of the following claims: a violation of the New Jersey Consumer Fraud Act ("CFA"); deceptive trade practices under New York's General Business Law § 349 ("GBL"); a violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"); breach of contract; and a violation of the Electronic Fund Transfer Act ("EFTA"). Plaintiffs sought both monetary and injunctive relief on behalf of themselves and the proposed class.

The Court denied certification under Rule 23(b)(2), holding that, because Plaintiffs primarily sought monetary relief for the proposed class, certification under this rule was not appropriate. This Court also denied certification for all the claims under Rule 23(b)(3), finding that common issues related to each claim did not predominate over individual ones.

Plaintiffs subsequently informed the Court of its intention to file a renewed motion for certification on different grounds. The Court construed the letter as one seeking permission to move to amend the complaint; the Court granted the request. Plaintiffs then filed a motion to amend the complaint along with a proposed amendment. The Plaintiffs in the proposed amendment dropped their breach of contract and EFTA claims, and sought only equitable relief. Synapse challenged the amendment on various grounds. In part, it argued that Plaintiffs did not have standing to seek injunctive relief, both generally and specifically under the CFA. The Court found "that Plaintiffs have made a sufficient showing that they are likely to become Synapse customers in the future and suffer injury from the allegedly deceptive conduct." McNair v. Synapse, 2009 WL 3754183, at *4 (D.N.J. Nov. 5, 2009). Thus, the Court held that Plaintiffs generally have standing to pursue injunctive claims. But, the Court held, nevertheless, that Plaintiffs lacked standing to pursue the CFA claim because, under the CFA, private plaintiffs do not have standing to pursue a claim for purely injunctive relief. As a result, the Court struck the CFA claim from the amendment; the Court held that the GBL and CPPA claims could proceed. In the motion to amend decision, the Court declined to address Synapse's arguments related to certification of the consumer fraud claims, directing that such arguments should be made in response to a motion for certification.

Plaintiffs moved for reconsideration of the decision striking the CFA claim from the amendment. Plaintiffs did not challenge any holding in the motion to amend decision. Rather, they requested an opportunity to correct what they asserted was a pleading error. Plaintiffs stated that they had not intended to remove the claims for monetary relief on behalf of the individual plaintiffs. The Court permitted Plaintiffs to amend the complaint one last time.

Plaintiffs' final amendment identifies three separate proposed state classes–New Jersey, New York, and the District of Columbia. (Second Am. Class Action Compl. [hereinafter "Am. Compl."] ¶ 76.) The proposed definition for these classes is as follows:

> From October 23, 2000 to the date of the order certifying the class, all persons residing in New Jersey, New York and the District of Columbia who are or will be magazine subscription customers of Synapse and will be sent in the future Defendant's "standard exterior" postcard as the advance notification of an automatic charge for an additional term or renewal of their subscription(s). Excluded from the class are Defendant, its agents and affiliates, and any government entities.

(Id. at ¶ 75.) Plaintiffs also seek to certify a subclass for each of these classes. The proposed subclass definition is as follows:

> Members of the Class for whom their postcard notification and/or billing descriptor on their credit card or bank statement provide a telephone number to an IVR that does not audibly announce how to transfer to a live operator.

(Id. at ¶ 77.) Plaintiffs McNair, Demetriou, and Desai are the representatives for the proposed New Jersey class; Plaintiff Austin is the representative of the proposed District of Columbia class; and Plaintiff Dynkno is the representative of the proposed New York class. (See Reply Mem. of Law in Supp. of Pls.' Mot. for Class Cert. Under F.R.C.P. 23(b)(2) [hereinafter "Pls.' Reply"] at 5-6.) In this amended complaint, Plaintiffs seek monetary and injunctive relief on behalf of themselves. They seek only injunctive relief on behalf of the proposed classes. Plaintiffs presently move to certify the proposed classes and subclass for each of the consumer fraud claims.

## II.   LEGAL STANDARD

In order to obtain class certification under Rule 23, a plaintiff must establish all the requirements of Rule 23(a)–numerosity, commonality, typicality, and adequacy–in addition to the elements of 23(b)(1), (2), or (3). Fed. R. Civ. P. 23. As noted above, Plaintiffs previously sought

and were denied certification under Rules 23(b)(2) and (b)(3). They presently seek certification only under Rule 23(b)(2) based on the revised claims and proposed class definitions in the Amended Complaint. Plaintiffs make clear in their briefing that they are seeking purely injunctive relief, not monetary damages, on behalf of the class.

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2) "most frequently [serves] as the vehicle for civil rights actions and other institutional reform cases that receive class action treatment." Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 58-59 (3d Cir. 1994); see also Stewart v. Abraham, 275 F.3d 220, 228 (3d Cir. 2001); Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 n.18 (3d Cir. 1998) ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries[;] [t]he members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender."). However, (b)(2) actions have not been limited to these specific types of causes of actions. See Baby Neal, 43 F.3d at 59 (noting that "[w]hat is important is that the relief sought by the named plaintiffs . . . benefit the entire class"). But, while classes seeking (b)(2) certification need not fall into a particular cause of action category, a named plaintiff must demonstrate that the proposed class is cohesive. Barnes, 161 F.3d at 143.

While there may be some overlap, cohesion under (b)(2) is not the same as predominance under (b)(3). See id. Cohesion requires that "[t]he relief sought . . . must benefit the entire class, and the class representatives bear the burden of demonstrating that the interests of the class members are so like those of the individual representatives that injustice will not result from their

being bound by such judgment in the subsequent application of principles of res judicata." Sullivan v. DB Invs., Inc., 613 F.3d 134, 156 (3d Cir. 2010) (internal quotations omitted); see also Stewart, 275 F.3d at 228. Thus, a "District Court has the discretion to deny certification in Rule 23(b)(2) cases in the presence of disparate factual circumstances." Barnes, 161 F.3d at 143 (internal quotations omitted) (affirming the decertification of a class based on the presence of individualized issues related to proving causation). In fact, the Third Circuit has stated that, because (b)(2) class members may not opt out of the class, a "court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it should under subsection 23(b)(3)." Id. (quoting and discussing Santiago v. City of Philadelphia, 72 F.R.D. 619, 628 (E.D. Pa.1976)). Therefore, in this case, Plaintiffs bear the burden of demonstrating that the proposed classes and subclass are cohesive in addition to meeting the four requirements of Rule 23(a).

### III. DISCUSSION

#### A. Postcard Classes

As an initial matter, the Court notes that Synapse asserts, and Plaintiffs acknowledge, that Synapse is no longer using the "standard exterior" postcard at issue for the primary proposed classes; Synapse is currently using a single-sided postcard covered by the subclass. (See Pls.' Reply at 3.) Synapse voluntarily stopped using the "standard exterior" postcard in 2009. However, it is well established that voluntary cessation of an unlawful practice alone does not preclude an action related to the practice. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (holding that "voluntary cessation of a challenged practice" does not moot a case unless "subsequent events [make] it absolutely clear that the allegedly

wrongful behavior could not reasonably be expected to recur."). Synapse previously has stated that it periodically changes the postcard format. It could easily resume use of the allegedly deceptive postcard. Therefore, this fact alone is not dispositive of the issue.

Plaintiffs assert that Synapse's "deceptive standard exterior postcard is designed to look like junk mail and will continue to be treated as such by Plaintiffs who do not have a duty of hyper-vigilance." (Am. Compl. ¶ 84(f).) They argue that "Synapse's standard double postcard *and* its replacement, the standard single postcard adopted by Synapse in February 2009, are *ineffective* as notifications." (Pls.' Reply at 3 (emphasis in original).) As noted above, the postcard classes, as opposed to the subclass, target the double postcard. On behalf of the proposed state classes, Plaintiffs seek to enjoin Synapse from using this postcard to inform customers of upcoming renewals.

    1.    <u>New Jersey Class</u>

To meet their burden for certification of the CFA claim, Plaintiffs argue that standing only needs to be established for the named plaintiff, and that "ascertainable loss, and . . . causation also, only need[s] to be shown for the *named* plaintiff, not for the members of an accompanying equitable/declaratory class which they represent." (Pls.' Reply at 4 (emphasis in original).) On the other hand, Synapse argues that Plaintiffs must prove loss and causation for every class member at trial, and that, this Court has already held that individual issues of causation exist which preclude class certification.

The Court first notes that it already has determined that Plaintiffs generally have standing to pursue injunctive relief as they are likely to "become Synapse customers in the future and suffer injury from the allegedly deceptive conduct." <u>McNair</u>, 2009 WL 3754183, at *4. With regard to

the statutory standing requirements of the CFA, New Jersey courts have held that "[i]n a class action, only the putative class representative is required to satisfy any applicable standing requirement." Laufer v. U.S. Life Ins. Co. in City of New York, 896 A.2d 1101, 1110 (N.J. Super. Ct. App. Div. 2006) (certifying a CFA class claim where the named plaintiff was seeking monetary relief for himself but seeking injunctive relief on behalf of the class) (citing Lewis v. Casey, 518 U.S. 343, 395 (1996)). The Laufer court held that "if [the named plaintiff] can make a sufficient showing of 'ascertainable loss' to survive a motion for summary judgment, this showing does not have to be made with respect to other unnamed class members." Id. at 1111. The court further held that "[o]nce the class representative establishes standing, the determination whether the action may be maintained as a class action turns solely on whether the requirements of Rule 4:32-1[(b)(2)] have been satisfied." Id. (comparing New Jersey Rule 4:32-1(b)(2) to Federal Rule 23(b)(2) and certifying a class for a CFA claim).

In this case, the named plaintiffs are seeking both monetary and injunctive relief for themselves but are seeking only injunctive relief on behalf of the class. As this Court stated in a prior opinion in this case, "only the Attorney General [may] bring actions for purely injunctive relief." McNair, 2009 WL 3754183, at *4 (quoting Weinberg v. Sprint Corp., 801 A.2d 281, 291 (N.J. 2002)). As noted above, the New Jersey Appellate Division in Laufer held that where the named plaintiff in a class action is seeking more than merely injunctive relief, the action, including the one on behalf of the class, is properly before the court. Plaintiffs, however, take Laufer one step further and argue not only that the action on behalf of the proposed class members is properly before the court, but also that ascertainable loss and causation only need to be proven for the named plaintiff. Such a finding would be significant for the class certification analysis

because individual issues of causation often act as a bar to certification under both Rule 23(b)(3) and (b)(2). See, e.g., Barnes, 161 F.3d at 144-46; McNair, 2009 WL 1873582, at *10.

This Court has previously held that private plaintiffs, who are seeking monetary damages, must prove the elements of ascertainable loss and causation for a CFA claim. McNair, 2009 WL 1873582, at *8. It has also held that a plaintiff may not use the class action device as a way to bypass the individual proof requirements. Id. at *10. On the other hand, courts interpreting the requirements of Rule 23(b)(2) have stated that not every class member must be harmed or harmed in the same way. See, e.g., Baby Neal, 43 F.3d at 60.

Synapse argues that all class members, not only the named plaintiffs, must ultimately prove all the elements of a private action CFA claim, including causation. It further argues that, given this Court's previous finding that proving causation under the circumstances of the case is rife with individual issues, the proposed class lacks cohesion. Although there is a difference between the predominance requirement of Rule 23(b)(3) and the cohesion requirement of Rule 23(b)(2), the Court agrees with Synapse that individual issues related to proving causation, as detailed in this Court's prior class certification opinion, would preclude certification of a (b)(2) class if causation is an element which must be proven for each class member. But, the Court does not find that causation clearly must be established for all class members where only injunctive relief is sought on behalf of the class and where the named plaintiff is seeking both monetary and injunctive relief. The named plaintiff clearly must establish loss and causation on behalf of himself for any relief, including the injunctive relief, to be appropriate; the injunctive relief on behalf of the class, under those circumstances, could be viewed as merely derivative. However, because the Court finds that the proposed class lacks cohesion for other reasons, it need not

resolve this issue.

Under Rule 23(b)(2), for a plaintiff to meet his burden of showing cohesion, he must demonstrate that the relief sought will benefit the entire class. Plaintiffs' proposed postcard class includes every Synapse customer "who [is] or will be [a] magazine subscription customer of Synapse and will be sent in the future Defendant's 'standard exterior' postcard as the advance notification of an automatic charge for an additional term or renewal of their subscription(s)." (Am. Compl. ¶ 75.) But, this Court has previously found that not all of the Plaintiffs were deceived by the postcards. For example, Plaintiff McNair testified that he read the card and understood it; Plaintiffs do not assert that he was deceived by the card. (See Pls.' Reply at 7.) For class members like Mr. McNair, the relief requested would have no benefit. Additionally, as this Court also previously noted, it is unclear from the facts as presented by Plaintiffs whether all subscribers are required to receive any notice. Not all customers sign up for Synapse subscriptions in the same way or under the same terms. Where no notice may be required, there is no relationship between the postcard and any potential harm and, thus, relief related to the postcard would arguably have no benefit for those proposed class members. In other words, there is no common trait, other than broadly being a Synapse magazine subscriber, that binds the individuals in the proposed class together.

Plaintiffs argue that there is a common trait among the proposed class. They argue that the "common trait of the class" is that "they were sent the same standard, deceptive postcard." (Pls.' Reply at 8.) Plaintiffs assert that "[c]ohesiveness exists where the Defendant's marketing practices and refund policies are unconscionable as to all class members and where the cancellation policies applied to all class members are designed to prevent cancellation and fail to

serve as notice of the underlying subscriptions." (Pls.' Reply at 9 (citing In re Nat'l Credit Mgmt. Group, LLC, 21 F. Supp. 2d 424, 452-53 ( D.N.J. 1998).) But, National Credit was addressing what constituted an unconscionable commercial practice under the CFA, it was not analyzing whether cohesion for Rule 23(b)(2) existed.  See Nat'l Credit, 21 F. Supp. 2d at 447.  As with their original certification motion, Plaintiffs focus almost exclusively on the behavior of Synapse. In their original motion they sought to simply equate a common course of conduct with predominance; presently, they seek to simply equate a common course of conduct with cohesion. While a common course of conduct is an element in favor of class certification, it is not the exclusive consideration.  Under Plaintiffs theory, if a plaintiff could show that one person was injured by a defendant's practice, it could obtain certification of a class seeking injunctive relief for all people who also experienced the practice, regardless of whether they were injured or whether they had any other facts in common with the other plaintiffs–the defendant's practice would be the only necessary binding trait.

Cohesiveness, as defined by the Third Circuit, requires that, because of a common trait of the class, the relief sought is appropriate for and will benefit the entire class.  Thus, typically, there is a common trait among the proposed plaintiff class, such as race, that makes the defendant's common practice likely to affect each member of the class in the same or a similar way.  Here, while there may be a common practice - the design of the double-sided postcard that is challenged by Plaintiffs - they have not demonstrated that there is a common trait of the proposed class members.  The named plaintiffs and the proposed class members' factual circumstances differ in significant respects to the claims made by Plaintiffs.

Therefore, the Court finds that certification of this class for the CFA claim is not

appropriate as disparate factual circumstances demonstrate that there is no common issue solely related to the postcard for which will be remedied by the relief sought and which will benefit the entire class. Plaintiffs' motion to certify a class for this claim is denied.

  2. <u>New York and District of Columbia Classes</u>

As with their CFA claim, Plaintiffs argue that only the named plaintiffs must prove causation under the GBL and the CPPA. Additionally, citing to <u>Grayson v. AT&T Corporation</u>, 980 A.2d 1137 (D.C. Cir. 2009), a decision of the District of Columbia Court of Appeals, Plaintiffs assert that causation is not a required element even for the named plaintiff for the CPPA claim. The <u>Grayson</u> decision relied on by Plaintiffs was vacated and will be reheard en banc.[1] <u>See</u> 989 A.2d 709 (D.C. Cir. 2010). In this Court's original class certification decision, issued prior to the <u>Grayson</u> decision, the Court noted that the elements of a CPPA claim were far from clear. But, the Court held that, based on the statute and case law and by analogy to other similar statutes, causation was a required element for a CPPA claim.

The Court need not reconsider its prior opinion in light of <u>Grayson</u> or determine whether causation must be proved for all class members for a CPPA or GBL claim because, for the reasons discussed above, even if causation is not a required element, certification of the postcard class for the CPPA and GBL claims would not be appropriate. The class, as defined, is simply too broad, encompassing individuals who lack a sufficiently cohesive set of factual circumstances to demonstrate that the relief sought would benefit the entire class.

Because the Court finds that Plaintiffs have not met their burden of demonstrating

---

[1] In their brief, Plaintiffs did not note that the decision relied on had been vacated despite the decision being rendered prior to filing of their brief.

cohesion, it need not decide whether the requirements of Rule 23(a) have been met. Class certification of the District of Columbia and New York postcard classes is also denied.

### B.   IVR Sub-Class

Plaintiffs' proposed IVR sub-class claim is even more tenuous than their postcard class claims. Plaintiffs asserts that the IVR unlawfully excludes an audible instruction for how a caller can reach a live operator. Plaintiffs claim that Synapse "make[s] the cancellation procedure unreasonably difficult for the proposed class." (Pls.' Mem. of Law in Supp. of Pls.' Mot. for Class Cert. Under F.R.C.P. 23(b)(2) at 1.) For example, Plaintiffs argue that the lack of clear instructions for how to reach an operator traps subscriber in an IVR "maze" without any exit. (Pls.' Reply at 8 n.4.) In this Court's prior opinion, the Court stated:

> Although their argument is unclear, Plaintiffs appear to argue that for the individuals who reached a live operator, the claim is not that they were deceived by the operator, but that they were nevertheless harmed by not receiving a full refund. Presumably the damage, receiving a pro rata versus a full refund, was incurred because they called too late because they did not receive adequate notice before the charge was made. This is really a postcard not IVR argument–the damage alleged is caused by the timing of the call, not the experience of the call itself.

McNair, 2009 WL 1873582, at *12 n.3. In other words, any harm that the Plaintiffs seek to remedy in this case was incurred not because of a failure to speak with an operator but because they cancelled their subscriptions too late, allegedly due to Synapse's defective notice of the renewal charge. Thus, Plaintiffs have not demonstrated how any plaintiff, much less the entire class, would benefit from the IVR instruction they seek in this action. Additionally, even if Plaintiffs' arguments now can be construed as asserting that the ability to speak to a live operator would permitted them to cancel for a full refund or that it would provide an exit from the IVR "maze" and permit them any other type of cancellation that would address the harm they

challenge, such an argument would necessarily hinge on each individual varied interaction or potential interaction with the live operator. Such arguments would certainly present disparate factual circumstances across the proposed sub-class. Therefore, class certification for this sub-class for all claims is also denied.

## IV.   CONCLUSION

For the foregoing reasons, this Court denies Plaintiffs' motion for certification of a class under Rule 23(b)(2). Because the Court denies Plaintiffs' motion for certification, Synapse's motion to strike or exclude the reports of Dr. Warren J. Keegan are denied as moot. An appropriate Order accompanies this Opinion.

DATED: November 15, 2010

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE