## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| CHARLES T. MCNAIR,<br>THEODORE AUSTIN,<br>DANIELLE DEMETRIOU,<br>USHMA DESAI and JULIE DYNKO<br>on behalf of themselves and all others similarly<br>situated,<br><br>               Plaintiffs,<br><br>         v.<br><br>SYNAPSE GROUP INC.,<br><br>          Defendant. | Case No. 2:06-cv-05072 (JLL) (CCC)<br><br><br><br>***Oral Argument Requested*** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
## RECONSIDERATION OF THE COURT'S NOVEMBER 15, 2010 ORDER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT AND PROCEDURAL BACKGROUND.................1

LEGAL ARGUMENT.................................................................................3

PReturn POINT I:  THE APPLICABLE STANDARDS TO WHICH PLAINTIFFS'
          MOTION FOR RECONSIDERATION SHOULD BE HELD..........3

POINT II: THE RELIEF SOUGHT BENEFITS THE WHOLE CLASS
          WITHIN THE REQUIREMENTS OF THIRD CIRCUIT
          LAW, SUPPORTING A FINDING OF COHESION...................4

    A.  THE INJUNCTIVE RELIEF SOUGHT IS A *PRIMA FACIE*
       BENEFIT TO ALL CLASS MEMBERS AND, NEVERTHELESS,
       THIRD CIRCUIT LAW DOES NOT REQUIRE EVERY CLASS
       MEMBER TO ACTUALLY BENEFIT FROM THE RELIEF
       SOUGHT......................................................................4

    B.  ADVANCE NOTIFICATION OF AUTOMATIC CHARGES BY
       SYNAPSE *IS* REQUIRED FOR ALL PROPOSED CLASS
       MEMBERS, THUS THERE *IS* A RELATIONSHIP BETWEEN
       THE SUBJECT POSTCARDS AND POTENTIAL HARM............6

       1.  Synapse Explicitly Represents To Its "Continuous Service"
          Customers That They Will Be Sent An Advance Notification
          Before A Charge Is
          Incurred..............................................................6

          (i)  *All* of Named Plaintiffs Accepted Synapse Offers That
             Represent That An Advance Notification of Charges Would
             Be Sent Before A Charge Is Incurred............................6

          (ii) *All* Or Virtually All Of Synapse's "Continuous Service" Offers
             Explicitly Represent That An Advance Notification Would Be
             Sent Before A Charge Is Incurred...............................7

          (iii) The Subject "Double" and Newer "Single" Postcards
             *Themselves* Not Only Represent, But "*Guarantee*," That
             Customers Will Be Sent An Advance Notification Before A
             Charge *Every Year*...............................................8

          (iv) The Court May Exercise Its Discretion To Revise The Proposed
             Postcard Classes To Limit Them To Those Persons Whose
             Initial Offers Recited That They Would Be Sent An Advance

Notification……………………………………………………….9

2. *Synapse Is Required Under The New Jersey and New York Consumer Statutes* To Send An Advance Notification Before A Charge Is Incurred:  Objective Evidence From States' Attorneys General Actions And Settlements…………………………….................................10

   (i) Assurance of Discontinuance Between Time Inc. and States' Attorneys General…………………………………………..……...10

   (ii) New York Attorney General Settlement With Symantec And McAfee Regarding Anti-Virus Software Automatic Renewals…12

3. The FTC Act Requires Synapse To Send An Advance Notification Before A Charge……………………………………….12

POINT III:  THE COURT'S FINDING THAT PLAINTIFFS "HAVE NOT DEMONSTRATED THAT THERE IS A COMMON *TRAIT* OF THE PROPOSED CLASS MEMBERS" ANDTHUS THERE IS NO COHESION UNDER THIRD CIRCUIT LAW IS IN ERROR……..15

A. THE FACTS OF RECORD PRESENTED IN SUPPORT OF CERTIFICATION SHOW THAT THE PROBLEM SOUGHT TO BE ADDRESSED IS NOT ONLY REAL BUT SUBSTANTIAL AND REBUT THE COURT'S "ONE PERSON" OBJECTION TO PLAINTIFFS' THEORY................................................................................15

B. IN THE CONSUMER FRAUD CONTEXT, CLASS MEMBERS' RELATIONSHIP AS OF A DEFENDANT COUPLED WITH BEING SUBJECTED TO COMMON DECEPTIVE AND UNCONSCIONABLE BUSINESS PRACTICES DIRECTLY RELATING TO THAT RELATIONSHIP *IS* SUFFICIENT TO FIND COHESION………………………………………………………..17

CONCLUSION………………………………………………………………..………20

# TABLE OF AUTHORITIES

## CASES

*Adamson v. Bowen,*
  855 F.2d 668, 676 (10th Cir. 1988)……………………………………………….………..20

*Baby Neal v.* Casey,
  43 F.3d 48, 59 (3d Cir. 1994)…………………………………………………………....5

*Barnes v. Am. Tobacco Co.*,
  161 F3d 127, 143 n. 18 (3d Cir. 1998)…………………………………………………18

*FTC v. Warshak (Berkeley Premium Nutraceuticals, Inc.)*,
  Civ. Action No. 1:06-cv-00051-SAS (S.D.OH) filed January 30, 2006
  [FTC File No. 042 3003]...................................................................................................13

*Geraghty v. United States Parole Commission*,
  719 F.2d 1199 (3d Cir. 1983)…………………………………………….………..…18

*Hassine v. Jeffes*,
  846 F.2d 169 (3d Cir. 1988)………..…………………………………….……………5

*Holmes v. Continental Can Company*,
  706 F.2d 1144, 1155 (11th Cir. 1983)…………………………………………………18

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305, 320 (3d Cir. 2008)…………………………………………….…………3

*Johnson v. Diamond State Port Corp.*,
  50 Fed. Appx. 554, 560 (3d Cir. 2002)…………………………………….…………3

*Lee v. Carter Reed Company, LLC,*
  203 N.J. 496, 2010 WL 378595 (N.J. Sup. CT, April 27, 2010)…………….…………8

*Max's Seafood Café v. Quinteros*,
  176 F.3d 669, 677 (3d Cir. 1999)…………………………………………….…………3

*Rice v. City of Philadelphia*,
  66 F.R.D. 17 (E.D. Pa. 1974)…………………………………………………….…..19

*Santiago v. City of Philadelphia*,
  72 F.R.D. 619, 628 (E.D. Pa. 1976)……………………………………….………..19

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,*
   546 F.3d 196, 202 (2d Cir. 2008)……………………………………….…………3

*Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)…………………………………..……..20

*Wetzel v. Liberty Mut. Ins. Co.*,
   508 F.2d 239 (3d Cir. 1975)…………………………………………………………18

## RULES

F.R.C.P
   Rule 23(b)(2)…………………………………………………………….…………2
   Rule 23(b)(3)…………………………………………………………….…………2

L. CIV. R. 7.1(i)………………………………………………………………….…………3

7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1775 (2d ed. 1986)……….20

**PRELIMINARY STATEMENT AND PROCEDURAL BACKGROUND**

Plaintiffs file this Motion for Reconsideration of the Court's Order of November 15,

2010, denying Plaintiffs' Motion for Class Certification under Fed.R.Civ.P. 23(b)(2).  Plaintiffs

ask that the Court reconsider its Order as to Plaintiffs' class and first subclass only ("the postcard

classes") as defined in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class

Certification Under F.R.C.P. 23(b)(2) (ECF Doc. No. 112-3):

> All persons residing in New Jersey from October 23, 2000 to the date of the order
> certifying the class, and all persons residing in New York and District of Columbia
> from October 23, 2003 to the date of the order certifying the class, who as customers of
> Synapse were mailed a postcard advance notification of an automatic charge for an
> additional term or renewal of their magazine subscription(s) that failed to state that he
> or she is an Automatic Renewal Customer or is subject to an automatic charge, in type
> larger and more prominent than the predominant type in the notice.  Excluded from the
> class are defendant, its agents and affiliates, and any government entities.

*and* proposed "First Subclass:"

> All members of the Class who were sent Defendant's standard exterior double postcard
> as the advance notification of an automatic charge for an additional term or renewal of
> their subscription(s).

The Court's Opinion and Order of November 15, 2010 held that:

(a)     "the class was not cohesive because disparate factual circumstances demonstrate

that there is no common issue solely related to the postcard which will be remedied by the relief

sought and which will benefit the entire class";

(b)     "not all of the Plaintiffs were deceived by the postcards e.g. McNair, and

therefore for class members like McNair, the relief requested would have no benefit"; and,

(c)     "it was unclear based on the facts  as presented by Plaintiffs whether all

subscribers are required to receive any notice, and where no notice may be required, there is no

relationship between the postcard and any harm, and thus the relief would have no benefit for the

proposed class members."

Plaintiffs, on this motion, clearly demonstrate for the Court, based on the voluminous factual record that has been placed before the Court by Plaintiffs, that:

(a)     the common deceptive practices used by Synapse in its postcards when enjoined will benefit a cohesive class;

(b)     class members, even those such as Plaintiff McNair, would without a doubt benefit in the future from the proposed injunction of Synapse's deceptive practices on its postcards; and,

(c)     Plaintiffs and class members are required to receive the notices pursuant to the language of all of its offers, federal regulation, magazine association standards and its parent Time Inc's agreement with 21 State Attorneys General around the country, as recognized by Synapse's own legal in-house counsel and its marketing executives in charge of offers made and postcards sent to subscribers.

For the foregoing reasons, Plaintiffs respectfully request that the Court vacate its prior Order of November 15, 2010 and certify the previously proposed b(2) class, without a subclass, to correct clear errors of law and fact and to prevent a manifest injustice.

It is abundantly clear, that Synapse uses and has used two separate deceptive postcards (standard "double postcard" and newer standard "single postcard"), and that only an injunction against Synapse's deceptive practices in its notices, and corresponding declaratory relief, will stop the continued harm to its many thousands of subscribers.

2

## LEGAL ARGUMENT

## POINT I

## THE APPLICABLE STANDARDS TO WHICH PLAINTIFFS' MOTION FOR RECONSIDERATION SHOULD BE HELD

"A court may grant a motion for reconsideration if the moving party shows one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *See Johnson v. Diamond State Port Corp.*, 50 Fed. Appx. 554, 560 (3d Cir. 2002) (*citing Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)); L. CIV. R. 7.1(i). Plaintiffs bring this motion on the bases of the need to correct a clear error of law or fact *and* to prevent manifest injustice.

This Court in its November 22, 2010 Opinion (Opinion") denied certification of the proposed "postcard" classes on the basis that said classes allegedly lack cohesion for the reasons stated on pages 10-12 of the Opinion. It is reconsideration of these postcard classes (e.g. the "IVR subclass") which is presently sought by Plaintiffs.

"Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence... [i]n other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008), *citing Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Thus, cohesiveness must be shown by a preponderance of the evidence to support certification under Fed.R.Civ.P. 23(b)(2).

Plaintiffs must show in this motion for reconsideration that given the facts and law as they stood upon the Court's consideration of Plaintiffs' Motion for Class Certification, the Court

3

should have found that the proposed postcard classes are *more likely than not* cohesive and certified said classes as-is or as modified by the Court.

## POINT II

### THE RELIEF SOUGHT BENEFITS THE WHOLE CLASS WITHIN THE REQUIREMENTS OF THIRD CIRCUIT LAW, SUPPORTING A FINDING OF COHESION

In one aspect, the Opinion, in finding that the proposed postcard classes lack cohesion, relied on the Third Circuit' articulation of cohesion as a question of whether the relief sought will benefit the proposed class as a whole.

### A.

### THE INJUNCTIVE RELIEF SOUGHT IS A *PRIMA FACIE* BENEFIT TO ALL CLASS MEMBERS AND, NEVERTHELESS, THIRD CIRCUIT LAW DOES NOT REQUIRE EVERY CLASS MEMBER TO ACTUALLY BENEFIT FROM THE RELIEF SOUGHT

The Court stated in the Opinion at 10, ll. 7-10 "this Court has previously found that not all Plaintiffs were deceived by the postcards...[f]or example, Plaintiff McNair testified that he read the card and understood it; Plaintiffs do not assert that he was deceived by the card...[f]or class members like Mr. McNair, the relief requested would have no benefit." Plaintiffs respectfully disagree.

First, Plaintiff McNair actually testified that *he almost threw the postcard out*. Pls. Cert. Br. at 22, ll. 7-9 citing McNair Dep. 46:21-46:23. Where, as here, Synapse has used a deceptive standard postcard as its notification - the deceptiveness of which is confirmed by Plaintiffs' expert reports (Keegan Report I, Exhibit 44 of Plaintiffs' Motion for Class Certification of August 4, 2008 and Keegan Report II, Exhibit 51 of Plaintiffs' Motion for Class Certification of June 18, 2010 ) and is clear from other evidence such as Time's Assurance of Discontinuance ("Assurance"), (Exhibit 4 of Plaintiffs' Motion for Class Certification of August 4, 2008) and the

4

the Negative Option Rule 9 (Exhibit 10 of Plaintiffs' Motion for Class Certification of August 4,

2008)- *every* class member will benefit because, through the removal of the deceptive features

of the postcards, each class member will now receive the clear and conspicuous notice they are

entitled to, that forthrightly communicates its purpose rather than hides it. The requirements

agreed to by Time, Inc. in the Assurance demonstrate that an objective standard to construct such

a notice exists. The idea that a class member who scrutinizes each article of mail anyway will

not benefit is not correct because clear and conspicuous notice literally relieves the class member

of the need for such scrutiny, i.e., it makes it easier for them to be notified and this *is* a benefit to

anyone.

    Second, notwithstanding the above, this Court's formulation of the Third Circuit's holding

in *Baby Neal v. Casey*, 43 F.3d 48, 59 (3d Cir. 1994) that "[w]hat is important is that the relief

sought by the named plaintiffs should benefit the entire class," places an improper additional

limitation that every class member must literally receive an actualized, individual benefit from

the relief sought. Under this Court's formulation, the 23(b)(2) class in *Baby Neal* could *not* have

been certified *since* not every member of the child class in *Baby Neal* would necessarily

individually benefit from the requested relief. The Third Circuit in *Baby Neal* was clear that

whether an individual class member may be harmed or not *or whether or not the relief requested*

*is actually needed by an individual class member*, is *not* an obstacle to class certification. *See,*

*Baby Neal* 43 F.3d at 61-62 ("that some of the plaintiffs here do not need some of the services

that are allegedly deficient does not... preclude them from attacking a system that fails to provide

those services")[1] and generally. The cited discussion in *Baby Neal* while presented in connection

---

[1] See, more fully, *Baby Neal* 43 F.3d at 61-62 (bold added):
    The district court's rendering of the commonality requirement also goes astray in its
    analysis of *Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988). Notwithstanding the clear

with the commonality requirement directly bears on what the Third Circuit meant by "benefit the

entire class" and wholly supports Plaintiffs' position. *Id.*

## B.

### ADVANCE NOTIFICATION OF AUTOMATIC CHARGES BY SYNAPSE *IS* REQUIRED FOR ALL PROPOSED CLASS MEMBERS, THUS THERE *IS* A RELATIONSHIP BETWEEN THE SUBJECT POSTCARDS AND POTENTIAL HARM

The Court's Opinion at 10, ll. 11-15, held:

> [I]t is unclear from the facts as presented by Plaintiffs whether all subscribers are required to receive any notice. Not all customers sign up for Synapse subscriptions in the same way or under the same terms. Where no notice may be required, there is no relationship between the postcard and any potential harm and, thus, relief related to the postcard would arguably have no benefit for those proposed class members.

Plaintiffs respectfully submit that the record shows that Synapse was and is required to provide

advance notification before an automatic charge occurs.

### 1. Synapse Explicitly Represents To Its "Continuous Service" Customers That They Will Be Sent An Advance Notification Before A Charge Is Incurred

#### (i) *All* of Named Plaintiffs Accepted Synapse Offers That Represent That An Advance Notification of Charges Would Be Sent Before A Charge Is Incurred

Exemplars of the Synapse offers accepted by each of the named Plaintiffs were produced

by Defendant and, as a term of each offer, Synapse promised to send a notice setting forth

---

language of that decision, the district court here seems to have relied on *Hassine* to suggest that all of the named plaintiffs must suffer from the same harm. Mem. Op. at 7. The plaintiffs in *Hassine*, however, complained of over-crowding, though they were not actually double bunked, and of deficient medical and mental health services, though they did not at that time require either of those services. It was enough for the *Hassine* court that some plaintiffs might at some point require a variety of those services and thus be subjected to the risk of deprivation by the pervasively deficient system. 846 F.2d at 178 n.5. Obviously, not all of the *Hassine* class members would need medical services, or the same medical services. **By the reasoning of *Haissine*, then, the fact that some of the plaintiffs here do not need some of the services that are allegedly deficient does not, contrary to the district court's conclusion, preclude them from attacking a system that fails to provide those services.**

cancellation instructions in advance of an automatic charge for a renewal. *See* Exhibit 55 (McNair: Bizrate $2.00 introductory annual offer, *see* example at Exhibit 60, pg. 675 which states "Toward the end of the first term and annually thereafter, you'll receive a reminder notice…"); Exhibit 56, SYN0140714 (Austin annual offer stating "We'll send you a notice with the option to cancel"); Exhibit 57, SYN0140709 (Demetriou 6 month offer stating "Each year, you'll receive a reminder notice"); Exhibit 58, SYN0140870 (Dynko 3 month offer stating "You'll receive a notice in the mail before you're ever billed"); and Exhibit 59, SYN0140870 (Desai 3 month offer stating "You'll receive a reminder notice in the mail before you're ever billed").

Thus, as shown by the offers accepted by the named Plaintiffs, Synapse promises advance notification of future automatic charges for both the end-of-trial-period charges and annual automatic renewal charges.

### (ii) *All* Or Virtually All Of Synapse's "Continuous Service" Offers Explicitly Represent That An Advance Notification Will Be Sent Before A Charge Is Incurred

That all of the negative option (*i.e.,* automatic renewal) magazine offers of Synapse contain a term obligating Synapse to send an advance notice of an automatic charge is shown, for example, in the deposition testimony of Synapse's in-house counsel Roth. Roth testified that, in connection with an offer's promise to send an advance reminder every year: "[I]n some form or another the type of information that's disclosed in that sentence is to appear on these types of offers." Roth Dep. 50:12-14. In connection with magazine continuous service offers that Roth was sending to a representative of the MPA, he stated "[s]ubsequent to accepting one of our offers, we send **every** customer a first class notice informing of an upcoming renewal charge"

Exhibit 60, Roth Deposition Exhibit 4, *see* email (emphasis added). ***Notably** the pages following Roth's email (of Exh. 60) exemplify Synapse's* offer language wherein the promise of advance notification is made.

Synapse employee Tracy Dart who is an Associate Director overseeing magazine offers also confirmed that the offers contain the following language, "And it says towards the end of each subscription period you will receive a reminder notice and you authorize your account to be charged the rate on the notice..." Exhibit 61, Dart Deposition at 37:20-25.

In addition, counsel for Plaintiffs, Diamond and Graifman, each confirmed to the Court in the Oral Proceedings held before this Court on April 17, 2009, that all of the negative option (automatic renewal) magazine offers of Synapse contain a term obligating Synapse to send an advance notice of an automatic renewal charge. Exhibit 62. Apr. 17, 2009 Proc. Transcript at 8:13-8:20 and 83:7-83:19.

Thus, Synapse was required to send advance notification for annual automatic renewals.

### (iii) The Subject "Double" and Newer "Single" Postcards *Themselves* Not Only Represent, But "*Guarantee*," That Customers Will Be Sent An Advance Notification Before A Charge Is Incurred *Every Year*

As pointed out in Pls. Cert. Br. at 14, l. 14-19, the subject standard *double* postcard states "we guarantee to send you advance notice every year about your next continuous-service subscription period and rates...we will send a notice that spells out: your rate, your number of issues and when your credit card will be charged." As pointed out in Pls. Cert. Br. at 17, ll. 12-15, the subject standard *single* postcard similarly states "We guarantee to send you advance notice every year about your next subscription period and rates."

Thus, Synapse is also required to send out a pre-automatic-charge notice *because it explicitly guarantees to do so*, every year, in the very postcards that are the subject of this action.

8

It is no detriment to Plaintiffs position that Synapse's guarantee of advance notice is presented in postcards that are designed to be ignored - the guarantee stands. Moreover, as the guarantee is also a misrepresentation (sending a *sham* notice is not sending a notice), it is pointed out again here that the NJ CFA, NY GBL and DCCPA do *not* require reliance on the misrepresentation. *See Lee v. Carter-Reed Company, LLC,* 203 N.J. 496, 2010 WL 378595 (N.J. Sup. Ct. April 27, 2010).

### (iv) The Court May Exercise Its Discretion To Revise The Proposed Postcard Classes To Limit Them To Those Persons Whose Initial Offers Recited That They Would Be Sent An Advance Notification

As discussed herein above, the record is clear that for at least some trial-subscription-term offers, such as 3-months-free-to-12-months-pay conversion offers, the initial offers also represent that the customer will be sent an advance notification of the charge planned at the end of the trial period, i.e., before the "pay conversion." (*See* again, Exhibit 59, Plaintiff Desai's offer, SYN0140879 which offers 3 free magazines for 3 months). Thus, as a second proposal, the Court may, if it wishes, exercise its discretion to limit the class definition to "customers whose initial offers *expressly represented* that they would be sent an advance notification of an automatic charge." Pursuant to this limitation, the class definition would include both persons who were *promised* to be sent advance notification at the end of a trial period (like 3 months) and those who were *promised* to be sent advance notification before *annual* automatic renewals.[2]

It is submitted that this possible revision of the class definition further clarifies the causal consistence between the class and the potential harm by explicitly incorporating a particular ground upon which Synapse had an obligation to provide advance notice of automatic charges and emphasizes the cohesion of the class. Plaintiffs take the position that for all of the reasons

---

[2] The same class member could also be in both categories.

set forth herein (in this and following subsections 2 and 3) , the unrevised postcard class definitions of Pls. Cert. Br. are cohesive and causally consistent according the Court's requirement – thus, Plaintiffs respectfully request that the Court reconsider the unrevised postcard classes both alone and in view of the proposed revisions.

## 2. *Synapse Is Required Under The New Jersey and New York Consumer Statutes* To Send An Advance Notification Before A Charge Is Incurred: As Shown By Objective Evidence From States' Attorneys General Actions And Settlements

### (i) Assurance of Discontinuance Between Time Inc. And States' Attorneys General

The Assurance of Discontinuance Between Time, Inc. and 21 States' Attorneys General ("AGs") was made "pursuant to their respective consumer protection statutes" which include the subject New Jersey and New York consumer statutes. (Assurance, pg. 1.) "Based on the States' investigations, the States believe that Time engaged in business conduct that had the capacity to be deceptive and misleading *in violation of the States' consumer protection laws*." (Assurance, pg. 3, Sec. I.(3.), emphasis added.) The rectifying measures required by the States under the Assurance in connection with advance notification unequivocally applies to automatic "*annual* renewals" and similarly applies to charges to magazine customers occurring at the end of a free trial period, such as 3-month trial period, for subsequent term.

Annual Automatic Renewals. Assurance Sec. V.1.A, Para 5. (pg. 12-13) specifically governs renewals for an "Automatic Renewal Customer who has a subscription term of one (1) year or longer" and Para. 6 (pg. 13) further provides the "clear and conspicuous" notification for such customers.

Customers in Less-Than-A-Year Trial Periods. Assurance Sec. V.1.A, Para 5. (pg. 12) specifically governs subscriptions of term's less than one year:

> For Automatic Renewal Customers whose terms are shorter than one (1) year, Time shall send a written reminder notice at least thirty (30) days before and not more than sixty (60) days before the end of the first term of the subscription, and thereafter at least thirty (30) days before and not more than sixty (60) days before the end of *each subscription term that precedes a term for which the price is higher than the previous term...*"

When Synapse provides a 3-month trial term for free, which is set to automatically be charged for a next annual term (i.e., converting to automatic annual renewals), that *is* a prior subscription term where the subsequent term is higher priced. This interpretation is supported by the Assurance's broad definition of "automatic renewal" at Sec. IV, pg. 5"

> IV. DEFINITIONS
> The following definitions shall be used in interpreting the terms in this Assurance.
> 1. "Automatic Renewal" means a plan or arrangement whereby a subscription is automatically renewed at the end of a definite term for a subsequent term.

In further support that the clear and conspicuous advance notification requirements are also required in the "free-to-pay" situation, Assurance Sec. V.I.A. Para. 6(c) at pg. 13 provides:

> C. For Automatic Renewal Customers whose terms are shorter than one (1) year, Time shall send a written reminder notice at least thirty (30) days before and not more than sixty (60) days before the end of the first two (2) terms of the subscription.

Relating this to Synapse's parallel deceptive practices, those who accept "free" trial offers *are* Automatic Renewal Customers because they agree to be, and are, automatically charged for an additional term at the end of the free trial subscription term and subsequently thereafter.

The Time, Inc. practices addressed in the Assurance are parallel to Synapse's practices but, as the record shows, Synapse is not a party to the Assurance. Because, the Attorneys General of New Jersey and New York found that the subject Time, Inc. practices violated their state consumer statutes, this is strong, objective evidence that Synapse's practices similarly violate these statutes (and the similar D.C. statute) and that the rather basic reform of sending a clear and conspicuous advance notice to automatic renewal customers (for both recurring paid

11

annual renewals and free-to-pay trials) verses Synapse's deceptive alternative *is required* to comply with these statutes and, thus, *is required*.

### (ii) New York Attorney General Settlement With Symantec And McAfee Regarding Anti-Virus Software Automatic Renewals

In further support that advance notification of automatic renewal charges is generally *required* under the *New York* consumer statute is the New York Attorney General's 2009 settlement concerning Symantec and McAfee's anti-virus software automatic renewal plans – a situation analogous to that at hand – wherein such advance notification was mandated *See* Exhibit 63 ("the investigation...revealed that both Symantec and McAfee made it difficult for consumers to contact the companies to opt out of automatic renewal...[u]nder the terms of the Attorney General's settlement... [t]he companies will provide electronic notification to consumers before and after renewal of the subscription..."). As stated by New York Attorney General Cuomo in connection with the settlement, "[c]ompanies cannot play hide the ball when it comes to the fees consumers are being charged." *Id*

### 3. The FTC Act Requires Synapse To Send An Advance Notification Before An Automatic Charge Is Incurred

Section 5(a)(1) of the FTC Act, 15 U.S.C. 45(a)(1), provides that "unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." (2nd Am. Complaint ¶66.)

The FTC Act, Section 5 Precedent. Where services and products were sold under a continuity negative option plan but *no* advance notification of a free-to-pay (trial period) conversion charge or subsequent automatic renewals was provided under the plan, the implementation of advance notification was ordered *for both situations* – supporting that advance notification is similarly *generally required* under the FTC Act for Synapse's automatic

12

charges, irrespective of whether it is the automatic charge at the end of a trial period or that for

an annual automatic renewal. *See FTC v. Warshak (Berkeley Premium Nutraceuticals, Inc.)*, Civ.

Action No. 1:06-cv-00051-SAS (S.D.OH) filed January 30, 2006 [FTC File No. 042 3003],

*Stipulated Final Order For Permanent Injunction* filed July 22, 2009 [Exhibit 64 hereto] at 12-

13, ordering in pertinent part (Sec. B and C applicable to trial offers, and Sec. D concerning

subsequent subscription renewals of 6 months or longer):

> B.   For any transaction involving a service within the lesser often (10) days after the
> date of the transaction or half the time of any trial period and the consumer written
> confirmation of the transaction. identified in a Clear and Conspicuous manner on the
> outside of the envelope via first class mail that includes all the information required
> by Subsection A of this Section and a Clear and Conspicuous statement or the
> procedures by which the consumer can cancel or obtain a refund:
> C.   For any transaction involving" product provide written confirmation of the
> transaction with the first product shipment that includes all or other information
> required by Subsection A of this Section and a Clear and Conspicuous statement of
> the procedures by which the consumer can cancel or obtain a refund: and
> D.   At least thirty (30) days prior to renewing a consumer's membership subscription,
> or agreement to purchase for any service (in the case of a membership, subscription.
> or agreement whose term is six (6) months or longer) and prior to the submission for
> payment of a consumer's Billing Information for such services, send the consumer
> written confirmation or such renewal, identified in a Clear and Conspicuous manner
> on the outside of the envelope via first class mail, that includes all of the information
> required by Subsections A.1. A.2. and A.4 of this Section and a Clear and
> Conspicuous statement of the procedures by which the consumer can cancel such
> renewal.

Notably, with respect to Subdivision "B," Synapse has cast its automatic renewal

program for magazine subscriptions as "continuous service."

Thus, *Berkeley Premium* stands for the proposition that the FTC Act *requires* advance

notification in both the trial-to-paid situation and the annual automatic renewal situation.[3]

---

[3] Notably, in addition to the general advance notification requirement in *Berkeley Premium*, it
was also ordered that the *outside* of the notification mailing be clear and conspicuous as to the
impending renewal, which is especially pertinent to Synapse's standard "double postcard" (it has
an outside and inside) as well its newer standard "single postcard."

13

The Negative Option Rule. As discussed in Pls. Cert. Br. at 9-10, the Negative Option

Rule 16 C.F.R. 425.1 (Pls. Exh. 10) covers negative option plans, such as Synapse's, and sets

forth that advance notification (the "announcement") of cancellation procedures is **required** to be

mailed before automatically sending merchandise. *See* 16 C.F.R. 425.1(a)(2)[4]. Notably, the

definition of "negative option plan" at 16 C.F.R. 425.1(c)(1) is broad:

> Negative option plan refers to a contractual plan or arrangement under which a seller
> periodically sends to subscribers an announcement which identifies merchandise
> (other than annual supplements to previously acquired merchandise) it proposes to
> send to subscribers under such plan, and the subscribers thereafter receive and are
> billed for the merchandise identified in such announcement, unless by a date or within
> a time specified by the seller with respect to each such announcement the subscribers,
> in conformity with the provisions of such plan, instruct the seller not to send the
> identified merchandise.

As discussed in Section II(B.) *supra*, for all of its automatically renewable *annual* subscriptions

and at least some of its less-than-a-year initial trial period subscriptions (e.g., the 3-mos. free–to–

annual paid renewals conversion plans), Synapse's offers which are accepted by customers

include a promise (e.g. term) that subscribers will be sent an advance reminder notice before

being charged that includes information how to cancel. The selection is the subject magazine

subscription that is up for automatic renewal. With respect to the year-term automatic renewals,

they do *not* fall into the exception of "annual supplements" because they are for magazine

---

[4]   16 C.F.R. 425.1(a)(2), in pertinent part:

Sec. 425.1 The rule

(a) In connection with the sale, offering for sale, or distribution of goods and merchandise in or
affecting commerce, as ``commerce'' is defined in the Federal Trade Commission Act, it is an unfair or
deceptive act or practice, for a seller in connection with the use of any negative option plan to fail to
comply with the following requirements: ...

(2) Prior to sending any selection, the seller shall mail to its subscribers, within the time specified by
paragraph (a)(3) of this section:

(i) An announcement identifying the selection;

(ii) A form, contained in or accompanying the announcement, clearly and conspicuously
disclosing that the subscriber will receive the selection identified in the announcement unless he instructs
the seller that he does not want the selection, designating a procedure by which the form may be used for
the purpose of enabling the subscriber so to instruct the seller, and specifying either the return date or the

periodicals, overwhelmingly issued monthly, and not a single annual supplement to anything. Accordingly, the Negative Option Rule applies to Synapse's automatic subscription renewal plans, *requiring it to mail advance notification generally*, and requiring those notifications to be clear and conspicuous.

    *Notwithstanding the above*, for the sake of argument, even if Synapse's automatic subscription renewal plan were considered to fall outside the literal scope of the Negative Option Rule, every factor and consideration of the Rule would similarly speak to the requirement for Synapse to provide advance notifications *generally*, as well as make them clear and conspicuous, directly under the subject statute, the FTC Act.

## POINT III

### THE COURT'S FINDING THAT PLAINTIFFS "HAVE NOT DEMONSTRATED THAT THERE IS A COMMON *TRAIT* OF THE PROPOSED CLASS MEMBERS" AND THUS THERE IS NO COHESION UNDER THIRD CIRCUIT LAW IS IN ERROR

    In one aspect, the Court's Opinion, in finding that the proposed postcard classes lack cohesion, relies on the rationale that Plaintiffs have only shown that class members were subjected to a common course of conduct, and not that the class members have a common "trait." (*See* Opinion at 11, ll. 3-12.)

### A.

### THE FACTS OF RECORD PRESENTED IN SUPPORT OF CERTIFICATION SHOW THAT THE PROBLEM SOUGHT TO BE ADDRESSED IS NOT ONLY REAL BUT SUBSTANTIAL AND REBUT THE COURT'S "ONE PERSON" OBJECTION TO PLAINTIFFS' THEORY

    The Opinion stated at 11, ll. 8-13:

---

mailing date.

> While a common course of conduct is an element in favor of class certification, it is
> not the exclusive consideration. Under Plaintiffs theory, if a plaintiff could show that
> one person was injured by a defendant's practice, it could obtain certification of a
> class seeking injunctive relief for all people who also experienced the practice,
> regardless of whether they were injured or whether they had any other facts in
> common with the other plaintiffs—the defendant's practice would be the only
> necessary binding trait.

The Court's view of Plaintiffs' theory presents a hypothetical that leaves out central,

determinative findings from Class discovery, which were already presented to this Court,

namely:

- Defendant's own testing of postcards, of record, shows that its "standard"
  postcard, which is the subject of this action, has a lower cancellation rate (i.e., is a
  less effective notification)(*See* Exhibit 44 (Keegan I, at Para. 79), referring to
  Exhibit 47 (SYN-0119920 to SYN-0119929; Synapse comparative postcard
  cancellation rate testing) than postcards incorporating some of the same reforms
  demanded in the Assurance of Discontinuance of Time, Inc. (see Exhibit 4 of
  Plaintiffs' Motion for Class Certification of August 4, 2008), to which Time Inc.
  *but not* Synapse was a party. This translates into many tens of thousands of
  affected Synapse customers in New Jersey, New York and Washington, DC.

- In addition, Synapse has received innumerable complaints about the
  ineffectualness of its "standard" notification postcard, which as shown by the
  record, led one of its major marketing partners, Chevron, to demand that the
  postcard be modified to include in large bold type on its front exterior the words
  "AUTOMATIC RENEWAL NOTICE." (*See* Pls. Cert Br. filed June 18, 2010 at
  19-20.)

Thus, even assuming the Court's "one person" objection excerpted above is correct, it

16

simply does not apply in view of the clear record of this case - the problem which is sought to be addressed is pervasive and has affected many tens of thousands of Synapse customers in the subject jurisdictions.

Thus, contrary to the Court's statement that "Plaintiffs focus almost exclusively on the behavior of Synapse... [and] seek to simply equate a common course of conduct with cohesion" (Opinion at 11, ll. 5-7), Plaintiffs have shown (i) that Synapse is required to provide advance notice of automatic charges the class members (see Section II(B.) *supra*; even though none of the state consumer fraud statutes require this to be shown), (ii) that numerous persons in the subject jurisdictions are actually affected by the subject business practices (*see* Pls. Cert. Brief filed June 18, 2010 at 27-29, and Exhibit 44 (Keegan I, at Para. 79), referring to Exhibit 47 (SYN-0119920 to SYN-0119929; Synapse comparative postcard cancellation rate testing), and (iii) that the subject business practices violate the subject consumer fraud statutes because they are deceptive and unconscionable (*see,* for example, Keegan Reports I and II (Exhibit 44 of Plaintiffs' Motion for Class Certification of August 4, 2008), MPA Standards (Exhibit 3 of Plaintiffs' Motion for Class Certification of August 4, 2008; discussed in Pls. June 18, 2010 Cert. Br. at 10), Negative Option Rule (Exhibit 10 of Plaintiffs' Motion for Class Certification of August 4, 2008), and Assurance of Discontinuance of Time Inc. (Exhibit 4 of Plaintiffs' Motion for Class Certification of August 4, 2008).

**B.**

### IN THE CONSUMER FRAUD CONTEXT, CLASS MEMBERS' RELATIONSHIP AS CUSTOMERS OF A DEFENDANT COUPLED WITH BEING SUBJECTED TO COMMON DECEPTIVE AND UNCONSCIONABLE BUSINESS PRACTICES DIRECTLY RELATING TO THAT RELATIONSHIP *IS* SUFFICIENT TO FIND COHESION

17

Plaintiffs respectfully submit that the Court's finding that there is an insufficient "binding trait" among the class members for a finding of cohesion solely because the proposed class members were/are Synapse customers and were sent the subject "standard" postcard is not correct.

First, the Court improperly relied *only* on the "significant common trait" aspect of the decision in *Barnes v. Am. Tobacco Co.*, 161 F3d 127, 143 n. 18 (3d Cir. 1998) ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries[;] [t]he members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender.") while disregarding the "preexisting or continuing legal relationships" aspect of the decision.  It is abundantly clear from *Barnes* 161 F3d at 147 and n. 18 and the references therein, that the referred to "preexisting or continuing legal relationships" of the (b)(2) class members are *not with each other, but with some actor;  **See also cases  cited in Barnes 161 F3d** at n. 18 .* ( *Holmes v. Continental Can Company*, 706 F.2d 1144, 1155 (11th Cir. 1983)(involved employees bringing suit against appellees, employer and unions, pursuant to Title VII of the Civil Rights Act of 1964);  **and, *Barnes* 161 F3d at 147 (***Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975)(involved sex discrimination claims of employees against employer under Title VII of the Civil Rights Act of 1964); and *Geraghty v. United States Parole Commission*, 719 F.2d 1199 (3d Cir. 1983)(involved proposed class of prisoners vs. parole commission); *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 628 (E.D. Pa. 1976)(involved juveniles challenging the conditions of confinement and treatment at an youth facility); and *Rice v. City of Philadelphia*, 66 F.R.D. 17 (E.D. Pa. 1974) (proposed class of persons charged with crimes filed a civil rights action against defendants, city, police commissioner, district attorney, and judges).

18

It is therefore indisputable that when the Third Circuit spoke of "preexisting or continuing legal relationships" as a defining factor for a cohesive class in *Barnes* 161 F3d at n. 18, it was referring to the relationships of proposed class members with a common actor, whomever that may be, and *not* to a legal relationship between the class members with each other. *The relationship of the presently proposed class members as customers (former or present) of the actor, Synapse, is such a qualifying legal relationship.* Moreover, Synapse's actions vis-à-vis its customers are governed by consumer statutes. While Plaintiffs' Initial Certification Brief may have referred to "trait," the proposed postcard classes are clearly cohesive for the same reasons presented in the Brief, under *Barnes'* "legal relationship" articulation of cohesion. [5]

Second, notably, the Third Circuit within its core discussion of the cohesion requirement applicable to Fed.R.Civ.P. 23(b)(2) in *Barnes* 161 F3d at 147, specifically discussed "small claims" as a favorable consideration in relation to the cohesion requirement:

> Discussing the requirements for 23(b)(2) classes in *Wetzel v. Liberty Mutual Insurance Company*, 508 F.2d 239 (3d Cir. 1974), we noted, "by its very nature, a (b)(2) class must be cohesive as to those claims tried in the class action. . . . Because of the cohesive nature of the class, Rule 23(c)(3) contemplates that all members of the class will be bound. Any resultant unfairness to the members of the class was thought to be outweighed by the purposes behind class actions: *eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation.*
> (emphasis added)

Third, some Federal Circuit Courts have even more directly stated that a common course of conduct is a valid basis for a finding of cohesion. For example, in *Walters v. Reno*, 145 F.3d

---

[5] Moreover, as in *Baby Neal* where current members would undeniably leave the class through maturation or the transitory nature of foster care, in the case at bar, it is of no detriment that a particular Synapse customer may end his/her business relationship as an automatic renewal magazine customer of the company. In fact, here, there is a substantial likelihood that such relationship, whether intentionally or unintentionally, may resume in the future.

1032, 1047 (9th Cir. 1998), the Court stated:

> We note that with respect to 23(b)(2) in particular, the government's dogged focus on the factual differences among the class members appears to demonstrate a fundamental misunderstanding of the rule. Although common issues must predominate for class certification under *Rule 23(b)(3)*, no such requirement exists under 23(b)(2). ***It is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.*** (emphasis added) *See* 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1775 (2d ed. 1986) ("All the class members need not be aggrieved by or desire to challenge the defendant's conduct in order for some of them to seek relief under *Rule 23(b)(2)*."); *see also Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988)* (emphasizing that although "the claims of individual class members may differ factually," certification under *Rule 23(b)(2)* is a proper vehicle for challenging "a commonpolicy").

(emphasis added)

For the foregoing reasons, the proposed class and first subclass, both as originally

presented with Plaintiffs' Motion for Class Certification Under F.R.C.P. 23(b)(2) and as

discussed herein for possible modification by the Court, are cohesive.

## CONCLUSION

Plaintiffs respectfully request that, for all of the foregoing reasons, the Court grant the

Plaintiffs' Motion for Reconsideration, vacate its order dated November 15, 2010 denying class

certification and grant Plaintiffs' Motion for Class Certification.

Date: November 29, 2010            GREEN & ASSOCIATES, LLC

By: /s/Michael S. Green
**GREEN & ASSOCIATES, LLC**
**MICHAEL S. GREEN**
522 Route 18, P.O. Box 428
East Brunswick, New Jersey 08816
Telephone (732) 390-0480

20

**KANTROWITZ, GOLDHAMER & GRAIFMAN**
**GARY GRAIFMAN**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone  (201) 391-7000

**DIAMOND LAW OFFICE, LLC**
**PAUL DIAMOND**
1605 John Street, Suite 102
Fort Lee, New Jersey 07024
Telephone (201) 242-1110

**Attorneys for Plaintiffs**