# EXHIBIT 60

Exhibit # B-4 For ID
Date 5-8-08
Stefanie Donis, C.S.R.

# Baez, Miguel

| | |
|---|---|
| **From:** | Cohen, Rita |
| **Sent:** | Tuesday, April 22, 2008 2:07 PM |
| **To:** | Weltman, Bradley |
| **Subject:** | FW: FTC Workshop |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | Samples.ppt |

For Chris.

Rita D. Cohen
Senior Vice President, Legislative and Regulatory Policy
Magazine Publishers of America
1211 Connecticut Avenue NW
Suite 610
Washington, DC 20036
202-296-7277
202-296-0343 fax
202-369-1237 mobile
Rita.Cohen@magazine.org

---

**From:** mroth@synapsemail.com [mailto:mroth@synapsemail.com]
**Sent:** Tuesday, January 16, 2007 8:37 PM
**To:** Cohen, Rita
**Cc:** Finn, Anne
**Subject:** RE: FTC Workshop

Rita:

As discussed, for your review in preparation for the FTC negative option workshop, I am attaching some of our online magazine continuous service offers and disclosures. Sorry for the delay in getting these to you. Please keep these materials, and my comments below, confidential and do not share them with anyone. They are for your internal review and discussion only.

As you know, we strongly believe in the continuity/negative option model for magazines. We believe that our model is beneficial for consumers because it frees them up from worrying about when their subscription will end, when to renew, where to find the best deal, etc. Our model allows consumers to continue receiving their favorite magazines for as long as they like. They may cancel at any time, with no minimum obligation. With that said, let's turn to our current online offers.

In general, we have two types of online offers, (1) an upfront "sales page" that promotes an offer, lists available magazine selections, and includes language that "tees-up" automatic renewal, which is then followed by a checkout page disclosing the full auto renewal terms and conditions, and (2) a one page upsell offer that contains all of this information.

Re the first offer, on an upfront offer page, we typically promote the "hero" of the offer in a headline, such as 3 months free or 12 months verified for a small processing or redemption fee. We then include language that "tees up" the automatic renewal feature of the offer either in subhead copy or just above a "Continue" button at the bottom of the page, which reads "Your selections come with automatic renewal benefits. See details" or "Your selections come with automatic renewal benefits. Click Continue for Details." The tee-up language is designed to inform the consumer that there is something more to the offer than just the "hero." We do not give the full auto renewal terms on the upfront offer page because it would be too lengthy and likely distract the consumer from the

666

4/22/2008

**From:** mroth@synapsemail.com [mailto:mroth@synapsemail.com]
**Sent:** Thursday, December 21, 2006 2:14 PM
**To:** Cohen, Rita
**Subject:** FTC Workshop

Rita:

I see that you are a scheduled speaker at the upcoming FTC negative option workshop. In preparing for your presentation, if you require any information about our continuous service business model, our consumer marketing materials, etc., please do not hesitate to ask.

Best regards, and Happy Holidays,

Marc

Marc S. Roth
Vice President,
Chief Marketing and Compliance Counsel
Synapse Group, Inc.
Direct: 203-391-0711
Fax: 212-467-2173
*Admitted to practice in New York

THE INFORMATION CONTAINED IN THIS EMAIL COMMUNICATION IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE DESIGNATED RECIPIENT NAMED ABOVE. This message may be an Attorney-Client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please notify us immediately by telephone and/or reply email.

668

4/22/2008

value proposition of the offer. Further, unlike the upfront offer page where consumers are simply selecting magazines, we feel that the terms are most appropriately presented on the check out page where they will decide whether they will enter into the transaction. It is also important to keep in mind that for ABC purposes, the checkout page functions as our contract page, which we are required to produce in an audit.

After making selections on the offer page, the consumer then must click the "Continue" button to get to the check out page where the full terms and conditions of the offer, including auto renewal, is disclosed clearly and conspicuously, in plain, understandable language, immediately adjacent to or above where we ask for name, address, and cc info. I will not go into detail here about the content of the terms - you can review them on the slides. Note that these terms are preceded by a bolded "**Automatic Renewal Authorization**", which is designed to draw the reader's eye. Some of our offer terms are labeled "**Ongoing Magazine Authorization**," but we are phasing this out in favor of the former label.

The last slide of the attachment is an example of our one page upsell offer hosted by a partner. Given the limited real estate available for the offer, the offer proposition, magazine selections and full auto renewal terms are presented on the same page. The terms, which are presented either immediately above or just adjacent to, a "Yes, Ship my selections" button, also informs the consumer that the information they provided for their underlying purchase will be forwarded to us for processing their magazines and reminds them to print the page for their records.

Subsequent to accepting one of our offers, we send every customer a first class notice informing of an upcoming renewal charge, whether or not it is an increase from the previous term. The notice provides our toll free number and date by which they must call to cancel and avoid the charge. Our toll free number is also provided on the consumer's credit card statement (as well as in the t&cs of the offer).

We believe that our offer is presented in a manner that is consistent with (and in some respects, exceeds) current applicable regulatory rules and industry guidelines for negative option offers. On a general note, we believe that the current regulatory standards for continuity/negative option offers is sufficient (e.g., Section 5 of the FTC Act requirements for adequate and clear disclosure of material information) and that regulators already have the tools they need to combat fraud and deception in this area. Any further regulation in this area would amount to dictating particulars for disclosures (e.g., font size, location) which might not be appropriate for all offers (for example, I am sure you have received offers from other publishers and agents that are different from ours). In the end, the adequacy and clarity of negative option disclosures should be judged on a case by case basis, depending on the nature, location and content of the offer, so long as the standard framework for such disclosures, as articulated by the FTC in its cases and business guidance materials, are followed. (This is where I wrap the flag around my shoulders and exit stage left).

Please feel free to call me if you have any questions.

Marc

-----Original Message-----
From: Cohen, Rita [mailto:rcohen@magazine.org]
Sent: Friday, December 22, 2006 3:43 PM
To: Roth, Marc - Legal <mroth@synapsemail.com>
Cc: Finn, Anne
Subject: RE: FTC Workshop

Thanks Marc. I would love samples of consumer marketing materials and also links to any online solicitations (since online is going to be a particular focus of the workshop). You can send any hard copy materials to my office at 1211 Connecticut Avenue Northwest, suite 610, Washington DC 20036. I'll probably have lots of questions as I get ready for January 25th. Thanks for your offer of help.

Happy Holidays,

Rita

667

4/22/2008