# EXHIBIT 64

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, )<br>Plaintiff, )<br>v. )<br> )<br>STEVE WARSHAK. BERKELEY PREMIUM )<br>NUTRACEUTICALS. INC.. LIFEKEY, INC.. )<br>WARNER HEALTH CARE, INC.. and WAGNER )<br>NUTRACEUTICALS, INC., )<br>Defendants, and )<br>CARRI WARSHAK, HARRIET WARSHAK. and )<br>PAUL KELLOGG in his capacity as trustee, )<br>Relief Defendants. ) | CIVIL ACTION NO. 1:06cv51<br><br>District Judge S. Arthur Spiegel<br><br>**STIPULATED FINAL ORDER<br>FOR PERMANENT<br>INJUNCTION** |

Plaintiff. the Federal Trade Commission ("FTC" or "Commission"), filed a Complaint

for a permanent injunction and other equitable relief against Defendants Berkeley Premium

Nutraceuticals, Inc.. Lifekey, Inc.. Warner Health Care, Inc.. Wagner Nutraceuticals. Inc., and

Steve Warshak, and for monetary relief against Relief Defendants Carrie Warshak, Harriet

Warshak, and Paul Kellogg. pursuant to Sections 13(b) and 19 of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b. The Complaint alleges that Defendants engaged

in acts and practices in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and

52; Section 907(a) of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693e; Section

205.10(b) of Regulation E. 12 C.F.R. § 205.10(b); and the Unordered Merchandise Statute. 39

U.S.C. § 3009. Corporate Defendants, by and through Richard D. Nelson, solely in his capacity

as Chapter 11 Trustee for Corporate Defendants, and the FTC have agreed to the entry of this

Stipulated Final Order for Permanent Injunction ("Order") in settlement of the Commission's

claims against Corporate Defendants. The Court, being advised of the premises. finds:

Page 1 of 24

## FINDINGS

1.  This Court has jurisdiction over the subject matter of this case and jurisdiction over all parties. Venue in the Southern District of Ohio is proper.

2.  The Complaint states a claim upon which relief can be granted, and the Commission has the authority to seek the relief it has requested.

3.  The acts and practices of Corporate Defendants were and are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

4.  On September 16, 2008, Berkeley Premium Nutraceuticals, Inc. filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio. Case No. 1:08-bk-15012. Lifekey, Inc., Warner Health Care, Inc., and Wagner Nutraceuticals, Inc. likewise filed for bankruptcy on October 22, 2008. The Bankruptcy Court appointed Richard D. Nelson as Chapter 11 Trustee for the Corporate Defendants.

5.  The Commission's action against Corporate Defendants, including the entry of a judgment and enforcement of a judgment other than a money judgment obtained in this action, is not stayed by 11 U.S.C. § 362 (a) (1), (2), (3), or (6) because it is an exercise of the Commission's police or regulatory power as a governmental unit pursuant to 11 U.S.C. § 362 (a) (4) and thus falls within an exemption from the automatic stay.

6.  Corporate Defendants waive: (a) all rights to seek review or otherwise challenge or contest the validity of this Order: (b) any claim Corporate Defendants may have against the Commission, its employees, representatives, or agents; (c) all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended by Pub. L. 104-121, 110 Stat. 847, 863-64: and (d) any rights to attorneys' fees that may arise under said provision of law.

Page 2 of 24

7.    Corporate Defendants stipulate and agree to this Order, without trial or adjudication of
      any issue of fact or law, to settle and resolve all matters alleged in the Complaint to the
      date of entry of this Order. Corporate Defendants do not admit any of the allegations set
      forth in the Complaint, other than jurisdictional facts, and deny any and all wrongdoing.

8.    Corporate Defendants and the FTC shall each bear their own costs and attorneys' fees.

9.    Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1.    "Billing Information" means any data that enables any person to access a consumer's
      account, including but not limited to a credit card, checking, savings, share or similar
      account, utility bill, mortgage loan account, or debit card.

2.    "Clear and Conspicuous" statement, or a statement presented "Clearly and
      Conspicuously" means:

      a.    in print communications, the message shall be in a type size and location
            sufficiently noticeable for an ordinary consumer to read and comprehend it, in
            print that contrasts with the background against which it appears;

      b.    in oral communications, the message shall be delivered in a volume and cadence
            sufficient for an ordinary consumer to hear and comprehend it;

      c.    in communications made through an electronic medium (including but not limited
            to television, video, radio, and interactive media, including but not limited to the
            Internet, online services, and software), the message shall be presented
            simultaneously in both the audio and visual portions of the communication. In
            any communication presented solely through visual or audio means, the message

Page 3 of 24

may be made through the same means in which the communication is presented. In any communication disseminated by means of an interactive electronic medium, including but not limited to software, the Internet, or online services, a disclosure must be unavoidable and presented prior to the consumer incurring any financial obligation. Any audio message shall be delivered in a volume and cadence sufficient for an ordinary consumer to hear and comprehend it. Any visual message shall be of a size and shade, with a degree of contrast to the background against which it appears, and shall appear on the screen for a duration and in a location sufficiently noticeable for an ordinary consumer to read and comprehend it; and

d. regardless of the medium used to disseminate it, the message shall be in understandable language and syntax. Nothing contrary to, inconsistent with, or in mitigation of the message shall be used in any communication.

3. "Competent and Reliable Scientific Evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

4. "Corporate Defendants" means Berkeley Premium Nutraceuticals, Inc.; Lifekey, Inc.; Warner Health Care, Inc.; Wagner Nutraceuticals, Inc.; their divisions and subsidiaries; and their successors and assigns, individually, collectively, or in any combination.

5. "Covered Product or Service" means any dietary supplement, Food, Drug, or Device, or any health-related service or program, including but not limited to Avlimil and Rogisen.

6. "Device" means an instrument, apparatus, implement, machine, contrivance, implant, in

Page 4 of 24

vitro reagent, or other similar or related article. including but not limited to any

component. part. or accessory. which is:

a.    recognized in the official National Formulary. or the United States Pharmacopeia.

      or any supplement to them:

b.    intended for use in the diagnosis of disease or other conditions. or in the cure.

      mitigation, treatment. or prevention of disease. in man or other animals; or

c.    intended to affect the structure or any function of the body of man or other

      animals. and which does not achieve any of its principal intended purposes

      through chemical action within or on the body of man or other animals and which

      is not dependent upon being metabolized for the achievement of any of its

      principal intended purposes.

7.    "Drug" means:

      a.    articles recognized in the official United States Pharmacopeia. official

            Homoeopathic Pharmacopoeia of the United States, or official National

            Formulary. or any supplement to any of them:

      b.    articles intended for use in the diagnosis, cure. mitigation, treatment, or

            prevention of disease in man or other animals:

      c.    articles (other than Food) intended to affect the structure or any function of the

            body of man or other animals: and

      d.    articles intended for use as a component of any article specified in clause (a). (b).

            or (c); but does not include Devices or their components, parts, or accessories.

8.    "Endorsement" means any advertising message (including but not limited to verbal

      statements, demonstrations. or depictions of the name. signature, likeness, or other

Page 5 of 24

identifying personal characteristics of an individual or the name or seal of an
organization) that consumers are likely to believe reflects the opinions. beliefs, findings.
or experiences of a party other than Corporate Defendants, even if the views expressed
by that party are identical to those of Corporate Defendants.

9.   "Food" means:

   a.   articles used for food or drink for man or other animals;

   b.   chewing gum: and

   c.   articles used for components of any such article.

10.  "Material" means likely to affect a person's choice of. or conduct regarding, goods or
     services.

11.  "Negative Option Feature" means, in an offer or agreement to sell or provide any product
     or service. a provision under which the consumer's silence or failure to take an
     affirmative action to reject products or services or to cancel the agreement is interpreted
     by the seller or provider as acceptance of the offer. Offers or agreements with Negative
     Option Features include. but are not limited to: (i) free or introductory price trial offers
     in which the consumer receives a product or service for free or at a nominal or
     introductory price for an initial period and will incur an obligation to pay or pay a greater
     amount for the product or service if he or she does not take affirmative action to cancel.
     reject, or return the product or service before the end of that period: (ii) continuity plans
     in which. subsequent to the consumer's agreement to the plan, the seller or provider
     automatically ships products to a consumer unless the consumer notifies the seller or
     provider within a certain time not to ship the products: and (iii) automatic renewal plans
     in which the seller or provider automatically renews the agreement and charges the

Page 6 of 24

consumer unless the consumer cancels before the renewal.

12.    "Preauthorized Electronic Fund Transfer" means an electronic fund transfer authorized in advance to recur at substantially regular intervals.

## I. FALSE AND UNSUBSTANTIATED REPRESENTATIONS

IT IS HEREBY ORDERED that Corporate Defendants, directly or through any corporation, partnership, subsidiary, division, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product or Service, in or affecting commerce, are hereby permanently restrained and enjoined from making, or assisting others in making, directly or by implication, including but not limited to through the use of a product name or Endorsement, any representation:

A.    That such product or service:

   1.    Improves sexual function;

   2.    Affects the causes, symptoms, or effects of female sexual dysfunction;

   3.    Alters hormone levels, or remedies the causes, symptoms, or effects of menopause;

   4.    Improves ocular health;

   5.    Corrects, improves, or prevents any vision problem or condition of the eye, including but not limited to night vision; or

   6.    Has been scientifically or clinically tested and/or proven to be effective or safe;

unless the representation is true, non-misleading, and, at the time it is made, Corporate Defendants possess and rely upon Competent and Reliable Scientific Evidence that substantiates

the representation.

B.      About the absolute or comparative health benefits. performance. efficacy, safety. or side
        effects of any Covered Product or Service unless the representation is true, non-
        misleading. and, at the time it is made. Corporate Defendants possess and rely upon
        Competent and Reliable Scientific Evidence that substantiates the representation.

## II. MISREPRESENTATION OF TESTS OR STUDIES

IT IS FURTHER ORDERED that Corporate Defendants, directly or through any
partnership, corporation, subsidiary. division, or other device, and their officers. agents. servants,
representatives. employees. and all persons or entities in active concert or participation with
them who receive actual notice of this Order, by personal service or otherwise. in connection
with the manufacturing. labeling. advertising, promotion, offering for sale, sale. or distribution.
including but not limited to through retailers, of any products or services are hereby enjoined
from misrepresenting. in any manner. expressly or by implication, including but not limited to
through the use of trade names or Endorsements, the existence. contents. validity, results.
conclusions, or interpretations of any test. study, or research.

## III. MISREPRESENTATION OF TESTIMONIALS

IT IS FURTHER ORDERED that Corporate Defendants. directly or through any
partnership, corporation, subsidiary, division, or other device, and their officers, agents. servants,
representatives. employees. and all persons or entities in active concert or participation with
them who receive actual notice of this Order. by personal service or otherwise, in connection
with the manufacturing. labeling. advertising, promotion. offering for sale, sale, or distribution,
including but not limited to through retailers, of any products or services are hereby enjoined
from:

A.    Misrepresenting. in any manner, expressly or by implication, that consumer testimonials or dramatizations of consumer experiences accurately represent or reflect actual consumer experience with the product or service; or

B.    Representing. in any manner. expressly or by implication. that such product or service has been endorsed by any person. organization or group that is an expert with respect to the Endorsement message unless:

   1.    The endorser is an existing person. organization, or group whose qualifications give it the expertise that the endorser is represented as having with respect to the Endorsement: and

   2.    The Endorsement is substantiated by an objective and valid evaluation or test using procedures generally accepted by experts in the relevant science or profession to yield accurate and reliable results.

### IV. FDA APPROVED CLAIMS

**IT IS FURTHER ORDERED** that:

A.    Nothing in this Order shall prohibit Corporate Defendants from making any representation for any Drug that is permitted in labeling for such Drug under any tentative or final standard promulgated by the Food and Drug Administration. or under any new Drug application approved by the Food and Drug Administration; and

B.    Nothing in this Order shall prohibit Corporate Defendants from making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the National Labeling and Education Act of 1990.

## V. MISREPRESENTATIONS CONCERNING PRODUCTS OR SERVICES

IT IS FURTHER ORDERED that Corporate Defendants. directly or through any partnership. corporation. subsidiary. division. or other device. and their officers, agents, servants, representatives, employees. and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise. in connection with the manufacturing, labeling. advertising, promoting, marketing, offering for sale. sale. or distribution of any products or services. are hereby enjoined from misrepresenting, or assisting others in misrepresenting. expressly or by implication. any Material fact, including but not limited to:

A. That a product or service is offered on a "free," "free trial," or "no obligation" basis, or words of similar import. denoting or implying the absence of any obligation on the part of the recipient of the offer to affirmatively act in order to avoid charges if, in fact. a charge will be assessed pursuant to the offer unless the consumer takes affirmative action to cancel:

B. The amount that a consumer will be charged or billed;

C. That a consumer will not be charged or billed:

D. The timing or manner of any charge or bill (including but not limited to the date of the charge and whether it will be a credit card charge or a checking account debit):

E. The length of any trial period that consumers receive before being charged or billed: and

F. That a consumer purchased or agreed to purchase a product or service, or that a transaction has been authorized by a consumer. including but not limited to through mailings, email, billings, credit card charges. and checking account debits.

## VI. REQUIRED DISCLOSURES

**IT IS FURTHER ORDERED** that Corporate Defendants, directly or through any partnership, corporation. subsidiary. division. or other device. and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling. advertising. promoting, marketing, offering for sale. sale, or distribution of any products or services. shall:

A.    Clearly and Conspicuously disclose, before consumers are asked to pay money. submit consideration, or reveal Billing Information:

1.    All fees and costs:

2.    All Material restrictions, limitations. or conditions applicable to the purchase, receipt. or use of the product or service that is the subject of the offer:

3.    All Material terms and conditions of any cancellation or refund policy. including but not limited to informing consumers if no cancellations or refunds are permitted; and

4.    All Material terms and conditions of any offer with a Negative Option Feature, including but not limited to:

   a.    The dollar amount of the first payment and when it will be charged. withdrawn, or become due: the dates or frequency (*e.g.*, monthly, quarterly) of all subsequent charges or payment(s): and the dollar amount or range of costs of all subsequent charges or payments;

   b.    When any trial period begins: the length of any trial period; the specific steps and means by which a cancellation request must be submitted: and

Page 11 of 24

the date by, or time period within which, a cancellation request must be
received to avoid a charge;

c.      The length of any renewal period: the manner in which a notice not to ship
or renew must be submitted: the date by or time period within which a
notice not to ship or renew must be received to avoid shipment or renewal
(e.g., two weeks after the consumer is advised of an upcoming shipment);
and the telephone number, email address, or street address to which such a
notice must be directed: and

d.      All Material conditions. limitations and restrictions on the ability of the
consumer to use any product or service that is offered as "free." "risk-
free." "without obligation," or "discounted," or using words of similar
import denoting or implying the absence of any obligation.

*Provided however,* that Corporate Defendants need not make these disclosures prior to
requesting a consumer's name and address for the purpose of determining whether that consumer
has an existing account with Corporate Defendants.

B.      For any transaction involving a service. within the lesser of ten (10) days after the date of
the transaction or half the time of any trial period. send the consumer written
confirmation of the transaction. identified in a Clear and Conspicuous manner on the
outside of the envelope. via first class mail that includes all the information required by
Subsection A of this Section and a Clear and Conspicuous statement of the procedures by
which the consumer can cancel or obtain a refund:

C.      For any transaction involving a product. provide written confirmation of the transaction
with the first product shipment that includes all of the information required by Subsection

A of this Section and a Clear and Conspicuous statement of the procedures by which the consumer can cancel or obtain a refund; and

D.   At least thirty (30) days prior to renewing a consumer's membership, subscription, or agreement to purchase for any service (in the case of a membership, subscription, or agreement whose term is six (6) months or longer) and prior to the submission for payment of a consumer's Billing Information for such services, send the consumer written confirmation of such renewal, identified in a Clear and Conspicuous manner on the outside of the envelope, via first class mail, that includes all of the information required by Subsections A.1, A.2, and A.4 of this Section and a Clear and Conspicuous statement of the procedures by which the consumer can cancel such renewal.

## VII.  EXPRESS INFORMED CONSENT

IT IS FURTHER ORDERED that Corporate Defendants, directly or through any partnership, corporation, subsidiary, division, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promoting, marketing, offering for sale, sale, or distribution of any products or services, are hereby enjoined from directly or indirectly using Billing Information to obtain payment in connection with the marketing of any product or service, without the express informed consent of the consumer, which shall include consent to be charged for the product or service using a specified billing account, and the Clear and Conspicuous disclosure of the information identified in the Section titled "Required Disclosures" in close proximity to the consumer's express consent to purchase such products or services.  In connection with an offer or agreement with a Negative Option Feature, the following

Page 13 of 24

requirements must be met to evidence express informed consent:

A.   The consumer's express written authorization to purchase the product or service that is
     the subject of the transaction and the consumer's authorization to assess a charge against
     a specified account for payment. Such authorization must include the consumer's
     signature, with any electronic signatures complying with the requirements of the
     Electronic Signatures in Global and National Commerce Act. ("E-Sign Act"), 15 U.S.C.
     § 7001 *et seq.*; or

B.   The consumer's express oral authorization to purchase the product or service that is the
     subject of the transaction and the consumer's authorization to assess a charge against a
     specified account for payment that is audio-recorded, as follows:

     1.   The recording must evidence that the consumer. during that transaction, at a
          minimum, has provided the last four (4) digits of the account number to be
          charged;

     2.   The recording must evidence that the disclosure requirements of the Section titled
          "Required Disclosures" have been complied with:

     3.   The recording must include the entirety of the transaction;

     4.   The recording can be identified and located by either the consumer's name.
          telephone number, or unique identifying number: and

     5.   A copy of the recording must be provided upon request to the consumer, and
          upon written request. to the consumer's bank. credit or debit card company or
          other billing entity, state attorney general or consumer protection agency. and the
          Commission.

Page 14 of 24

### VIII.  RESTRICTIONS ON UNORDERED MERCHANDISE

IT IS FURTHER ORDERED that Corporate Defendants, directly or through any partnership, corporation. subsidiary. division, or other device, and their officers, agents, servants, representatives. employees. and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, are hereby enjoined from:

A.  Sending any merchandise without the prior express request or consent of the consumer unless such merchandise is Clearly and Conspicuously marked as a free sample and has attached to it a Clear and Conspicuous statement that the consumer may treat the merchandise as a gift and may retain, use, discard or dispose of it in any manner without any obligation whatsoever to the sender;

B.  Sending any communication, including bills, invoices, reminders, letters, notices or dunning communications. that in any manner seeks to obtain payment for any merchandise shipped without the prior express request or consent of the recipient; and

C.  Violating any provision of the Unordered Merchandise Statute, 39 U.S.C. § 3009(a), or as it may hereafter be amended.

### IX.  RESTRICTIONS ON ELECTRONIC FUND TRANSFERS

IT IS FURTHER ORDERED that Corporate Defendants. directly or through any partnership, corporation. subsidiary. division, or other device. and their officers, agents, servants, representatives, employees. and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with any consumer who is enrolled into any plan or program with a Negative Option Feature subsequent to the date of this Order and who uses a debit card or other means of electronic funds

transfer, are hereby enjoined from:

A.   Failing to obtain written authorization for Preauthorized Electronic Fund Transfers from a consumer's account before initiating any Preauthorized Electronic Fund Transfer. Such authorization must include the consumer's signature, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*:

B.   Failing to maintain procedures reasonably adapted to avoid an unintentional failure to obtain written authorization for a Preauthorized Electronic Fund Transfer: and

C.   Violating any provision of Section 907(a) of the Electronic Funds Transfer Act, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), as more fully set out in Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205. Supp. I, or as they may hereafter be amended.

## X. CANCELLATION REQUESTS AND REFUND PROMISES

IT IS FURTHER ORDERED that Corporate Defendants, directly or through any partnership, corporation, subsidiary, division, or other device, and their officers, agents, servants, representatives, employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the advertising, promoting, offering for sale, or sale of any product or service, are hereby permanently restrained and enjoined from failing to honor promptly any request that complies with Corporate Defendants' cancellation or refund policy, which shall be disclosed clearly and conspicuously consistent with Subsection A of the Section titled "Required Disclosures," including but not limited to by terminating the consumer's enrollment in the plan or program with the Negative Option Feature prior to the next billing cycle, provided that the consumer

Page 16 of 24

makes the request at least one (1) business day prior to the next cycle.

## XI. ACCESSIBILITY TO TELEPHONE PERSONNEL.

**IT IS FURTHER ORDERED** that Corporate Defendants. directly or through any partnership, corporation, subsidiary, division. or other device, and their officers. agents. servants, representatives. employees, and all persons or entities in active concert or participation with them who receive actual notice of this Order. by personal service or otherwise. shall take all reasonable steps necessary to ensure reasonable consumer accessibility to personnel staffing any telephone number that Defendants provide to consumers for cancellation of trial periods or obtaining of refunds.

## XII. COOPERATION WITH FTC COUNSEL

**IT IS FURTHER ORDERED** that Corporate Defendants shall, in connection with this action or any subsequent investigations related to or associated with the transactions or the occurrences that are the subject of the FTC's Complaint, cooperate in good faith with the FTC and appear or cause its officers. employees. representatives, or agents to appear at such places and times as the FTC shall reasonably request, after written notice, for interviews, conferences. pretrial discovery, review of documents. and for such other matters as may be reasonably requested by the FTC. If requested in writing by the FTC. Corporate Defendants shall appear or cause its officers. employees, representatives. or agents to appear and provide truthful testimony in any trial, deposition. or other proceeding related to or associated with the transactions or the occurrences that are the subject of the Complaint, without the service of a subpoena.

## XIII. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that. for the purpose of monitoring and investigating compliance with any provision of this Order:

A.    Within ten (10) days of receipt of written notice from a representative of the
      Commission. Corporate Defendants each shall submit additional written reports, which
      are true and accurate and sworn to under penalty of perjury: produce documents for
      inspection and copying; appear for deposition; and provide entry during normal business
      hours to any business location in each such Corporate Defendant's possession or direct or
      indirect control to inspect the business operation;

B.    In addition, the Commission is authorized to use all other lawful means, including
      but not limited to:

      1.    obtaining discovery from any person, without further leave of court, using
            the procedures prescribed by Fed. R. Civ. P. 30. 31, 33. 34, 36, 45 and 69:

      2.    posing as consumers and suppliers to Corporate Defendants. their employees, or
            any other entity managed or controlled in whole or in part by any Corporate
            Defendant, without the necessity of identification or prior notice: and

C.    Corporate Defendants each shall permit representatives of the Commission to interview
      any employer. consultant. independent contractor. representative. agent, or employee
      who has agreed to such an interview, relating in any way to any conduct subject to this
      Order. The person interviewed may have counsel present.

*Provided however,* that nothing in this Order shall limit the Commission's lawful use of
compulsory process. pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1. to
obtain any documentary material, tangible things, testimony, or information relevant to unfair or
deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C.
§ 45(a)(1)).

## XIV. COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this

Order may be monitored:

A.  For a period of three (3) years from the date of entry of this Order. Corporate Defendants
    shall notify the Commission of any changes in structure of any Corporate Defendant or
    any business entity that any Corporate Defendant directly or indirectly controls, or has an
    ownership interest in, that may affect compliance obligations arising under this Order.
    including but not limited to: incorporation or other organization; a dissolution,
    assignment, sale, merger, or other action; the creation or dissolution of a subsidiary,
    parent, or affiliate that engages in any acts or practices subject to this Order; or a change
    in the business name or address, at least thirty (30) days prior to such change. *provided*
    that, with respect to any proposed change in the business entity about which a Corporate
    Defendant learns less than thirty (30) days prior to the date such action is to take place,
    such Corporate Defendant shall notify the Commission as soon as is practicable after
    obtaining such knowledge.

B.  One hundred eighty (180) days after the date of entry of this Order and annually
    thereafter for a period of three (3) years. Corporate Defendants each shall provide a
    written report to the FTC, which is true and accurate and sworn to under penalty of
    perjury, setting forth in detail the manner and form in which they have complied and are
    complying with this Order. This report shall include, but not be limited to

    1.  A copy of each acknowledgment of receipt of this Order, obtained pursuant to the
        Section titled "Distribution of Order;" and

    2.  Any other changes required to be reported under Subsection A of this Section.

Page 19 of 24

Case 2:06-cv-05072-JLL-CCC  Document 135-12   Filed 11/29/10  Page 21 of 25 PageID:
8855
Case 1:06-cv-00051-SAS  Document 109   Filed 07/22/2009   Page 20 of 24

C.      Each Corporate Defendant shall notify the Commission of the filing of a bankruptcy

petition by such Corporate Defendant within fifteen (15) days of filing.

D.      For the purposes of this Order, Corporate Defendants shall. unless otherwise directed by

the Commission's authorized representatives, send by overnight courier all reports and

notifications required by this Order to the Commission, to the following address:

> Associate Director for Enforcement
> Federal Trade Commission
> 600 Pennsylvania Avenue, N.W., Room NJ-2122
> Washington. D.C. 20580
> RE: *FTC v. Warshak, et al.*

*Provided* that. in lieu of overnight courier, Corporate Defendants may send such reports

or notifications by first-class mail. but only if Corporate Defendants contemporaneously

send an electronic version of such report or notification to the Commission at:

DEBrief@ftc.gov.

E.      For purposes of the compliance reporting and monitoring required by this Order. the

Commission is authorized to communicate directly with each Corporate Defendant.

## XV. RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of six (6) years from the date of entry of

this Order. Corporate Defendants. in connection with the manufacturing. labeling, advertising.

promotion, offering for sale. sale, or distribution of any Covered Product or Service or the

advertising, promotion. offering for sale, or sale of any product or service through a negative

option feature, and their agents. employees. officers, corporations, and those persons in active

concert or participation with them who receive actual notice of this Order by personal service or

otherwise. are hereby restrained and enjoined from failing to create and retain the following

records:

A.     Accounting records that reflect the cost of products or services sold, revenues generated, and the disbursement of such revenues:

B.     Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor: that person's job title or position: the date upon which the person commenced work: and the date and reason for the person's termination, if applicable:

C.     Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business:

D.     Complaints and refund requests (whether received directly, indirectly, or through any third party) and any responses to those complaints or requests:

E.     Copies of all sales scripts, training materials, advertisements, or other marketing materials:

F.     All materials that were relied upon in making any representations contained in the materials identified in Subsection E of this Section, including all documents evidencing or referring to the accuracy of any claim therein or to the efficacy of any Covered Product or Service, including, but not limited to, all tests, reports, studies, demonstrations, or other evidence that confirm, contradict, qualify, or call into question the accuracy or efficacy of each such Covered Product or Service:

G.     Records accurately reflecting the name, address, and telephone number of each manufacturer or laboratory engaged in the development or creation of any testing obtained for the purpose of manufacturing, labeling, advertising, promoting, offering for sale, selling, or distributing any Covered Product or Service:

Page 21 of 24

H.    Copies of all contracts concerning the manufacturing. labeling, advertising, promotion.
      offering for sale, sale, or distribution of any Covered Product or Service: and

I.    All records and documents necessary to demonstrate full compliance with each provision
      of this Order. including but not limited to. copies of acknowledgments of receipt of this
      Order required by the Sections titled "Distribution of Order" and "Acknowledgment of
      Receipt of Order" and all reports submitted to the FTC pursuant to the Section titled
      "Compliance Reporting."

### XVI. DISTRIBUTION OF ORDER

       IT IS FURTHER ORDERED that. for a period of three (3) years from the date of entry
of this Order,

A.    Each Corporate Defendant shall deliver copies of the Order to (1) all of its principals.
      officers, directors. and managers: (2) all of its employees, agents. and representatives
      who engage in conduct related to the subject matter of the Order: and (3) any business
      entity resulting from any change in structure set forth in Subsection A of the Section
      titled "Compliance Reporting." For current personnel. delivery shall be within five (5)
      days of service of this Order upon such Corporate Defendant. For new personnel,
      delivery shall occur prior to them assuming their responsibilities. For any business entity
      resulting from any change in structure set forth in Subsection A of the Section titled
      "Compliance Reporting," delivery shall be at least ten (10) days prior to the change in
      structure.

B.    Corporate Defendants must secure a signed and dated statement acknowledging receipt
      of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the
      Order pursuant to this Section.

Page 22 of 24

Case 2:06-cv-05072-JLL-CCC Document 135-12 Filed 11/29/10 Page 24 of 25 PageID:
8858
Case 1:06-cv-00051-SAS Document 109 Filed 07/22/2009 Page 23 of 24

## XVII. ACKNOWLEDGMENT OF RECEIPT OF ORDER

IT IS FURTHER ORDERED that each Corporate Defendant, within five (5) business

days of receipt of this Order as entered by the Court, must submit to the Commission a truthful

sworn statement acknowledging receipt of this Order.

## XVIII. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for

purposes of construction, modification and enforcement of this Order.

IT IS SO ORDERED, this 27 day of July, 2009.

United States District Judge
Southern District of Ohio

Page 23 of 24

**STIPULATED AND AGREED TO:**

Harris A. Senturia. Trial Attorney
Ohio Bar No. 0062480
Federal Trade Commission. East
Central Region
1111 Superior Avenue. Suite 200
Cleveland. OH 44114 2507
(216) 263-3420 tel.
(216) 263-3426 fax
hsenturia@ftc.gov

MARK S. MORELLI
MALINI MITHAL
ROSEMARY ROSSO
CHRISTINE J. LEE
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-2601 MSM tel.
(202) 326-2558 fax
mmorelli@ftc.gov

RICHARD D. NELSON, Trustee in Bankruptcy
for Berkeley Premium Nutraceuticals. Inc..
Lifekey, Inc., Warner Health Care. Inc., and
Wagner Nutraceuticals, Inc.
Ohio Bar No. 0003943
Cohen Todd Kite & Stanford LLC
250 E. Fifth St.. Suite 1200
Cincinnati, OH 45202-4139
513-333-5255 tel.
513-241-4490 fax
ricknelson@ctks.com