# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY (NEWARK)

| | |
|---|---|
| CHARLES T. MCNAIR,<br>THEODORE AUSTIN,<br>DANIELLE DEMETRIOU,<br>USHMA DESAI and JULIE DYNKO<br>on behalf of themselves and all others similarly<br>situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYNAPSE GROUP INC.,<br><br>Defendant. | Case No. 2:06-cv-05072 (JLL) (CCC) |

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
RECONSIDERATION OF THE COURT'S NOVEMBER 15, 2010 ORDER**

---

# TABLE OF CONTENTS

**POINT I:**          **PLAINTIFFS' MOTION FOR RECONSIDERATION IS PROPER**...…...1

**POINT II. (A):  THE INJUNCTIVE AND DECLARATORY RELIEF SOUGHT**
                          **BENEFITS THE WHOLE CLASS, EVEN THOUGH THIRD**
                          **CIRCUIT LAW DOES NOT REQUIRE EVERY CLASS**
                          **MEMBER TO BENEFIT FROM THE RELIEF SOUGHT**……………......1

**POINT II. (B):  PLAINTIFFS' CLASS INJUNCTIVE RELIEF CLAIMS UNDER**
                          **STATE CONSUMER FRAUD STATUTES ARE CAUSALLY**
                          **ADEQUATE**………………….………………………………………...2

**POINT II. (C):  DEFENDANT'S "COMMON TRAIT REQUIREMENT"**
                          **PROPOSITION IS WRONG**………………………………………………4

**POINT III:**        **THE COURT ERRED BY NOT CONSIDERING PLAINTIFFS'**
                          **REQUEST FOR A DECLARATORY RELIEF CLASS**
                          **UNDER 23(B)(2)** ………………………………………………..6

**CONCLUSION**…………………………………………………..……....7

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc v. Windsor,*
    521 U.S. 591 (1997)……………………………………………………………………4

*Baby Neal v. Casey,*
    43 F.3d 48, 59 (3d Cir. 1994)…………………………………………………..……1, 5

*Barnes v American Tobacco Co.,*
    161 F.3d 127, n. 4 (3d Cir. 1998)………………………………………………3, 4, 5

*Cablevision Ltd. v. Basset,*
    828 A.2d 714, 715 (D.C.C.A. 2003)……………………………………………...3

*Hassine v. Jeffes,*
    846 F.2d 169 (3d Cir. 1988)…………………………………………………………5

*Laufer v. United Ins. Co.,*
    385 N.J. Super. 172, 184 and n. 2 (N.J. Sup. Ct App. Div. 2006)…………………….6

*McNair v. Synapse Group Inc.,*
    Civ. Act. No. 06-5072 (JLL), 2009 U.S. Dist. LEXIS 103108 at *13
    (D.N.J. Nov. 5, 2009)…………………………………………………………………5

*Onyx v. Trump Hotel & Casino,*
    2008 N.J. Super. Unpub. LEXIS 1095 at *35-36 (N.J. Sup. Ct. App. Div. 2008)……3

*Osbourne v. Capital City Mortg. Corp.,*
    727 A.2d 322, 325-26 (D.C. 1999)…………………………………………………3

*Palmucci v. Brunswick Corp.,*
    311 N.J. Super. 607, 615-616 (N.J. Sup. Ct. App. Div. 1998)………………..……...3

*Siradas v. Chase,* 1999 U.S. Dist. LEXIS 15593, at *15-17 (S.D.N.Y. 1993)…………..……3

*Wetzel v. Liberty Mut. Ins. Co.,*
    508 F.2d 239 (3d Cir. 1975)…………………………………………………………5

*Wilner v Allstate Ins. Co.,*
    2010 NY Slip Op 248, 71 A.D.3d 155, 893 N.Y.S.2d 208
    (N.Y. App. Div. 2d Dep't 2010)…………………………………………...………3

## STATUTES

N.J.S.A. §§ 56:8-1 et seq………………………………………………………….. 2, 3

New York General Business Law § 349 ……………………………….…………....3

D.C. Code. Ann. §§ 28-3901 *et. seq.* (2003) ……………………..…………..……….3

## RULES

F.R.C.P
       Rule 23(b)(2)…………………………………………………………1, 3, 4, 6
       Rule 23(b)(3)……………………………………………………….……..5

28 U.S.C. App., Notes of Advisory Committee on Rules (Amended July 1, 1966; Aug. 1, 1987;
       Dec. 1, 1998) NOTES TO RULE 23…………………………………………………….4

**I.  Plaintiffs' Motion for Reconsideration is Proper**

Plaintiffs' Motion for Reconsideration is proper because it specifically points out, explains and seeks correction of plain errors of law and fact in the Court's November 15, 2010 Opinion ("Opinion") and Order ("Order").  Despite the curious assertion at page 2 of Defendant Synapse's Opposition to Plaintiffs' Motion for Reconsideration (Dockt. No. 139; "Opp. Br." hereinafter) that the Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration (Dockt. No. 135-2; "Pls. Rec. Br." hereinafter) "identifies no error," one need look no further than Pls. Rec. Br.'s  table of contents to see the identification of errors, which are directly addressed in the brief itself.  It would also be improper and manifestly unjust to fail to reconsider the Opinion and Order because the Opinion failed to consider Plaintiffs' timely request for certification of a declaratory relief class made in Plaintiffs' Second Amended Complaint (Dockt. No. 104) and Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Under F.R.C.P. 23(b)(2) (Dockt. No. 112-3; "Pls. Cert. Br.").

**II (A)  The Injunctive and Declaratory Relief Sought Benefits the Whole Class, Even Though Third Circuit Law Does Not Require Every Class Member To Actually Benefit from The Relief Sought**

First, the legal and factual errors in the Opinion as to the whether the relief sought benefits the whole class and whether it is required to benefit every class member (it is not) is discussed in depth in Pls. Rec. Br., Sec. IIA, at 4-6.  Defendant's Opp. Br. fails to address the legal points presented in Pls. Rec. Br. head-on, entirely ignores the discussed holdings of *Baby Neal* as to not every class member having to benefit or needing a remedy, and simply presents an incorrect "selective" reading of *Baby Neal.*  Defendant's assertion at Opp. Br. 11, ll. 1-2 that Plaintiffs "conceded" Defendant's artful construction of *Baby Neal* is incredulous given Pls. Rec. Br. at 4-6.

Second, Defendant's characterization of named plaintiffs at Opp Br. , pg. 10, as "dissatisfied customers who fell though the cracks" is absurd.  As pointed out in Sec. III.A of Pls. Rec. Br. at 16, and previously, Defendant tested postcards that would comply with the Time Assurance of Discontinuance standards against the standard postcard it has used and found a significantly lower cancellation rate for

its standard postcard, *but chose to continue using it anyway*.  Therefore, Synapse *knowingly* violated the subject consumer fraud statutes.  Rather than "falling through the cracks," the named Plaintiffs and a substantial number of other class members fell into a trap set by Synapse.[1]

Third, as to Synapse's further attack on the named plaintiffs at Opp. Br. pg. 8, l. 12 – pg. 8, l. 4, Defendant improperly conflates class certification issues with final merits issues concerning the individual claims of plaintiffs.  Each of the named plaintiffs has adequately plead a claim under their respective consumer fraud statutes and each, with the *possible* exception of McNair, claims an ascertainable loss *due* to failure of deceptive postcards to provide advance notice of a charge.  As to McNair, he testified he almost threw the postcard out, but in any event, there are two other New Jersey plaintiffs who were completely deceived by it.  Dynko had ascertainable losses and only later learned that what looked to be non-descript, junk mail was actually Synapse's "notification" – this is no detriment to her claim.

## II (B)  Plaintiffs' Class Injunctive Relief Claims Under State Consumer Fraud Statutes Are Causally Adequate

Defendant's Opp. Br. Sec. II.B erroneously argues that since a breach-of-contract count is not pending, Plaintiffs may not rely on Synapse's magazine offer term promising to send an advance notice to subscribers before a charge to support a finding that Synapse is required to send such notices. Tellingly Synapse's argument is unsupported by authority.  Indeed, it is well established, in each of the subject jurisdictions, that the same set of facts that would support a breach of contract claim will also support a claim under the respective consumer fraud statutes so long as the misrepresentation,

---

[1] Defendant's "justifications" at Opp. Br., pg. 9 that is has refunded over $700 million dollars since this action began and that 70-80% allegedly cancel *ring hollow* since they fail to take into account persons injured by only partial refunds (like Austin), those injured by overdrafts (like Demetriou) and those who were ripped off but have not yet learned or eventually learned that Synapse's "notification" was hidden among junk mail (like Dynko), all causally linked to the deceptive postcard.  Assuming a $20 cost per subscription, Synapse's refund figure only emphasizes the magnitude of its enterprise *and of its deceptive practices*. **Indeed, Synapse quantified this deception and chose to use a deceptive notification postcard it knew results in a *lower cancellation rate* anyway.  *See* Pls. Rec. Br. (Dockt. No. 135-2) at 16, first bullet point.**

omission, deceptive practice, etc. that is required under the consumer fraud statute is present.[2,3]

There is *no* prohibition whatsoever that disqualifies Synapse's obligation under the offer terms to send an advance notice as a basis for showing that Synapse was required to do so, *for* Plaintiffs' consumer fraud statute claims.   Additionally, the offer's promise itself is a misrepresentation under the statutes in view of the misrepresentations and deceptions of the postcards themselves – accordingly, there is a clear causal linkage.  Moreover, Plaintiffs' have never abandoned or disclaimed any aspect of their claims under the New Jersey, New York and District of Columbia consumer fraud statutes.

As to Opp. Br. at 12, ll. 7-10, the Court is permitted to amend a class definition up until final judgment. *Barnes v. American Tobacco Co.,* 161 F.3d 127, n. 4 (3d Cir. 1998).  If the Court wishes to amend according to a proposal of Plaintiffs or otherwise, it may.  For *all* of the reasons presented in Sec. II.B of Pls. Rec. Br., the preponderance of evidence burden is met for showing that Synapse was generally required to send the advance notices.  However, as pointed out, since the result would be entirely similar (which the Opp. Br. notably did *not* contradict), the Court may limit the class to persons who accepted Synapse offers that promised to send an advance notification before a charge is incurred.

---

**2**  *See, e.g.,* **New Jersey -** *Palmucci v. Brunswick Corp.*, 311 N.J. Super. 607, 615-616 (N.J. Sup. Ct. App. Div. 1998)(breach of contract alone does not violate NJ CFA, fraudulent aspect enumerated in statute must be present), *see also Onyx v. Trump Hotel & Casino*, 2008 N.J. Super. Unpub. LEXIS 1095 at *35-36 (N.J. Sup. Ct. App. Div. 2008); **New York -** *Wilner v. Allstate Ins. Co.*, 2010 NY Slip Op 248, 71 A.D.3d 155, 893 N.Y.S.2d 208 (N.Y. App. Div. 2d Dep't 2010) (court allowed a claim for consumer fraud to proceed under NY GBL §349 on the allegation that the insurer had breached a policy provision contained in homeowner policies by delaying action on claims.); *Siradas v. Chase,* 1999 U.S. Dist. LEXIS 15593, at *15-17 (S.D.N.Y. 1993)("Because the mortgages serviced by the Chase Defendants clearly do have a broad impact and are of a recurring nature, their conduct amounts to more than a 'simple breach of contract' and as such is subject to the Deceptive Practices Act [NY GBL §349]."); **D.C. -** *Cablevision Ltd. v. Basset*, 828 A.2d 714, 715 (D.C.C.A. 2003)(same set of facts able to support breach of contract and DCCPPA claim but plaintiffs only sought latter); *see also id.* at 716, quoting *Osbourne v. Capital City Mortg. Corp.*, 727 A.2d 322, 325-26 (D.C. 1999) ("The CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 28-3904, but to all other statutory and common law prohibitions.").

**3**  Counsel for Plaintiffs, Gary S. Graifman discussed this issue in the Oral Proceeding held April 17, 2009. *See* Exh. 62 of Green Decl., Apr. 17, 2009 Proc. Transcript at 92:9-93:18.

**II (C)   Defendant's "Common Trait Requirement" Proposition is Wrong**

<u>First</u>, as pointed out in Pls. Rec. Br., Sec. III.B at 18-20, Third Circuit precedent is *not* that "cohesiveness requires a common trait or relationship *among the class members* binding them together..." (quoting Opp. Br. at 12; emphasis added).  Defendant's Opp. Br. simply ignores the "legal relationship" and "small claims" holdings of *Barnes* in relation to Fed.R.Civ.P. 23(b)(2) discussed by Plaintiffs as showing the Court's finding as to cohesion was in error.

<u>Second</u>, despite Defendant's protestations, the legislative history of Fed.R.Civ.P. 23(b)(2) is crystal clear that the statute is *neither* limited to civil rights cases based on a "common trait" of class members *nor* to institutional reform cases:

> Subdivision (b)(2).
>     This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. **…**
>     Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration....**Subdivision (b)(2) is not limited to civil-rights cases**. Thus an action looking to specific or declaratory relief could be brought by a numerous class of purchasers, say retailers of a given description, against a seller alleged to have undertaken to sell to that class at prices higher than those set for other purchasers, say retailers of another description, when the applicable law forbids such a pricing differential. So also a patentee of a machine, charged with selling or licensing the machine on condition that purchasers or licensees also purchase or obtain licenses to use an ancillary unpatented machine, could be sued on a class basis by a numerous group of purchasers or licensees, or by a numerous group of competing sellers or licensors of the unpatented machine, to test the legality of the "tying" condition.
>
>                     28 U.S.C. App., Notes of Advisory Committee on Rules (Amended July 1, 1966;
>                     Aug. 1, 1987; Dec. 1, 1998) NOTES TO RULE 23 (emphasis added).

Significantly, the Committee's examples of *non*-civil rights (b)(2) actions relate to classes of purchasers and *not* to institutional reform actions.

<u>Third</u>, Defendant's reliance on *Amchem Prods., Inc v. Windsor,* 521 U.S. 591 (1997) in Opp. Br. at 13 is misplaced.  *Amchem* is distinguishable not only because it is a 23(b)(3) case but also because the individuality of personal physical health and damage thereto was a central issue.  *See,* Reply Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Under F.R.C.P. 23(B)(2)

(Dockt. No. 129; "Pls. Cert Reply Br." hereinafter) at 8-9 with reference to *n. 5*). Even assuming, *in arguendo,* Defendant's false equation of the predominance and cohesion requirements, Defendant failed to point out the Supreme Court's statement therein that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws. See Adv. Comm. Notes, 28 U.S.C. App., p. 697; see also supra, at 21-22."

Fourth, Defendant *misrepresents* the holding of *Barnes* at Opp. Br., pg. 13 when it stated "the *Barnes* court applied this cohesion analysis... recognizing that a (b)(2) class *requires* more cohesion than a (b)(3) damages class" (italics original; underline added). Actually, *Barnes* 161 F.3d at 142 held that "a (b)(2) class *may* require more cohesiveness than a (b)(3) class" (emphasis added). Indeed, Pls. Cert. Reply Br. (Dockt. No. 129) at 8-9 with reference to *n. 5,* provides a survey and correct analysis of authority governing when, *given the factual circumstances*, individual issues are sufficiently significant to affect cohesion, as the individual *medical issues* of *Barnes*.

Fifth, as to Opp. Br., pg. 14, ll. 5-14, Defendant's rationale that there is no cohesion among the proposed class because they have only been "exposed" to the subject postcards is misleading and flawed – pointing out only that the subject classes of the particular actions before the Third Circuit were two institutional reform cases (*Baby Neal* and *Hassine v. Jeffes*, 846 F.2d 169 (3d Cir. 1988) and an employee discrimination action (*Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239 (3d Cir. 1975)), while ignoring their support of certification here. *See* Pls. Rec. Br. at 5 and n. 1 for *Baby Neal* and *Hassine* and at 18 for *Wetzel*. Significantly, Defendant simply ignores *Baby Neal's* discussion of *Hassine's* holding (*see* Pls. Rec. Br. at 5, n. 1) that class members need only be *at risk* of injury and that not all class members may need a remedy – and *this Court* has already found class members here, even those such as McNair, to be at continuing risk.[4]

---

[4]  *McNair v. Synapse Group Inc.*, Civ. Act. No. 06-5072 (JLL), 2009 U.S. Dist. LEXIS 103108 at *13 (D.N.J. Nov. 5, 2009)("[T]he Court finds that Plaintiffs have made a sufficient showing that they are likely to become Synapse customers in the future and suffer injury from the allegedly deceptive

### III. The Court Erred by Not Considering Plaintiffs' Request for
####    A Declaratory Relief Class Under 23(b)(2)

As pointed out at Pls. Rec. Br. at 2, Plaintiffs' Motion for Class Certification Under 23(b)(2)

also sought class-wide declaratory relief as to the subject postcards.  *See also* Pls. Cert. Br. (Doc. 112-

3) <u>at 34</u>, Sec. II.C.1 "The Complaint Seeks Class-Wide Injunctive *and Declaratory Relief*" (emphasis

added), *see also* <u>at 36</u>, ll. 1-13, *see also* <u>at 37</u>, Sec. II.D. "The Named Plaintiffs Have Standing to Seek

Class-Wide Injunctive *and Declaratory Relief*" (emphasis added).  However, the Opinion fails to

discuss the requested declaratory relief and misstates at pg. 4 "[t]hey seek only injunctive relief on

behalf of the proposed classes."  Accordingly, it appears the Court has *not* ruled on Plaintiffs' request

for certification of a declaratory class. It would be improper and manifestly unjust for the Court to fail

to consider Plaintiffs' timely request for certification of a declaratory relief class.  Moreover, a class-

wide determination as to whether the subject postcards are deceptive benefits the entire class as it is

tantamount to a class-wide vindication of rights of the class members under the state consumer

statutes.[5]

Finally, in addition to the reasons of Pls. Rec. Br., Sec II.A at 15-17, the Court's argument that

plaintiffs' theory meant that plaintiffs could obtain class certification even if they could show "one

person was injured by a defendant's practice" (Opinion at p. 11) is incorrect since it goes beyond the

requirements of Rule 23(a) to demonstrate numerosity, the existence of at least one common question

of law or fact, typicality, and adequacy, which Plaintiffs have done.

---

conduct.").  *As to McNair*, notably, Defendant changed its standard postcard while retaining certain
common deceptive and fraudulent aspects, so McNair *would* certainly benefit from the requested relief.
[5]  Further, to the extent the class-wide declaratory determination that the subject postcards are
deceptive could advance the individual small monetary claims of class members (which are outside the
scope of *this* action, except for the named plaintiffs), Synapse should welcome it since it has stated,
albeit disingenuously, its "concern" for the individual class members' monetary claims.  *See* Opp. Br at
7, ll. 7-10 and Defendant's Opp. Brief against class certification motion (Doc No. 123) at 24.  ***Indeed***,
in *Laufer v. United Ins. Co*., 385 N.J. Super. 172, 184 and n. 2 (N.J. Sup. Ct App. Div. 2006), a
declaratory relief class was certified under the state equivalent of 23(b)(2) as to whether a notice was
deceptive in violation of the NJ CFA *because this benefited the entire class <u>while preserving class
members' individual  monetary claims</u>.*

## CONCLUSION

Accordingly, it is respectfully submitted that the Court grant the within motion for reconsideration and, thereupon, grant certification of the requested injunctive and declaratory relief classes under Fed.R.Civ.Proc. 23(b)(2).


Date:  December 27, 2010          GREEN & ASSOCIATES, LLC

By: /s/Michael S. Green
**GREEN & ASSOCIATES, LLC**
**MICHAEL S. GREEN**
522 Route 18, P.O. Box 428
East Brunswick, New Jersey 08816
Telephone (732) 390-0480

**KANTROWITZ, GOLDHAMER & GRAIFMAN**
**GARY GRAIFMAN**
210 Summit Avenue
Montvale, New Jersey 07645
Telephone  (201) 391-7000

**DIAMOND LAW OFFICE, LLC**
**PAUL DIAMOND**
1605 John Street, Suite 102
Fort Lee, New Jersey 07024
Telephone (201) 242-1110


**Attorneys for Plaintiffs**