NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES T. MCNAIR, et al., | Civil Action No.: 06-5072 (JLL) |
| Plaintiffs, | **OPINION** |
| v. | |
| SYNAPSE GROUP, INC., | |
| Defendant. | |

**LINARES, District Judge.**

This matter comes before the Court on a motion for reconsideration filed by Plaintiffs Charles McNair, Theodore Austin, Danielle Demetriou, Ushma, and Julie Dynko ("Plaintiffs"). This Court previously held in its Opinion dated November 15, 2010 ("Opinion") that Plaintiffs failed to meet their burden of demonstrating the cohesion necessary to certify a class under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs now ask the Court to reconsider this Opinion denying an injunctive relief class. The Court has considered all of the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' motion for reconsideration is denied.

**I.   BACKGROUND**

The facts of this case are more fully detailed in this Court's June 29, 2009 and November 15, 2010 Opinions. Only those facts relevant for the present motion are included here.

Plaintiffs are, were, or will be subscribers to magazines obtained through Defendant Synapse Group, Inc. ("Synapse"). Plaintiffs claim that Synapse engages in deceptive practices

related to its cancellation procedure, which resulted in unwanted renewals.

Plaintiffs most recent amended complaint sought to certify classes for each of their state claims only: violation of the New Jersey Consumer Fraud Act ("CFA"); deceptive trade practices under New York's General Business Law § 349 ("GBL"); and a violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"). (Second Am. Class Action Compl. [hereinafter "Am. Compl.."] ¶ 76.) The proposed definition for these classes was as follows:

> From October 23, 2000 to the date of the order certifying the class, all persons residing in New Jersey, New York, and the District of Columbia who was or will be magazine subscription customers of Synapse and will be sent in the future Defendant's "standard exterior" postcard of the advance notification of an automatic charge for an additional term or renewal of their subscription(s). Excluded from the class are Defendant, its agents and affiliates, and any government entities.

(Id. at ¶ 75.) Plaintiffs also sought to certify the following proposed subclasses for each of these classes as follows:

> Members of the Class for whom their postcard notification and/or billing descriptor on their credit card or bank statement provide a telephone number to an IVR that does not audibly announce how to transfer to a live operator.

(Id. at ¶ 77.) Plaintiffs McNair, Demetriou, and Desai were named representatives for the proposed New Jersey Class; Plaintiff Austin was named representative of the proposed District of Columbia Class; and Plaintiff Dynko was named the representative of the proposed New York class. Plaintiffs sought certification of these classes only under Rule 23(b)(2) based on the revised claims and proposed class definitions in the Amended Complaint. Plaintiffs made clear in their briefing that they were seeking both monetary and injunctive relief on behalf of the named plaintiffs, but only injunctive relief on behalf of the proposed classes.

In its November 15, 2010 Opinion, this Court held that the class was not cohesive because "disparate factual circumstances demonstrate that there is no common issue solely

related to the postcard which will remedied by the relief sought and which will benefit the entire class." Opinion at 11-12. Plaintiffs now move for reconsideration and ask that the Court vacate this Opinion and certify the previously proposed b(2) class, without a subclass.

## II. LEGAL STANDARD

"Reconsideration is an extraordinary remedy" and should be "granted 'very sparingly.'" See L.Civ.R. 7.1(I) cmt.6(d); see also Fellenz v. Lombard Investment Corp., Nos. 04-3993, 04-5768, 04-3992, 04-6105, 2005 WL 3104145, at *1 (D.N.J. Oct. 18, 2005). A motion for reconsideration must "set[] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L.Civ.R. 7.1(I). When the assertion is that the Court overlooked something, the Court must have overlooked "some dispositive factual or legal matter that was presented to it." McGovern v. City of Jersey, No. 98-5186, 2008 WL 58820, at *2 (D.N.J. Jan. 2, 2008).

## III. DISCUSSION

Under Local Civil Rule 7.1(g), the Court will reconsider a prior order only where a different outcome is justified by: (1) intervening change in law; (2) availability of new evidence not previously available; or (3) need to correct a clear error of law or manifest injustice. N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995). In this case, Plaintiffs claim that this Court's Opinion constitutes a "clear error of law" resulting in "manifest injustice" to them. Pl. Brief at 3. However, Plaintiffs do not point to any dispositive factual or legal matter which was presented to but overlooked by this Court. Rather, it appears that Plaintiffs merely disagree with the Court's conclusions. In any event, for the purposes of clarity, the Court will address the relevant arguments raised in the instant motion.

Plaintiffs assert three primary bases for their motion. First, Plaintiffs allege that the relief sought benefits the whole class, which supports a finding of cohesion. However, Plaintiffs also maintain that Third Circuit law does not require every class member to benefit from the relief sought. Second, Plaintiffs assert that advance notification of automatic charges by Synapse is required for all proposed class members, thus there is a relationship between the subject postcards and the potential harm. Third, the Court's finding that Plaintiffs "have not demonstrated a common trait of the proposed class members" and thus there is no cohesion in is error. Lastly, if the Court will not certify the class as currently proposed, Plaintiffs ask the Court to exercise its discretion to limit the class definition to "customers whose initial offers *expressly represented* that they would be sent an advance notification of an automatic charge." Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration ["Pl. Brief"] at 4.

### A. "The Relief Sought Benefits the Entire Class."

Plaintiffs state that the relief sought benefits all class members, which supports a finding of cohesion; and additionally, Third Circuit law "does not require every class member to actually benefit from the relief sought." Pl. Brief at 4. Plaintiffs highlight that this Court stated in its Opinion that "not all Plaintiffs were deceived by the postcards . . .[f]or example, Plaintiff McNair testified that he read the card and understood it;" thus class members like Mr. McNair would receive no benefit. Plaintiffs then assert that Plaintiff McNair "actually testified that *he almost threw the postcard out*." Pl. Brief at 4 (emphasis in original). Further, Plaintiffs write that "the idea that a class member who scrutinizes each article of mail anyway will not benefit is not correct because clear and conspicuous notice literally relieves the class member of the need for such scrutiny . . ." Pl. Brief at 5. Notably, Plaintiffs made all of these arguments in the

underlying motion.

First, although Plaintiff McNair testified that he "almost through the postcard out," the fact remains that he did not actually do so. Plaintiffs do not point to any particular reason why Mr. McNair did not end up throwing the postcard out. Plaintiffs would prefer this court assume that it was happenstance that Mr. McNair came upon the renewal notice during a discerning examination of his mail, rather than the more likely reason, which is that the renewal notice was sufficiently clear and conspicuous, at least in his case. Further, Plaintiffs decline to underscore that Ms. Dynko admits to opening the cards after 2006, even though she claims she never opened them in prior years due to their design.

As stated in this Court's Opinion, these disparate factual circumstances are the basis for declining to find cohesion. See Barnes v. Am. Tobacco Co., 161 F.3d 127, 143 (3d Cir 1994) ("District Court[s have] the discretion to deny certification in Rule 23(b)(2) cases in the presence of disparate factual circumstances."). The Third Circuit has stated that, because (b)(2) class members may not opt out of the class, a "court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues . . . Id. In this case, Plaintiffs have failed to meet their burden of demonstrating that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment, as the class representatives themselves had such varied responses to the renewal notice. See Sullivan v. DB Invs., Inc., 613 F.3d 134, 156 (3d Cir. 2010)

Plaintiffs also maintain that everyone would benefit from a more conspicuous notice, and thus they are entitled to injunctive relief. See Pl. Brief at 5. However, this is not the standard for cohesion delineated in Rule 23(b)(2). Injunctive relief under (b)(2) is granted to redress group

injury, not merely to improve the circumstances of a particular group.  See Barnes, 161 F.3d at 143 ("Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries.").  Further, Plaintiffs reliance on Baby Neal is misguided because in Baby Neal the Department of Human Services ("DHS") admitted that it was not meeting its legal mandates, which resulted in myriad injuries all resulting from the DHS's systemic violations.  When the DHS failed to meet its mandates, the class members were all injured.  However, in this case, not everyone who received a renewal notice suffered an injury as evidenced by Plaintiffs McNair and Dynko's admissions.  Plaintiffs have failed to demonstrate that Defendant's behavior has caused an overarching group injury.  Rather, their varied factual circumstances preclude certification under (b)(2).

> B.    **"Advance Notification by Synapse is Required for all Proposed Class Members."**

Plaintiffs argue that advance notification of automatic charges by Synapse is required for all proposed class members, thus there is a relationship between the subject postcards and the potential harm.  In its Opinion, this Court held

> [I]t is unclear from the facts as presented by Plaintiffs whether all subscribers are required to receive any notice . . . Where no notice may be required, there is no relationship between the postcard and any potential harm and, thus, relief related to the postcard would arguably have no benefit for those proposed class members.

Opinion at 10.  However, even if the Court concedes that Synapse is required to send all proposed class members advance notification of automatic charges, Plaintiffs have failed to show that receipt of the postcard alone guarantees that the harm will occur.  Instead, Plaintiffs have presented facts demonstrating that sometimes the renewal notice is effective and sometimes it is not.  It would be impossible for this Court to determine that Defendant's action was the singular

cause of injury.  Even if Plaintiffs are correct that there is at least some relationship between the subject postcards and the potential harm, that does not always mean that there is causation between receipt the subject postcard and the potential harm.  Intervening events may have occurred in the case of certain class members.  In fact, the experiences of certain named plaintiffs prove that receipt of the subject postcard does not automatically cause harm.

Plaintiffs are correct, in that, Plaintiffs are entitled to attack a system that fails to provide services that were promised to them.  See Pl. Brief at 5-6 n.1.  However, Plaintiffs are not entitled to certification of a class under (b)(2) simply because Defendant takes an action that sometimes results in an injury to some of the proposed class members.  Given the circumstances, certification of the proposed class under (b)(2) would run completely afoul of the cohesion standard as there is no consistent group injury, only individual injuries.

> C. "The Court Erred in Finding that Plaintiffs did not Demonstrate a Common Trait Amongst the Proposed Class Members."

Plaintiff argues that this Court only relied on the "significant common trait" aspect of the Barnes decision, while disregarding the "preexisting or continuing legal relationship."  Plaintiffs cite a string of cases, which were also cited in Barnes, wherein other courts have found preexisting legal relationships.  Some of these examples include: employees bringing sex discrimination claims under Title VII, prisoners bringing claims against a parole commission, and juveniles challenging the conditions of their confinement.

First and foremost, these cases are distinguishable from the instant matter because in those cases all the class members had suffered certain injury due to actions taken by the Defendant.  In this case, not all the class members' injuries were caused by mere receipt of the subject postcard as the proposed class currently requires.  As Defendant points out, the cases

highlighted by Plaintiffs in their reconsideration motion describe groups joined by common characteristics such as race or gender, or groups combating systemic institutional failures. In this case, these Plaintiffs are not joined by race or gender, nor are they victims of a systemic failure as it is clear that certain plaintiffs understood the subject postcards.

Second, Plaintiffs' contention that cohesion only requires a preexisting or continuing legal relationship to exist between the proposed class members and the common actor, and not with each other misconstrues the law. Cohesion is not the same as predominance under (b)(3). In fact, Barnes recognizes that a (b)(2) class requires more cohesion than a (b)(3) damages class requires predominance. See 161 F.3d at 142-43. However, "the individual issues that defeat the predominance requirement under Rule 23(b)(3) also defeat the cohesion requirement of 23(b)(2)." Gates v. Rohm and Haas Corp., 265 F.R.D. 208, 231 (E.D. Pa. 2010) (internal citations omitted). In Amchem Prods. Inc., v. Windsor, 521 U.S. 591 (1997), Plaintiffs brought a claim for damages under (b)(3). The Supreme Court held that there was no cohesiveness because "[c]lass members were exposed to different asbestos-containing products, for different amounts of time, in different ways over different period." Id. at 624. Similarly, in this case, the proposed class members were exposed to different subject postcards, at different times, and were met with different degrees of difficulty in their ability to cancel. It logically follows that if the Plaintiffs in Amchem were not able to establish predominance under their facts, these Plaintiffs cannot establish cohesion, a higher standard, with similar facts. Thus, the Court's refusal to find cohesion was not clear error.

### D.   Revision of the Proposed Classes

Lastly, Plaintiffs ask this Court to exercise its discretion to revise the postcard classes to

limit them to the those persons whose initial offers recited that they would be sent an advance notification. The Court declines to do so. First, even under this proposed revised class, it is not clear that Plaintiffs would achieve cohesion. Second, Plaintiffs do not point to any authority that indicates that revision of the proposed class by the Court is proper. Plaintiffs have proposed nine different class definitions over the course of the litigation, each time failing to meet their burden of showing predominance under (b)(3), or cohesion under (b)(2). It is not "clear error" for the court to decline to undertake Plaintiffs' duty to define a class that meets either the cohesion or predominance standards. Thus, the Court declines to revise the most recently proposed class.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for reconsideration is denied. An appropriate order accompanies this opinion.

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE